IN THE UNITED STATES DISRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BAD RIVER BAND OF THE TRIBE OF
CHIPPEWA INDIANS OF THE BAD RIVER
RESERVATION

                           *Plaintiff*,

    v.

ENBRIDGE INC.,
ENBRIDGE ENERGY PARTNERS, LP
ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY, LP

                           *Defendants*.

Case No. 3:19-cv-00602

**MEMORANDUM IN SUPPORT OF
ENBRIDGE INC.'S AND EEP'S MOTION TO DISMISS
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

**INTRODUCTION**

A federal district court may maintain personal jurisdiction over a defendant only if that defendant has sufficient "minimum contacts" with the forum state such that exercising jurisdiction does not offend due process of the United States Constitution. Plaintiff has not alleged a single, specific contact by the Moving Defendants with the State of Wisconsin. *See* Compl. ¶ 29 (alleging that Enbridge Inc. is a Canadian corporation, and that EEP is a Delaware entity "based in the State of Texas"). Nor can it. As demonstrated below, neither of the Moving Defendants have systematic and continuous contacts with Wisconsin nor have they purposefully directed any activities into Wisconsin related to this litigation. Thus, they must be dismissed.

Plaintiff has merely group-pled jurisdiction in one allegation, claiming, without any factual support, that all of the defendants collectively "operate a pipeline transporting . . . liquids . . . across the Reservation." *Id.* ¶ 2. The Moving Defendants, however, do <u>not</u> own, control or operate the

pipeline running under Plaintiff's Reservation (Line 5). The Moving Defendants have been named in this action solely as affiliates of Enbridge Energy, Limited Partnership ("EELP"), which is contemporaneously filing its answer, affirmative defenses, and counterclaims along with one of its predecessor in interests Enbridge Energy Company, Inc. ("EECI"). Under Seventh Circuit law, however, this Court cannot attribute the personal jurisdiction of an affiliated entity "premised on corporate affiliation or stock ownership alone." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Moreover, due process does not permit the exercise of personal jurisdiction over the Moving Defendants in Wisconsin because Plaintiff's Complaint concerns allegedly "expired" easement rights owned by EELP and EELP's current operation of Line 5.

Accordingly, the Moving Defendants should be dismissed.

## LEGAL STANDARD

The "plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In reviewing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a court is not bound to the four corners of the complaint, and a defendant may supply affidavits and other relevant evidence to resolve the factual dispute regarding the court's jurisdiction. *See Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1073 (E.D. Wis. 2008); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002)). If a defendant "supplies affidavits challenging personal jurisdiction, the plaintiff must meet those assertions with affirmative evidence that supports the presence of jurisdiction." *Jefferson Elec., Inc. v. Torres*, No. 09-C-465, 2009 WL 4884379, at *1 (E.D. Wis. Dec. 10, 2009).

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *Daimler AG v. Bauman*, 571 U.S. 117, 124 (2014). "The inquiry is, therefore, a

two-step process.  *First,* the court must determine whether the Wisconsin long-arm statute, Wis. Stat. § 801.05, would subject [defendants] to personal jurisdiction in Wisconsin courts.  *Second,* if the answer is yes, the court must determine whether the exercise of personal jurisdiction under § 801.05 nevertheless violates the due process requirements of the Fourteenth Amendment." *Meier v. Wright Med. Tech., Inc.*, No. 14-CV-505-WMC, 2015 WL 1486688, at *5 (W.D. Wis. Mar. 31, 2015) (Conley, J.) (internal citations omitted).  Because the Wisconsin long-arm statute "'is intended to reach to the fullest extent allowed under the due process clause,' the inquiry can sometimes collapse upon itself." *Id.* (quoting *Daniel J. Hartwig Assocs., Inc. v. Kanner,* 913 F.2d 1213, 1216 (7th Cir. 1990)); *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) ("[T]here is little need to conduct an independent analysis under . . . the Wisconsin long-arm statute itself.").

There are two categories of personal jurisdiction under the due process clause:  (1) general jurisdiction, and (2) specific jurisdiction.  *See Insolia v. Philip Morris Inc.,* 31 F. Supp. 2d 660, 668 (W.D. Wis. 1998).  "The nature, quality and quantity of contacts necessary to establish jurisdiction depend on the type of jurisdiction asserted." *Id.*; *Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010).  This Court may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has "certain minimum contacts with it." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 319 (1945).

