# ATTACHMENT C

## *Tribal Wetland Ordinance*
**(323.1) Ordinance Title.**
This ordinance shall be known, and may be cited as, the BAD RIVER RESERVATION WETLAND AND WATERCOURSE PROTECTION ORDINANCE.

**(323.2) Findings.**
The Bad River Tribal Council finds that wetlands and watercourses are fragile natural resources with significant development constraints due to flooding, erosion, and soil limitations. In their natural state, wetlands provide important tribal/public benefits and ecological functions. They provide habitat areas for fish, wildlife, and vegetation, water quality maintenance and pollution control, flood control, shoreline erosion control, natural resource education, scientific study, open space, recreation opportunities, environmental niches, and most importantly the traditional, cultural, and spiritual aspects of our heritage.

Previous construction, land development, and other impacts have displaced, polluted, or degraded many wetlands and forested flood plains. Piecemeal or cumulative losses continue to threaten the remaining wetlands. Damaging or destroying wetlands threatens the public safety, health and general welfare of the Band. Preservation of the wetlands in a natural condition is necessary to maintain hydrologic, economic, recreational, subsistence, cultural, spiritual and aesthetic assets for current and future residents of the Bad River Reservation.

It is therefore necessary for the Bad River Band of Lake Superior Tribe of Chippewa Indians (Bad River Tribe) to ensure maximum protection for wetlands by discouraging development activities in wetlands and activities at adjacent upland sites that may adversely affect wetlands.

**(323.3) Purposes.**
It is the policy of the Bad River Tribe to require planning to avoid or minimize damage to wetlands; to require that activities not dependent upon wetland location be located at upland sites; to allow wetland losses only where all practical measures to avoid and minimize have been applied; to reduce losses from activities that are unavoidable and in the public interest; and to provide for the protection of wetlands under existing and additional ordinances adopted by the Tribe including management regulations, stormwater management regulations, floodplain zoning; and to establish standards and procedures for the review and regulation of the use of wetlands and watercourses and the establishment of penalties for the violation of this ordinance.

Furthermore, such development activities shall not threaten Tribal or public safety or cause nuisances by:

(a)   Restricting flood flows, destroying flood storage areas, or destroying storm barriers, thereby raising flood heights or velocities on other land and increasing flood damages;

(b) Causing water pollution through any means including location of wastewater disposal systems in wet soil; unauthorized application of pesticides, and herbicides; disposal of solid wastes or stormwater runoff at inappropriate sites; or the creation of unstabilized fills;

(c) Increasing erosion; or

(d) Increasing runoff of sediment and stormwater.

In addition, it is the policy of the Bad River Tribe that activities in or affecting wetlands do not destroy natural wetland functions and values important to the general welfare by:

(a) Decreasing breeding, spawning, nesting, wintering, feeding, or other critical habitat for any fish or wildlife, including rare, threatened, and endangered plant and animal species and commercially and recreationally important wildlife;

(b) Interfering with the exchange of nutrients needed by fish and other forms of wildlife;

(c) Decreasing groundwater recharge;

(d) Destroying sites needed for education and scientific research;

(e) Interfering with Tribal rights for hunting, fishing, trapping, ricing, and cultural and ceremonial/spiritual uses;

(f) Interfering with other activities such as; boating, hiking, birdwatching, photography, and camping; and

(g) Destroying aesthetic and property values.

**(323.4) Definitions.**
Words and phrases used in this ordinance shall be interpreted as defined below, and, where ambiguity exists, words or phrases shall be interpreted so as to give this ordinance the most reasonable application in carrying out its regulatory purpose.

(a) "Activity" shall mean any use, operation, development or action caused by any person, including, but not limited to, constructing, operating or maintaining any use or development; erecting buildings or other structures; depositing or removing material; dredging; ditching; land balancing; draining or diverting water; pumping or discharge surface water; grading; vegetative clearing or excavation; mining or drilling operations.

(b) "Applicant" shall mean the owner of record or lessee of affected property and/or his or her agents, designees or assigns applying for a wetland permit related to direct and indirect impacts pursuant to this ordinance.

(c)   "Bad River Natural Resources Department" shall mean the Bad River Natural Resources staff.

(d)   "Bad River Tribal Council" shall mean the Bad River Tribal Council consisting of: Chairperson, Vice-Chairperson, Secretary, Treasurer, Senior and Junior Council members.

(e)   "Bad River Tribe" shall mean the Bad River Band of Lake Superior Tribe of Chippewa Indians, represented by the Bad River Tribal Council for the membership.

(f)   "Buffer area" shall mean a minimum of one hundred (100) feet surrounding open water wetlands and top of fifteen percent (15%) or steeper slopes.

(g)   "Bottomland" shall mean the land area of a pond or lake which lies below the ordinary high water mark and which may or may not be covered by water. These landscape setting areas also include lowland forests, seasonally ponded and/or surface saturated areas normally associated with these water bodies.

(h)   "Channel" shall mean the geographical area within the natural or artificial banks of a watercourse required to convey continuously or intermittently flowing water under normal or average flow conditions normally defined as area within banks that can convey one (1) to three (3) year storm events.

(i)   "Contiguous" shall mean a permanent or seasonal connection of wetlands to a lake or stream, including direct or indirect connections and above-ground or below-ground connections.

(j)   "Deposit" shall mean to fill, place, or dump.

(k)   "Demonstrable threat" shall mean clear evidence of destructive land use changes that are consistent with local and regional land use trends, and that are not the consequence of actions under the permit applicant's control.

(l)   "Development" shall mean any artificial change to improved or unimproved real estate, including but not limited to, buildings or other structures, mining, dredging, filling, grading, paving, excavation, or drilling operations.

(m)   "Fill material" shall mean soil, sand, gravel, clay, peat, debris and refuse, waste of any kind, or any other material which displaces soil or water or reduces water retention potential.

(n)   "Floodplain" shall mean that area of land adjacent to the channel of a river, stream, watercourse, lake or other similar body of water subject to flooding above the one (1) to three (3) storm event.

(o) "Free of contamination" shall mean that soil or materials brought to a site for use in the wetland or in the buffer zone of a wetland, shall be non-polluting. Such certification shall be made by the applicant to the satisfaction of the Wetlands Ordinance Administrator. The Wetlands Ordinance Administrator shall determine whether there is sufficient reason to require a test for contamination of fill material.

(p) "Functions" shall mean the beneficial roles wetlands serve, including storage, conveyance, and attenuation of floodwaters and stormwater; groundwater recharge and discharge; protection of water quality and reduction of sediment and erosion; production of waterfowl, game and nongame birds, mammals, and other living resources; protection of habitat for rare, threatened, and endangered species; food chain support for a broad range of wildlife and fisheries; educational, historical, and cultural, spiritual, archeological value protection; and scenic, aesthetic, and recreational amenities.