General jurisdiction arises where a defendant has continuous and systematic general business contacts with the forum state, even if those contacts are unrelated to the litigation. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003).  Establishing general jurisdiction "is a high threshold: 'the contacts must be sufficiently extensive and pervasive to approximate physical presence.'" *Meier*, 2015 WL 1486688 at *5 (citing *Dworkin,* 601 F.3d at 701); *Purdue Research Found.*, 338 F.3d at 787 (contacts must be so extensive as to be tantamount

3

to the defendant "being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer" in a Wisconsin court "in any litigation arising out of any transaction or occurrence taking place anywhere in the world"). Indeed, the Supreme Court has made clear that, for an out-of-state corporation, general jurisdiction is usually found only in that corporation's place of incorporation or its principal place of business. *See Daimler*, 571 U.S. at 137. It is only the "exceptional case" where a corporation's operations in a forum other than its place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 124, 139 n.19.

Specific jurisdiction, on the other hand, "focus[es] on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Research Found.*, 338 F.3d at 780 (internal citations omitted). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo,* 601 F.3d at 702-03.

Implicit in the "minimum contacts" analysis is "the notion that a court may not exercise personal jurisdiction over a defendant 'under circumstances that would offend traditional notions of fair play and substantial justice.'" *Insolia*, 31 F. Supp. 2d at 668 (quoting *Int'l Shoe,* 326 U.S. at 316)). This fairness analysis consider four factors: "1) the forum state's interest in adjudicating the dispute; 2) the plaintiff's interest in obtaining convenient and effective relief; 3) the judicial system's interest in obtaining the most efficient resolution to the controversies; and 4) the burden on the defendant." *Id.*

With respect to contract disputes, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue Research Found.*, 338 F.3d at 781. Instead, courts "conduct a context-sensitive analysis of the contract, examining prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *N. Grain Mktg., LLC*, 743 F.3d at 491. "So long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there." *Id.*

## ARGUMENT

In light of the above legal principles, this Court should dismiss the Moving Defendants for lack of personal jurisdiction.

### I. EELP's Forum-Related Contacts Are Central to This Litigation

EELP (as noted above, not one of the Moving Defendants) is a Delaware limited partnership based in Houston, Texas and licensed to transact business in Wisconsin. *See* September 24, 2019 Declaration of Kelly Gray, Esq. (ECF No. [25]) ¶¶ 2-3. One of EELP's predecessor-in-interests is Lakehead Pipe Line Company, Limited Partnership ("Lakehead").[1] *See* September 24, 2019 Declaration of John McKay (ECF No. [26]) ¶ 3. In the 1950s, EELP constructed the pipeline—Line 5—that runs through the Bad River Reservation. *See id.*; Compl. ¶ 54.

Beginning in the 1960s, EELP pursued and executed written contracts with Plaintiff, its individual members, and non-Indian landowners who granted Lakehead rights-of-way to operate Line 5 in exchange for cash considerations. McKay Decl. ¶ 4. Those contracts were the basis for

---

[1] Hereinafter, for ease of reference, Lakehead and EELP are both referred to herein as EELP.

5

formal rights-of-way granted and issued by the Bureau of Indian Affairs ("BIA"). EELP subsequently entered into additional easements and formal rights-of-way. *Id.*; Compl. ¶¶ 57-60. Most recently, EELP executed a contract with Plaintiff in 1992 whereby Plaintiff provided consent to a 50-year easement over tribal lands in exchange for cash consideration, and the BIA granted the 50-year easement (which expires in 2043). McKay Decl. ¶ 4. EELP also owns the easement interests over other properties within the Bad River Reservation granted in or after 1992. *Id.* Thus, EELP owns the property and contract rights at issue in this case (easements and BIA-issued rights of way). *Id.*

In addition, EELP maintains, controls, and operates Line 5. *Id.* ¶¶ 5-7. As a result, EELP is regulated by the federal government as it relates to Line 5 and therefore, must comply with federal regulations, such as the U.S. Department of Transportation's Pipeline and Hazardous Materials Safety Administration (PHMSA) for maintaining Line 5. *Id.* ¶ 6.

## II. The Moving Defendants Lack Personal Jurisdiction in this Court

Unlike EELP, the Moving Defendants have no systematic contacts with Wisconsin, have not purposefully availed themselves of this Court or any Wisconsin court, do not own or operate Line 5, and did not enter into any of the relevant at-issue contracts with the Band. In short, Plaintiff's allegations and purported injuries relate only to EELP's forum-related activities.