(q) "Hydric Soils" shall mean soils that satisfy the most current United States Department of Agriculture, Natural Resources Conservation Service criteria.

(r) "Hydrophytic vegetation" shall mean macrophytic plant life growing in water or on a substrate that is at least periodically deficient in oxygen as a result of excessive water content.

(s) "Lake" shall mean an area of permanent open water which is five (5) acres or more in size.

(t) "May" shall mean an auxiliary verb qualifying the meaning of another verb by expressing ability, permission, or possibility. The word "may" is indicative of discretion or choice between two (2) or more alternatives.

(u) "Notification" shall mean where notice is required pursuant to this ordinance, written notice sent by first class mail shall be sufficient notice for all purposes hereunder.

(v) "Owner" shall mean any person, corporation, cooperative or agency who has dominion over, control of, or title to, wetland properties.

(w) "Ordinary high water" mark shall mean the line between upland and bottomland which persists through successive changes in water levels, below which the presence and action of the water is so common or recurrent that the character of the land is markedly distinct from the upland and is apparent in the soil itself, the configuration of the surface of the soil and the vegetation.

(x) "Person" means an individual, sole proprietorship, partnership, corporation, association, municipality, the Tribe, an instrumentality or agency of the Tribe, state government, the federal government, an instrumentality or agency of the federal government, or other legal entity.

(y)   "Pond" shall mean any body of permanent open water one (1) acre to five (5) acres in size.

(z)   "Practicable Alternative" shall mean an alternative to the proposed project that would accomplish the basic purpose of the project and avoid or have less adverse environmental impact. This takes into consideration the cost of the activity to the developer, the cost of the lost wetland functions and values, available technology and logistics in light of the overall project purposes.

(aa)   "Protected wetlands" shall mean any of the following:

1.   The following wetlands:
   i.   Wetlands contiguous to any lake, stream, river, pond, or other water course, whether partially or entirely contained within the project site.
   ii.   Wetlands, regardless of size, which are partially or entirely within five hundred (500) feet of the ordinary high water mark unless any lake, stream, river, pond, or other water course is determined by the Bad River Natural Resources Department that surface and groundwater hydrologic connection does not exist.
   iii.   Wetlands, regardless of size, which are not contiguous to any lake, stream, river, pond or other watercourse, if the Bad River Natural Resources Department determines the protection of the wetland is essential to the preservation of the natural resources of the Tribe from pollution, impairment or destruction.
2.   All wetlands which are two (2) or more acres in size, whether partially or entirely contained within the project site.
3.   Wetlands, regardless of size, that protects critical natural resources from pollution, impairment or destruction as determined by the Bad River Natural Resources Department. In making this determination, the Bad River Natural Resources Department must find one or more of the following functions or values apply to the particular site:
   i.   It supports tribal, state or federally endangered or threatened plants, fish or wildlife.
   ii.   It is determined to be a rare or uncommon wetland in the region.
   iii.   It has rare or unique features.
   iv.   It supports Tribal rights for hunting, fishing, trapping, ricing, and cultural and ceremonial/spiritual uses.
   v.   It is used for scientific research.
   vi.   It provides water quality enhancement, floodflow alteration and/or sediment stabilization.
4.   Buffer areas adjacent to any of the wetlands listed above or watercourses, whether partially or entirely on the project site. Buffer areas or portions thereof which are located within the project site shall be protected even if the adjacent wetland or watercourse is not located on the project site. Buffer size shall be a minimum of one hundred (100) feet surrounding open water wetlands and top of fifteen percent (15%) slopes.

(bb) "Runoff" shall mean the surface discharge of precipitation to a watercourse, drainageway, swale, or depression.

(cc) "Seasonal" shall mean any intermittent or temporary activity which occurs annually and is subject to interruption from changes in weather, water level, or time of year, and may involve annual removal and replacement of any operation, obstruction or structure.

(dd) "Sloughs" shall include the Bad River/Kakagon Sloughs complex, Sand Cut Slough and Honest John Lake, in their entirety or any part.

(ee) "Structure" means anything constructed or erected with a fixed location on the round, or attached to something having a fixed location on the ground including but not limited to houses, buildings, bulkheads, piers, docks, landings, dams, waterway obstructions, gas or liquid storage facilities, as well as mobile homes.

(ff) "Tribal" shall mean in relation to the Bad River Tribe.

(gg) "Tribal Council" shall mean the Bad River Tribal Council.

(hh) "Upland" shall mean the land area which lies above the ordinary high water mark, or well drained land which supports predominance of upland vegetation.

(ii) "Permit" shall mean the Bad River Tribal Council or Natural Resources Department or Wetlands Ordinance Administrator approval required for activities described in Paragraph 323.6 of this ordinance.

(jj) "Water dependent" shall mean that the activity is of a nature that requires location in or adjacent to surface waters or wetlands to fulfill its basic purpose.

(kk) "Watercourse" shall mean any waterway, drainageway, drain, river, stream, lake, pond or any body of surface water having definite banks, a bed and visible evidence of a continued flow or continued occurrence of water.

(ll) "Wetland" shall mean an area that is inundated or saturated at or near the surface caused by surface water or groundwater at a frequency and duration sufficient to support, and that under normal circumstances does support, a prevalence of vegetation typically adapted for life in aquatic or saturated soil conditions, commonly known as hydrophytic vegetation, that satisfy the 1987 Corps of Engineers Wetland Delineation Manual and subsequent revisions, guidance and updates.

(mm) "Wetlands Inventory Map" shall mean the Bad River Natural Resources Department's wetland map, as updated from time to time, which delineates the general location of wetlands throughout the Bad River Reservation.

(nn) "Wetland mitigation" shall mean the following sequence:

1. avoiding both direct and indirect impacts to wetland ecosystems; then
2. minimizing both direct and indirect impacts to wetland ecosystems; then
3. compensating for direct and indirect impacts to wetland ecosystems through preservation, restoration, enhancement and establishment activities that focus on the protection of ecologically important wetlands, such as the Bad River/Kakagon Sloughs complex.

(oo) "Wetlands Ordinance Administrator" shall mean a designated staff member of the Bad River Natural Resources Department, preferably the Wetlands Specialist.

(pp) "Wetland vegetation" shall mean the sum total of macrophytic plant life that occurs in areas where the frequency and duration of inundation or soil saturation produce permanently or periodically saturated soils of sufficient duration to exert a controlling influence on the plant species present.

**(323.5) Relationship to Federal Permit Requirements.**
Whenever persons requesting a permit are also subject to Federal permit requirements, the following shall apply:

(a)   Approvals under this section shall not relieve a person of the need to obtain a permit from the U.S. Army Corps of Engineers or Environmental Protection Agency, if required.

(b)   Issuance of a permit by the U.S. Army Corps of Engineers or Environmental Protection Agency shall not relieve a person of the need to obtain approval under this ordinance, if applicable.