### A. Enbridge Inc.

Plaintiff does not and cannot plead any contact that Enbridge Inc. has with Wisconsin. Enbridge Inc. is a foreign corporation based in Canada, which does not "operate[] in the United States." Compl. ¶ 29; September 24, 2019 Declaration of Karen Uehara (ECF No. [27]) ¶¶ 2-3. Enbridge Inc. does not transact business, maintain offices or accounts, employ workers, sell or market products, or own property in Wisconsin. *Id.* ¶ 5. Therefore, Plaintiff cannot satisfy general jurisdiction. *Meier*, 2015 WL 1486688, at *2 ("WMG and WMT maintained separate accounting

6

and banking records at times when each entity had such records. WMG is not registered to do business in Wisconsin, does not transact business in Wisconsin, maintains no offices or places of business in Wisconsin, owns no real property in Wisconsin and has no clients or employees in Wisconsin."); *Univ. Accounting Serv. LLC v. Scholarchip Card LLC*, 2017 U.S. Dist. LEXIS 178371, *15-16 (E.D. Wi. Oct. 27, 2017) ("Undoubtedly, ScholarChip is not subject to general personal jurisdiction in Wisconsin. It was not organized here, has no office or other property here, has no registered agent here, does not house any servers or host any software here, has no financial accounts here, and indeed has no lasting connection to Wisconsin outside its relationship with UAS.").

Nor does Enbridge Inc. have any meaningful link to the State with respect to the dispute in this case for the purposes of specific jurisdiction. Enbridge Inc. does not own, operate, maintain or control Line 5. Uehara Declaration ¶¶ 5-6. And Enbridge Inc. did not contract with (or acquire real property interests) with the Bad River Band, Indian members, or Wisconsin landowners for the easements "in the 1950s[,] in the 1970s and again in 1993" for the easements at issue, which allegedly expired in 2013. *Id.*; Compl. ¶¶ 57-58. According to the Complaint, the 1993 easements conferred on *the holder of those easements* a "legal duty to cease the flow of oil across the parcels by June 2, 2013, and to remove the pipeline form those parcels. . . ." *Id.* ¶ 60. Because Enbridge Inc. is not a party to that contract, was not issued rights-of-way by the BIA, and does not own or operate Line 5, it could not commit any of the alleged "acts or omissions" (*i.e.,* operating the pipeline) that constitute Plaintiff's claims.

Enbridge appears to have been included merely because it is believed by the Band to be the parent company of the other defendants. This is incorrect, as Enbridge Inc. does not in fact own a direct interest in any of the other defendants in this case. *See* Uehara Declaration ¶ 4.

7

However, even if true, this has been "squarely rejected" as a basis for jurisdiction. *See Meier*, 2015 WL 1486688, at *6 (dismissing for lack of personal jurisdiction where "[a]ll that Meier has to support the exercise of jurisdiction over WMG is the fact that it is the *parent corporation* of at least one entity that designs, manufactures, markets, promotes, distributes and sells the accused products") (emphasis in original). Merely owning or being affiliated with a company that is "subject to jurisdiction" is insufficient to establish personal jurisdiction unless there are allegations that the subsidiary is an alter ego of the parent, which Plaintiff has not alleged. *See Cent. States,* 230 F.3d at 943; *Everett v. Leading Edge Air Foils, LLC*, No. 14-C-1189, 2017 WL 2894135, at *5 (E.D. Wis. July 7, 2017) ("[T]he 'general rule' is that the jurisdictional contacts of a subsidiary corporation are not imputed to the parent."); *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) ("A company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction."). Based on the aforementioned reasons, Enbridge Inc. must be dismissed.

### B. Enbridge Energy Partners L.P. ("EEP")

EEP also lacks sufficient minimum contacts. EEP is a Delaware limited partnership with a principal place of business in Houston, Texas. *See* Gray Decl. ¶ 4. EEP is not licensed to transact business in Wisconsin – nor does it conduct business in Wisconsin – and has not held an active registration to do so since 2002. *Id.* ¶ 5; McKay Decl. ¶ 8. *See also Brinckerhoff v. Enbridge Energy Co.*, No. CIV.A. 5526-VCN, 2011 WL 4599654, at *1 (Del. Ch. Sept. 30, 2011) ("[Enbridge Employee Services, Inc.] employs all of the employees [that work] at EEP . . ."), *aff'd,* 67 A.3d 369 (Del. 2013) (emphasis added).

Thus, EEP is not "at home" in Wisconsin. *See Daimler*, 571 U.S. at 137; *Eng'g Sales Co. v. Techni-Cast Corp.*, 444 F. Supp. 508, 509 (E.D. Wis. 1978) (because "defendant did not have place of business in Wisconsin and was not licensed to do business in Wisconsin, and defendant

had never even met with plaintiff or its representatives in Wisconsin, defendant's nominal activities in Wisconsin were insufficient to permit federal district court in Wisconsin to exercise personal jurisdiction over defendant"); *Zimmerman v. JWCF, LP*, No. 10-CV-7426, 2011 WL 4501412, at *2 (N.D. Ill. Sept. 28, 2011) (applying a "five-part test," finding no general jurisdiction existed over a limited partnership that was not incorporated in Illinois, did not conduct business, own property or accounts, advertise or appoint a registered agent in Illinois). EEP owns a limited partnership interest in EELP; however, that ownership alone is not sufficient to confer jurisdiction. *See Cent. States,* 230 F.3d at 943.