(c)   If requirements of federal and Tribal regulations vary, the most stringent requirement shall always be followed.

(d)   The Bad River Natural Resources Department may defer the review and approval of proposed uses in protected wetlands and watercourses until after permits from the U.S. Army Corps of Engineers and the U.S. Environmental Protection Agency have been obtained.

(e)   Nothing in this ordinance should be construed as an acknowledgement of consent to state jurisdiction within the exterior boundaries of the Bad River Reservation.

**(323.6) Applicability to Private and Public Agency Activities and Operations.**
The provisions of this ordinance, including permit requirements and criteria for permit approval, shall apply to activities and operations proposed by federal, state, local and other public agencies as well as private organizations, individuals and Tribal departments.

**(323.7) Prohibited Activities.**
Except for those activities expressly permitted by Paragraph 323.8, it shall be unlawful for any person to do any of the following unless and until a permit is obtained from the Bad River Natural Resources Department pursuant to this ordinance.  A permit is required for:

(a)   Depositing or permitting to be deposited any fill material or structures into any watercourse or within or upon any protected wetlands.

(b)   Removing or permitting the removal of any soil from any watercourse or from any protected wetland.

(c)   Removing or permitting the removal of any vegetation, including trees, from protected wetlands if such removal would adversely affect the nutrient cycling, sediment trapping, flood retention, and any other hydrologic functions of such wetlands.

(d)   Dredging, filling, excavating or manipulating watercourses or protected wetlands.

(e) Creating, enlarging, diminishing or altering any lake, pond, creek, stream, river, drain, or protected wetland.

(f) Constructing, operating or maintaining any development in or upon protected wetlands or watercourses.

(g) Erecting or building any structure including but not limited to buildings, roadways, bridges, dams, driving of piles, placement of obstructions, paving, utilities, or private poles, towers in or upon protected wetlands or watercourses.

(h) Constructing, extending or enlarging any pipe, culvert, or open or closed drainage facility which discharges silt, sediment, organic, or inorganic materials, chemicals, fertilizers, flammable liquids or other pollutants to any lake, stream, protected wetland, or watercourse, except through a retention area, settling basin, or treatment facility designed to control and eliminate the pollutant. The ordinance shall apply to all land uses.

(i) Constructing, enlarging, extending or connecting any private or public sewage or waste treatment plant discharge to any lake, stream, river, pond, watercourse, or protected wetland except in accordance with the requirements of the Bad River Tribe, State of Wisconsin and/or the United States, to the extent that such entities have jurisdiction.

(j) Draining, or causing to be drained, any water from a protected wetland or water course including water withdrawals.

**(323.8) Exempt Activities.**
Notwithstanding the prohibitions of Paragraph 323.7, the following activities are permitted within watercourses or protected wetlands without a permit, unless otherwise prohibited by any other ordinance or other Tribal law:

(a) Fishing, hunting, fishing, harvesting, cultural, swimming, boating (see attached Slow-No-Wake Ordinance in *Appendix C*), canoeing, hiking, horseback riding, bird-watching, or other similar recreational activities which do not require extensive alteration of wetland vegetation or grading of soils.

(b) Harvesting of wild plants in a manner that is not injurious to natural reproduction of such plants and provided the harvesting does not require alteration of the wetland by changing existing wetland water conditions or sources, tilling of soil, or planting of crops, and is not otherwise illegal;

(c) Grazing and/or watering of animals: provided that the activity is conducted using best management practices to ensure that flow and circulation patterns, and chemical and biological characteristics of wetlands are not impaired and that any adverse effect on the aquatic environment will be minimized.

(d)   The continued production of agricultural crops on lands that have been in agricultural use prior to the effective date of this ordinance unless these practices cause environmental damage, in which case best management practices will be required to minimize environmental degradation. New conversion of wetlands for agricultural use is not exempted under this ordinance. Existing ditches, roads and culverts may be maintained to and not exceed the original constructed dimensions.

(e)   Uses outlined below require submitting plans to the Wetlands Ordinance Administrator for review and comment but shall be exempt provided that the work is conducted using best management practices to ensure that flow and circulation patterns, and chemical and biological characteristics of wetlands are not impaired and that any adverse effect on the aquatic environment will be minimized.

1.   Installation for noncommercial use of temporary seasonal docks, rafts, diving platforms and other recreational devices customarily used for residential purposes. Written notice to the Wetlands Ordinance Administrator is required fifteen (15) prior to the commencement of work to be conducted in wetlands under this exemption.

2.   Maintenance or improvement of public streets, highways, or roads, within the original right of way that is designed to ensure that any adverse effect on the wetland will be minimized. Existing ditches, roads and culverts may be maintained to and not exceed the original constructed dimensions. Maintenance or improvement does not include adding extra lanes, increasing right of way, or deviating from the existing location of the street, highway, or road. Written notice to the Wetlands Ordinance Administrator is required fifteen (15) days prior to the commencement of work to be conducted in wetlands under this exemption.

3.   Maintenance or repair of lawfully located structures and facilities used in the service of the public to provide electric, gas, water, telephone, telegraph, telecommunication, stormwater conveyance or other services, provided that the work is conducted using best management practices and does not increase the overall footprint. Written notice to the Wetlands Ordinance Administrator is required fifteen (15) days prior to the commencement of work to be conducted in wetlands under this exemption.

4.   Maintenance or repair of existing drainage, irrigation systems, or access roads necessary for the cultivation of agricultural crops, provided that the maintenance or repair activity does not result in additional impairment, alteration, or loss of wetlands beyond the impacts of the original project. Written notice to the Wetlands Ordinance Administrator is required fifteen (15) days prior to the commencement of work to be conducted in wetlands under this exemption.

5.   Forestry practices including the thinning and harvesting of timber. The Wetlands Ordinance Administrator will require that forestry activities be conducted in accordance with the Bad River Integrated Resource Management Plan which incorporates best management practices. If he/she determines that ongoing or proposed forestry activities are likely to have a significant impact on wildlife, the

protection of water quality, or other functions of wetlands as described in this ordinance, the Wetland Ordinance Administrator shall specifically request in writing that the landowner provide a forest management plan, including a site specific timber harvest prescription for each project.  The landowner shall provide a plan that protects the range of wetland functions present at the particular site. Existing ditches, roads and culverts may be maintained to and not exceed the original constructed dimensions.

(g)   Excavation and filling of no more than fifty (50) cubic yards of material if necessary for the repair or maintenance of bridges and other existing structures, provided that such structures allow for the unobstructed flow of water, including fish passage, and preserve the natural contour of protected wetlands, except as authorized by permit.