EEP also does not have any forum-related contacts that would confer specific jurisdiction over it for the purposes of this case. EEP is not the holder of any of the allegedly "expired" or active easements or formally issued rights-of-way at issue. *See* McKay Decl. ¶ 9. Nor does EEP own or maintain the Line 5 pipeline, and it cannot control EELP's actions by way of its passive, limited partner interest in EELP. *Id.* ¶ 10; Gray Decl. ¶ 6.

An Illinois federal court opinion is on point. In *Solaia Technology LLC v. Arvinmeritor, Inc.*, No. 02-cv-4704 (N.D. Ill.), both Enbridge Inc. and EEP were named as defendants in a patent infringement suit in Illinois, and both moved to dismiss for lack of personal jurisdiction. The plaintiff did not dispute that Enbridge Inc. should be dismissed and therefore, the court granted the motion as conceded. *See id.* (ECF No. 460) at 3 (N.D. Ill. Sept, 29, 2003). The court, however, did consider the merits of EEP's motion. The court found that EEP owned no physical assets in Illinois, conducted no business in Illinois, and, critically, that it did not "in and of itself" own and operate crude oil and liquid petroleum transportation assets. *See id.* at 3-4. Rather, EEP's limited partner ownership interest in EELP, the company that operated the pipeline system, was the "only contact" established by the plaintiff. *Id.* As a result, the court found that "[t]he activity of a

9

partnership usually cannot be attributed to a limited partner owner of that company for the purposes of determining minimum contacts," and granted EEP's motion to dismiss. *Id.* at 4 (citing *IDS Life Ins. Co v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)).

The facts analyzed by the *Solaia* court are still the same here: EEP owns a limited partner interest in EELP, but has no other contact with the State of Wisconsin or the pipelines, easements, and contracts at issue in this case. Accordingly, EEP must be dismissed for lack of personal jurisdiction.

### C. Due Process Considerations

Even if the Court were to find that any of the Moving Defendants had sufficient minimum contacts with Wisconsin and that the case arose from forum-related activities, "the court cannot exercise personal jurisdiction over a defendant if doing so would offend traditional notions of fair play and substantial justice." *Lexington Ins. Co.*, 286 F. Supp. 3d at 991 (W.D. Wis. 2017) (dismissing for lack of personal jurisdiction where foreign companies "maintain no office and employ no agent in Wisconsin and must expend considerable resources to litigate in a foreign legal system."). To assess whether substantial justice requires exercising personal jurisdiction over the Moving Defendants in this case, the Court should consider and emphasize two factors critical to this case: "the forum state's interest in adjudicating the dispute" and "the plaintiff's interest in obtaining convenient and effective relief." *Id.*

The State's interest in resolving this dispute is not impeded in any way by dismissing the Moving Defendants. For example, Plaintiff's Complaint seeks various declarations and orders as to (a) the easements <u>held by EELP</u> that it alleges expired in 2013 and (b) disputes <u>EELP's right, as operator of Line 5</u>, to keep Line 5 operational under the lands at issue. *See* Compl. at 51. As a result of those allegations, Plaintiff can obtain complete relief, should any be warranted, from

EELP only.  Any additional efforts and resources expended by the Moving Defendants to avail themselves of this Court are unnecessary and unjustified.

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendants Enbridge, Inc. and EEP should be dismissed from the Complaint with prejudice for lack of personal jurisdiction.

Dated:  September 24, 2019     Respectfully submitted,

/s/ Michael C. Davis
Michael C.  Davis (admitted Pro Hac Vice)
David L.  Feinberg (admitted Pro Hac Vice)
VENABLE LLP
600 Mass.  Ave., NW
Washington, DC 20004
(202) 344-8278
MCDavis@Venable.com
DLFeinberg@venable.com

Eric M. McLeod
Joseph S. Diedrich
HUSCH BLACKWELL
33 East Main Street, Suite 300
Madison, WI 53701-1379
(608) 234-6056
eric.mcleod@huschblackwell.com

David H. Coburn (admitted Pro Hac Vice)
Shannen W. Coffin (admitted Pro Hac Vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-8063
dcoburn@steptoe.com
scoffin@steptoe.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 24th day of September, 2019, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on counsel of record.

                                              /s/ Michael C. Davis