(h)   Improvement or maintenance of the river(s) or their tributaries when such operations are organized or sponsored by the Bad River Tribe and are specifically intended to preserve natural resources. Such permitted activities shall include, but not be limited to:

1.   Removal of materials which may cause diverted flows and bank erosion, including the removal of trees, brush, and debris;
2.   Bank stabilization projects which require minimal disturbance of existing conditions;
3.   Wildlife and aquatic habitat improvement projects; and
4.   Removal of beaver dams.

## (323.9) Wetlands Inventory Map.

The Bad River Tribe hereby designates for reference an official inventory map of wetland areas showing the general location of wetlands within the exterior borders of the Bad River Reservation, Ashland and Iron Counties, Wisconsin on their Geographical Information System in the Bad River Natural Resources Department. The said wetlands map shall be updated either from on-site inspection by Bad River Natural Resources Department at their discretion and when the Wisconsin Wetlands Inventory maps are revised. The wetlands map shall serve as a general guide for the delineation of wetland boundaries. Field investigations to delineate the precise boundaries of wetlands on a project site shall be the responsibility of the applicant. In cases where the Bad River Tribe needs additional information to complete a permit application review, the Bad River Natural Resources Department may complete on site investigations of protected wetlands and watercourses at the expense of the applicant or require the applicant to provide such information.

The Wetland Inventory Map shows only the general location of wetlands. The map should be consulted by persons contemplating activities in or near wetlands before engaging in a regulated activity. The Wetland Inventory Map together with an explanatory letter is hereby adopted by reference and declared to be a part of this ordinance. The Wetland Inventory Map shall be on file in the office of the Bad River Natural Resources Department.

**(323.10) Applicable Geographic Area.**
This ordinance shall apply to all lands located within the exterior boundaries of the Bad River Reservation. Areas shown on the wetlands map are presumed to be wetlands consistent with the definition thereof unless field determination indicates otherwise.

Wetlands may exist within the Reservation that are not indicated on the Wetland Inventory Map. These unmapped wetlands are hereby designated to be within the exterior boundaries of the Bad River Reservation and protected under all of the terms and provisions of this ordinance. Field determination is therefore necessary to confirm the presence or absence of protected wetland systems.

**(323.11) Rules for Interpretation of Wetland Delineation Boundaries.**
The determination of the boundaries of the wetland delineation shall be determined through a field review by a person who has received training and has two (2) years of documented experience in wetland delineation, if warranted. The wetland field determination shall be the responsibility of the applicant. The Wetland Inventory Map is to be used as a guide to the general location of wetlands. The applicant is required under Paragraph 323.12(b) of this ordinance to show a Wetland Delineation boundary on a scaled drawing submitted as part of the permit application. Wetland delineations shall be performed in accordance with the procedures specified in the 1987 Corps of Engineers Wetland Delineation Manual and any subsequent amendments. Evidence documenting the results of the boundary survey as well as course completion certificate and documented wetland delineation experience may be required by the Wetlands Ordinance Administrator.

Where the Wetlands Ordinance Administrator performs a wetland determination at the request of the applicant, it shall be considered a final determination. Where the applicant has provided a determination of the wetland boundary, the Wetlands Ordinance Administrator shall verify the accuracy of, and may render adjustments to, the boundary delineation. In the event the adjusted boundary delineation is contested by the applicant, the Wetlands Ordinance Administrator shall, at the applicant's expense, obtain competent expert services to render a final delineation to the Wetlands Ordinance Administrator for final decision. The Wetlands Ordinance Administrator may use remote sensing, hydrology, soils, plant species, and other data, and consult with biologists, hydrologists, soil scientists, or other experts as needed to perform a final wetland determination. The applicant shall be charged for costs incurred.

**(323.12) Application for Permit**
Application for a permit to use protected wetlands or watercourses for a purpose described in Paragraph 323.7 shall be filed with the Bad River Natural Resources Department. Unless the Wetlands Ordinance Administrator waives one or more of the following information requirements, applications for a permit for a regulated activity shall include:

(a)  An application for a permit to conduct a regulated activity shall be made in duplicate to the Wetlands Ordinance Administrator on forms furnished by his or her office.  Permits shall ordinarily be valid for a period of two years from the date of issue and shall expire at the end of that time unless a longer period is specified by the Wetlands Ordinance Administrator upon issuance of the permit. An extension of an original permit may be granted upon written request to the Wetlands Ordinance Administrator by the original permit holder or the successor in title. The request for renewal of a permit shall follow the same form and procedure as the original application except that the Wetlands Ordinance Administrator shall have the option of not holding a hearing if the original intent of the permit is not altered or extended in any way. The Wetlands Ordinance Administrator may require additional information notice and/or hearings if, in his or her judgment, the original intent of the permit is altered or extended by the renewal or if the applicant failed to abide by the terms of the original permit.

(b)  Duplicate copies of a drawing of the proposed activity, including at least the following:

1.  Title block, including the applicant's name, name of the waterbody, County, City, (Township, Range, Section, 1/4, 1/4), description of activity, scale of drawing, date drawing was prepared, name and professional credential of the engineer, architect, or planner preparing the site drawing and the name and professional credentials of the wetlands scientist or environmental specialist who delineated the wetland boundaries;

2.  Copy of wetland delineation report that includes a functional assessment on each different wetland type of the project, unless delineation was executed by the Bad River Natural Resources Department. The functional assessment method is to be submitted for approval to the Bad River Natural Resources Department for approval prior to the execution of the wetland delineation;

3.  Location and extent of protected wetlands and watercourses are to be identified through field investigation and presented on a topographic map of suitable scale.  A scale of at least one (1) inch equals fifty (50) feet is required for all projects;

4.  Types of wetlands on the site, e.g., forested, shrub swamp, shallow marsh, wet meadow, and aquatic bed, are to be identified by using classifications as outlined in the Eggers, Steve D. and Donald M. Reed. 1997. Wetland plants and communities of Minnesota and Wisconsin. U.S. Army Corps of Engineers, St. Paul District. Northern Prairie Wildlife Research Center Online. http://www.npwrc.usgs.gov/resource/1998/mnplant/mnplant.htm Version 03SEP98;

5.  A site plan, or planning map (mylar) which overlays the proposed development or project onto wetlands and watercourses, where existing and proposed structures shall be clearly identified in relation to existing wetland features and topography.  If existing structures were previously authorized by Tribe, township(s), Ashland County, state, or federal permit, list the corresponding permit numbers;

6.  Typical cross sections of existing and proposed structures, dredge cuts and fills, including dimensions and elevations, and location of wetlands;

7.  Identification of type, volume, and area for proposed construction materials, dredge material, and fill materials;

8. Identification of type and location of soil erosion control measures to be used during construction, including measures which will be used to trap sediments which might otherwise run off into wetlands;

9. Identification of disposal areas for dredged material, if any, vicinity map showing the disposal area if off-site disposal is proposed, and method for containing dredge material to prevent re-entry into wetlands or watercourses;

10. Bridge or culvert cross section, if any, including the location of wetlands, and a profile of the proposed structure showing the proposed end treatment and bank stabilization locations; and

11. Consent to jurisdiction of the Bad River Tribal Court.

(c) Duplicate copies of a cover letter signed by the applicant including the following information:

1. Name of project and brief description (one sentence);
2. Date upon which the activity is proposed to commence;
3. Explanation of why the project meets the use standards and criteria contained in Paragraph 323.16 of this ordinance;
4. List of all federal, state, county or other local government agency permits or approvals required for the proposed project including permit approvals or denials already received. In the event of denials, the reasons for denials shall be given. Attach copies of all permits which have been issued;
5. Identification of any present litigation involving the property; and
6. Signature of applicant.

(d) Additional information. The Wetlands Ordinance Administrator may require additional information from the applicant, including, but not limited to, documentation and evidence of a wetland boundary determination by field survey; documentation of the ecological, aesthetic, economic, or other values of a wetland; a study of flood, erosion, or other hazards at the site; evidence of any protective measures that might be taken to reduce such hazards; and any other information deemed necessary to verify compliance with the provisions of this ordinance or to evaluate the proposed use in terms of the purposes of this ordinance.

(e) Any person may request whether a proposed activity or an area is subject to this ordinance by written submittal to the Wetlands Ordinance Administrator. Such a request for jurisdictional determination shall contain plans, location map, wetland data, and other information as may be specified by the Wetlands Ordinance Administrator.

## (323.13) Fees

Applications for a permit under this section shall be accompanied by a nonrefundable administrative application fee in an amount based on current rates specified from time to time by resolution of the Bad River Tribal Council. In addition, an applicant shall pay an additional escrow fee in an amount determined by the Bad River Natural Resources Department to pay for the estimated cost of outside consultant(s) who may be retained by the Bad River Tribe in

connection with the review of the application. In the event the cost of the services of the consultant(s) is less than the escrow fee, the applicant shall be refunded the balance. In the event the cost of the services of the consultant(s) exceeds the amount of the escrow fee, the applicant shall pay the deficiency to the Bad River Natural Resources Department prior to the issuance of a permit. A denial of an application for a permit shall not affect the applicant's obligation to pay the escrow fee provided for in this ordinance.

**(323.14) Bad River Natural Resource Department Review.**
The Bad River Natural Resource Department shall process a permit application as follows:

(a)    The Wetlands Ordinance Administrator will provide the initial processing and review of the permit application to verify that all required information has been provided. The Wetlands Ordinance Administrator will then coordinate a review period with the Bad River Natural Resources Department and other commenting reviewers within the Tribe. The applicant or the Bad River Tribal Council may request an administrative meeting to review the proposed activity in light of the purposes of this ordinance. This administrative meeting will also determine whether public notice and comment are required.

(b)    Upon receipt of a complete application, the Wetlands Ordinance Administrator may conduct or authorize the completion of a field investigation to review and verify the accuracy of information received and during such review shall refer to the wetlands map. The receipt of a permit application shall comprise permission from the owner to complete an on-site investigation. If a proposed project affects protected wetlands, the Bad River Natural Resources Department review procedures shall be initiated upon receipt of a completed permit application.

(c)    If a proposed project requires a wetland permit from the U.S. Army Corps of Engineers, the Bad River Natural Resources Department shall provide notification to the applicant that it has received the permit application. The Bad River Natural Resources Department may elect to defer consideration of the application until after the federal permits have been obtained.

(d)    If the Bad River Natural Resources Department chooses to complete its review of a proposed use application prior to federal permit issuance, the Bad River Natural Resources Department shall coordinate field investigations with federal agency personnel.

(e)    Plans for wetland mitigation shall not be considered unless and until the requirements of Paragraphs 323.16, 323.17, 323.20, and 323.21 of this ordinance have been met.

(f)    Until the Tribe has full regulatory authority under federal law to carry out all provisions of this ordinance, the Tribe will implement those procedures designated by the U.S. Army Corps of Engineers that coincide with the current federal permitting requirements leading to a federal permit application for Tribal members within the boundaries of the reservation.

In addition, the requirements may include provisions stated in a memorandum of agreement with the U.S. Army Corps of Engineers for Tribal development projects.

(g)   The Bad River Natural Resources Department shall issue a permit through the Wetland Ordinance Administrator if they determine that the proposed activity satisfies the wetland ordinance.

**(323.15) Rules of Procedure for Wetland Program Administration.**
The Bad River Natural Resources Department shall draft rules of procedure governing meetings, the order of business, bylaws, and hearings that relate to the Wetlands Program. All permit appeals shall be appropriately noticed by publication in a newspaper of general circulation in the area. Such notice shall be given not less than fifteen (15) days before the hearing date.

**(323.16) Permit Standards and Criteria.**
The Bad River Natural Resource Department and the Wetland Ordinance Administrator in making a recommendation with respect to a permit application shall consider the following standards and criteria:

(a)   A permit shall be issued only if the proposed project or activity is in the Tribal interest and is otherwise lawful in all respects.

(b)   In determining whether the activity is in the Tribal interest, the benefit which would reasonably be expected to accrue from the proposal shall be balanced against the reasonable foreseeable detriment of the activity, taking into consideration the tribal, local, state and national concern for the protection and preservation of natural resources from pollution, impairment and/or destruction. The following general factors and criteria shall be considered:

1.   The activity is water-dependent or requires access to the wetland as a central element of its basic function, or is not water-dependent but has no practical upland-only alternative;
2.   The availability of feasible and prudent alternative methods and location, other than the project as-proposed, to achieve the expected benefits from the activity;
3.   The extent and permanence of the beneficial or detrimental effects which the proposed activity may have on the tribal, public and private use to which the area is suited, including the benefits the protected wetland provides.
4.   Tribal, public and private economic value of the proposed land change to the general area;
5.   The probable effect on ecological or recreational values and on the public, fish, plant or wildlife health;
6.   The probable effect of the proposal in relation to the cumulative effect created by other existing and anticipated activities in the watershed;
7.   The probable effect on recognized historic, cultural, and spiritual values;
8.   The size and quality of the protected wetland being considered;

9. The amount and quality of remaining wetland in the watershed should the project be implemented;
10. Proximity to any waterway;
11. Extent to which upland soil erosion adjacent to protected wetlands or drainage ways is controlled should the project be implemented; and
12. Findings of necessity for the proposed project which have been made by Tribal Council and/or federal agencies.

(c) A permit shall not be granted unless it is shown that:

1. Disturbance of aquatic resources will be avoided then minimized to the extent practicable;
2. The proposed activity is primarily dependent upon being located in the protected wetland;
3. A less damaging feasible alternative does not exist; and
4. The proposed activity will result in the minimum negative effect upon protected wetlands, watercourses, and attendant natural resources, which shall include, but not be limited to:
   i. Minimum feasible alteration or impairment to the wetlands functions and existing contour, vegetation, fish and wildlife resources, and hydrological conditions;
   ii. Critical habitat protection for any species that appears on tribal, federal or State of Wisconsin endangered species lists;
   iii. Significant degradation of groundwater or surface-water quality;
   iv. Compliance with all applicable tribal, state, local, and federal laws, including those related to sediment control, pollution control, floodplain zoning, and on-site wastewater disposal;
   v. Compliance with other standards contained in the ordinance, including those pertaining to wetland creation, restoration, and preservation as required; and
   vi. No overall net loss of wetland area or function.

(d) A request for a permit in a buffer area for erosion control structures, storm water management facilities, and water-dependent structures shall be approved, provided that the flow of water is not diverted from protected wetlands and that excessive siltation does not occur in the protected wetlands. The use of the buffer area for other permanent structures, earth-moving activities or other uses shall only be approved in accordance with the standards and criteria contained in this Paragraph.

(e) The permit shall be issued only if the proposed project or activity will provide a wetland buffer area of not less than that described in the wetland mitigation plan between the wetland and upland activities for those portions of a regulated activity that need not be conducted in the wetland.

(f)     Requirements in this ordinance for protection and use of the buffer area shall supersede all zoning district setbacks for front, rear and side yards where such setbacks are less than fifty (50) feet from the property line.

**(323.17) Practicable Alternatives Test.**
For all permit applications, an alternative site for the proposed activity shall be considered practicable if it is available and makes accomplishing the basic purpose possible while having less negative environmental impact.  There is no practicable alternative if the applicant demonstrates all of the following to the satisfaction of the Wetlands Ordinance Administrator:

(a)     The basic purpose of the project cannot reasonably be accomplished using one or more other sites in the general region that would avoid, or result in less adverse impact to, wetland;

(b)     The basic purpose of the project cannot be accomplished by a reduction in the size, scope, configuration, or density of the project as proposed or by changing the design of the project in a way that would avoid or result in fewer adverse effects on wetland; and

(c)     In cases where the applicant has rejected alternatives to the project as proposed due to constraints such as inadequate zoning, infrastructure, or parcel size, the applicant has made reasonable attempts to remove or accommodate such constraints.

**(323.18) Permit Conditions.** Whenever the Wetlands Ordinance Administrator approves the issuance of a permit, the Bad River Natural Resources Department, the Tribal Council or the Wetlands Ordinance Administrator shall:

(a)     Attach any reasonable conditions considered necessary to insure that the intent of this ordinance will be fulfilled, to minimize or mitigate damage or impairment to, encroachment in or interference with natural resources and processes within the protected wetlands or watercourses, or to otherwise improve or maintain the water quality.  Such conditions may include but are not limited to:

1.     Limitations on minimum lot size for any regulated activity;
2.     Requirements on structures to be elevated on piles and otherwise protected against natural hazards;
3.     Modification of waste disposal and water supply facilities;
4.     Imposition of operational control, sureties, and deed restrictions concerning future use and subdivision of vegetation removal;
5.     Dedication of easements or other perpetual conservation restrictions to protect wetlands;
6.     Establishment and maintenance of vegetated buffer zones separating and protecting the wetland from proposed activities;
7.     Erosion control and stormwater management measures;
8.     Setbacks for structures;

9. Limitations on the amount of fill material, and requirements that fill material must be free of contamination;

10. Modification in project design to ensure continued water supply to the wetland and circulation of water in the wetland system;

11. Development of a plan to guide actions involving the creation of a new wetland or the restoration of a damaged or degraded wetland. Applicable Tribal or federal standards must be followed if creation or restoration projects are proposed; and

12. Any conditions related to wetland mitigations shall follow the provisions of Paragraphs 323.16, 323.17, 323.20, and 323.21 of this ordinance.

(b) Fix a reasonable time to complete the proposed activities.

(c) Require the applicant to file with the Bad River Tribe cash or corporate surety bond or irrevocable bank letter of credit in an amount, if any, determined necessary to insure compliance with the permit approval conditions and this ordinance.

(d) Require that final approval of a permit application shall be contingent upon receipt of evidence by the Bad River Tribe that required federal permits, if any, have been obtained by the applicant.

**(323.19) Protection of Wetlands and Watercourses During and After Construction.**
An applicant who has received a permit under this ordinance shall comply with the following in connection with any construction or other activity on the property for which the permit has been issued:

(a) Maintain soil erosion control structures and measures, including but not limited to silt fences, straw bale dikes, earthen berms, and sediment traps. The landowner shall provide for periodic inspections throughout the duration of the project.

(b) Through staking or other means acceptable to the Bad River Natural Resources Department, clearly identify the locations of protected wetlands or watercourses on the project site so that such locations are visible to all construction workers. The visible identification of protected wetlands and watercourses shall be in place prior to the grading of any land or issuance of any construction permit.

(c) Ensure that there is no encroachment of equipment or earth-moving activities into protected wetlands or watercourses except as provided in the permit.

(d) Prominently display at the site a copy of the permit or other evidence that a permit has been obtained. The owner shall display a copy of the permit or other certification continuously when authorized activities are conducted and for five (5) days following completion. The owner shall allow representatives from the Bad River Natural Resources Department to enter and inspect the premises at any reasonable time, and failure to allow inspections shall constitute a violation of this ordinance.

**(323.20) Consideration of Proposals for Wetland Mitigation.**

As a condition of a permit issued or as an enforcement action under this ordinance, the Wetland Ordinance Administrator may require that the applicant engage in the restoration or creation of wetlands in order to offset, in whole or in part, the losses resulting from an applicant's or violator's actions. Prior to considering a proposal for wetland mitigation, the Wetland Ordinance Administrator shall make all of the following findings:

(a)   The long- and short-term effects of the action upon the wetland and associated aquatic ecosystem, and the reversible or irreversible nature of the impairment or loss;

(b)   The type and benefit of the wetland functions and associated resources lost;

(c)   The type, size, and location of the wetland altered, and the effect it may have upon the remaining system or watershed of which the wetland is a part;

(d)   Observed or predicted trends with regard to the gains or losses of this type of wetland in the watershed, in light of natural and human processes;

(e)   The cost and likely success of the possible compensation measures in relation to the magnitude of the proposed project or violation;

(f)   The degree to which the applicant has demonstrated a good-faith effort to incorporate measures to minimize and avoid wetland impacts within the proposed project;

(g)   That all feasible and prudent efforts have been made to avoid the loss of protected wetland;

(h)   That all practical means have been considered to minimize effects on protected wetland;

(i)   That it is practical to replace the protected wetland that could not be avoided; and

(j)   That all alternatives for preserving protected wetlands and watercourses have been evaluated and found to be impractical, inappropriate, or ineffective.

**(323.21) Criteria for Approving Proposals for Wetland Mitigation.**

If the Bad River Natural Resources Department, the Bad River Tribal Council, or the Wetlands Ordinance Administrator determines that it is practical to replace the protected wetlands which will be affected, mitigation plans shall be approved only if all of the following criteria are met:

(a)   That the mitigation plan provides for the substantial replacement of the predominant functions of the protected wetland to be lost;

(b)   That the mitigation plan provides for no net loss of protected wetland resources and watercourses (for purposes of this sub-Paragraph buffer area shall not be considered

protected wetland) unless the Bad River Natural Resources Department or the Wetlands Ordinance Administrator determines that the net loss will result in a minimum negative effect upon protected wetlands, watercourses, and attendant natural resources under all of the circumstances;

(c)   That the mitigation plan has been coordinated with requirements of federal, state, and local agencies, if applicable; and

(d)   That a plan to monitor preserved and replacement wetlands has been specified with the goals, objectives, and performance standards to compensate, rectify, or reduce the effects for the loss of functional value to the impacted wetland. The Bad River Natural Resources Department and the Wetlands Ordinance Administrator may accept or recommend an alternative proposal.

Such proposal may involve a monetary compensation fee as provided for in this ordinance for the creation or restoration of an "out of kind" and "off site" high quality wetland mitigation banking strategy.  In the case of tribally designated projects located within the development corridor, mitigation by preservation will be an option at select preservation sites within the Bad River Tribe's Integrated Resource Management Plan conservation and restoration areas or other areas that would contribute to protection of the aquatic environment based on a holistic watershed approach.

**(323.22) Temporary Emergency Permit.**
Notwithstanding the provisions of the ordinance or any other law to the contrary, the Bad River Natural Resources Department may issue a temporary wetlands permit through oral or written authorization, provided a written permit is accomplished within five (5) days, if he/she deems that an unacceptable threat to life or severe loss of property will occur if an emergency permit is not granted. The emergency permit may be terminated at any time without process upon a determination by the Bad River Natural Resources Department that the action was not or is no longer necessary to protect human health or the environment. The Bad River Natural Resources Department may, within 90 days of the emergency permit, require that the action be reconsidered as an after-the-fact permit, subject to any or all of the terms and provisions of this ordinance.

**(323.23) Public Hearing and Recommendations.**
If the Bad River Natural Resources Department determines that the application could have significant impacts on a wetland within the exterior boundaries of the Bad River Reservation, a public hearing shall be scheduled. The hearing shall be held no later than 60 days after receipt of the complete permit application. Notice of the hearing shall be published in one newspaper having general circulation in the area at least 15 days prior to the hearing date. All hearings shall be open to the public. A record of the hearing shall be made. Any person may present evidence and testimony at the hearing. At the hearing, the applicant shall have the burden of demonstrating that the proposed activity will be in accordance with purposes of this ordinance and the standards set forth. Comments received from the public hearing shall be considered by

the Bad River Natural Resources Department in issuing or denying the permit through the Wetlands Ordinance Administrator.

**(323.24) Appeal from Decision of Wetlands Ordinance Administrator.**
Any person denied a permit may appeal to the Tribal Trial Court. An appeal must be filed with the Tribal Trial Court, in writing, within fifteen (15) days of the date of the decision of the Wetlands Ordinance Administrator and shall suspend the issuance of a permit pending the outcome of the appeal. Written notice of the court date will be sent by first class mail to all concerned parties a minimum of fifteen (15) days in advance of the hearing. The Tribal Trial Court shall review to determine if the facts support the conclusion reached by the Wetlands Ordinance Administrator and the Bad River Natural Resource Department. If the Tribal Trial Court determines the facts do not support the conclusion it may remand for further finding or dismiss the case. If the Tribal Trial Court concludes that the facts support the conclusion then it must review the case to determine if the law was correctly applied to the facts. The Tribal Trial Court may reverse, remand, or affirm the decision of the Wetlands Ordinance Administrator and Bad River Natural Resource Department.

**(323.25) Appeal from Decision of Tribal Trial Court.**
Any person denied a permit from the Tribal Trial Court may appeal to the Tribal Appellate Court. An appeal must be filed with the Tribal Appellate Court, in writing, within fifteen (15) days of the date of the decision of the Tribal Trial Court and shall suspend the issuance of a permit pending the outcome of the appeal. Written notice of the court date will be sent by first class mail to all concerned parties a minimum of fifteen (15) days in advance of the hearing. The Tribal Appellate Court shall review to determine if the facts support the conclusion reached by the Tribal Trial Court. If the Tribal Appellate Court determines the facts do not support the conclusion it may remand for further finding or dismiss the case. If the Tribal Appellate Court concludes that the facts support the conclusion then it must review the case to determine if law was correctly applied to the facts. The Tribal Appellate Court may reverse, remand, or affirm the decision of the Tribal Trial Court with the rendered decision considered to be final.

**(323.26) Appeals Standards.**
Both the Tribal Trial Court and the Tribal Appellate Court shall assemble and examine all facts pertaining to the appeal. The appeals hearing shall be open to the public, and each decision shall be in accord with the following standards:

(a)   The applicant has no practicable alternative to the proposed activity;

(b)   The applicant's site plan shows a significant attempt to preserve and protect the wetland;

(c)   The decision is based on proper procedures as specified in the ordinance, and is supported by competent evidence on the record; and

(d)   The decision would not result in a violation of Tribal or federal law or of the constitution of the Tribe or United States of America.

**(323.27) Suspension or Revocation of a Permit.**
The Bad River Natural Resources Department may suspend or revoke a permit if it finds that the applicant has not complied with the conditions or limitations set forth in the permit, or has exceeded the scope of the work set forth in the permit, or has obtained a permit by misrepresentation of, or failure to fully disclose, any relevant facts.

**(323.28) Enforcement and Fines.**
Upon reasonable cause, or obtaining a warrant, the Bad River Natural Resources Department, and any agents, officers, or employees thereof, shall have authority to enter upon land within the Bad River Reservation for the purpose of performing their duties under this ordinance and may take or cause to be made such examinations, surveys, or sampling as the Bad River Natural Resources Department deems necessary.

(a) Law enforcement officials or other officials having police powers shall have authority to assist the wardens of the Bad River Natural Resource Department.

(b) Any person authorized to enforce the provisions of this ordinance may in a manner and at a reasonable time:

   1. conduct routine examinations, surveys, or sampling of objects, places, or persons whose conduct is regulated by this ordinance;
   2. search any object, place, or person if the person reasonably suspects there is a breach by this ordinance; and
   3. issue a citation on a form approved by the Tribe or Tribal Court to any person v conduct is regulated by the provisions of this ordinance.

(c) Any person who, for himself or herself, or by his agent or employee, or who as an agent or employee of another, violates this ordinance shall be liable for a civil remedial forfeiture not to exceed $5,000 and costs of prosecution or by imprisonment for not more than ninety (90) days, or both such fine and imprisonment. Each day of any continuing violation may be charged as a separate violation, and a separate forfeiture may be imposed.

(d) In the event of a violation, the Bad River Tribal Court shall have the power to order wetland restoration and creation measures for the damaged or destroyed wetland area by the person or agent responsible for the violation. If the responsible person or agent does not complete such measures within a reasonable time following the order, the Bad River Tribe may restore the affected wetland to its prior condition and create or restore other wetlands for the purpose of off-setting losses sustained as a result of the violation. The person or agent responsible for the original violation shall be liable to the Bad River Tribe for the cost of such actions.

(e)    Notwithstanding the existence or pursuit of any other remedy, the Tribal Council or any
other person may maintain an action in Tribal Court for an injunction against perso
restrain or prevent violations of this ordinance.

Jurisdiction over all matters arising under this ordinance shall be with the Tribal Court which
shall adjudicate in accordance with the Tribal Court Code all questions and alleged violations
involving this ordinance.

**(323.29) Abrogation and Greater Restrictions.**
This ordinance shall not be interpreted so as to repeal, abrogate, or impair any existing
regulations, easements, covenants, or deed restrictions. However, where this ordinance imposes
greater restrictions, the provisions of this ordinance shall prevail.

**(323.30) Interpretation.**
The provisions of this ordinance shall be held to be minimum requirements in their interp
and application and shall be liberally construed to serve the purposes of this ordinance.

**(323.31) Restoration Requirements for Illegal Wetland Alteration.**
In the event of a violation involving alteration of a watercourse or protected wetland in violation
of this ordinance, the Bad River Tribe shall have the power to order complete restoration of the
watercourse or protected wetland area by the person or agent responsible for the violation. If
such responsible person or agent does not complete such restoration within a reasonable time
following the order, the Bad River Tribe shall have the authority to restore the affected
watercourse or protected wetland to its prior condition wherever possible, and the person or
agent responsible for the original violation shall be held liable for the cost of restoration.
Requirements and specifications, if any, for watercourse or protected wetland restorations
ordered by the Bad River Tribe shall be coordinated with state and/or federal agency
requirements and specifications for watercourse or wetland restoration.

**(323.32) Injunction.**
Any activity conducted in violation of this ordinance is declared to be a nuisance per se, and the
Bad River Tribe may commence a civil suit for an order abating or enjoining the violation,
and/or requiring restoration of the protected wetland or watercourse to the condition before the
impact occurred.

**(323.33) Stop-Work Order.**
The Bad River Tribe may also issue a stop-work order or withhold issuance of a certificate of
occupancy, permits, or inspections until the provisions of this section, including any condition
attached to a permit, have been fully met. Failure to obey a stop-work order shall constitute a
violation of this ordinance.

**(323.34) Conflict.**

In the event of conflict or disparity between any provisions and regulations of this ordinance and those contained in other ordinances with respect to a proposed activity which is regulated under both ordinances, the more environmentally protective provision or regulation shall apply. All ordinances, parts of ordinances or codes in conflict herewith are hereby repealed only to the extent necessary to give this ordinance full force and effect.

**(323.35) Violations of Law Not Affected or Abated by this Ordinance.**
Rights and duties which have matured, penalties which have been incurred, proceedings which have begun and prosecutions for violations of law occurring before the effective date of this ordinance are not affected or abated by this ordinance.

**(323.36) Nonconforming Activities.**
Any lawfully established operation, use, or structure existing at the time of enactment or affected by subsequent amendment of this ordinance, but not in conformity with its provisions, may be continued subject to the following:

(a)   No such activity shall be expanded, changed, enlarged, or altered in a way that increases its nonconformity with this ordinance unless a permit is obtained.

(b)   Any project specifically designed to achieve compliance with existing tribal or federal health, sanitary, building, or safety code specifications which are solely necessary to assure safe living conditions shall not be restricted under this ordinance, provided that the Bad River Natural Resources Department or the Wetlands Ordinance Administrator may impose reasonable terms and conditions to protect wetlands. The burden of proof of establishing the existence of a non-conforming use shall be upon the person requesting such a determination. If there is a reasonable doubt as to the factual existence of a nonconforming use, the Bad River Tribal Council shall make a final determination as to the status of the use.

**(323.37) Judicial Review.**
This Ordinance shall not be construed to abrogate rights or authority otherwise provided by law. For the purposes of determining if there has been a taking of property without just compensation under Tribal law, an owner of property who has sought and has been denied a permit or has been issued a permit subject to modifications or conditions under this ordinance may file an action with the Bad River Tribal Court. If the court determines that an action pursuant to this ordinance constitutes a taking of the property of a person, then the court shall order the Bad River Tribe, to choose one or more of the following options:

(a)   Compensate the property owner for the full amount of the lost value.

(b)   Purchase the property at its fair market value.

(c)   Modify its action with respect to the property so as to minimize the detrimental effect of the property value.

**(323.38) Limited Waiver of Tribal Sovereign Immunity.**
An action may be brought in Tribal Court under this Ordinance against the Tribe or an agent, employee or officer of the Tribe to determine if the facts support the conclusion reached by the Wetlands Ordinance Administrator and the Bad River Natural Resources Department and the law was correctly applied to the facts. No judgment, order or award shall be entered under this Ordinance against the Tribe or any officer without actual notice to the Tribe through the Secretary of the Tribal Council and the Office of the Tribal Attorney, and to any agent, employee or officer of the Tribe against whom any such relief applies. The Tribal Court shall give due weight to the sovereign, governmental and public interests of the Tribe in determining to grant and in fashioning any relief against the Tribe or any agent, employee or officer.

No monetary damages shall be awarded under this Ordinance in excess of the limits of insurance maintained by the Tribe to compensate for injury claimed hereunder as set out in Section 323.37.

**(323.39) Amendments.**
These regulations and the Wetland Inventory Map from time to time may be amended in accordance with requirements in the general statutes and as new information concerning wetland locations, soils, hydrology, flooding, or botanical species peculiar to wetlands become available.

**(323.40) Assessment Relief.**
Assessors and boards of assessors shall consider wetland regulation in determining the fair market value of land. Any owner of an undeveloped wetland who has dedicated an easement or entered into a perpetual conservation restriction with the Bad River Tribe to permanently control some or all regulated activities in the wetland shall have that portion of land assessed consistent with those restrictions.

**(323.41) Severability.**
If any section, subsection, clause, phrase, or portion of this Ordinance is, for any reason, held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed a separate, distinct, and independent provision and such holding shall not affect the validity of the remaining portions thereof.

**(323.42) Effective Date,**
The provisions of this ordinance shall take effect thirty (30) days after the publication of this ordinance.

Made and passed by the Bad River Tribal Council on this
16th day of December, 2009
Resolution No. 12-16-09.138