**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION<br><br>*Plaintiff*,<br><br>v.<br><br>ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY, LP<br><br>*Defendants*. | Case No. 3:19-cv-00602 |
| ENBRIDGE ENERGY, LP<br><br>*Counter-Plaintiff,*<br><br>v.<br><br>BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION and NAOMI TILLISON, in her official capacity<br><br>*Counter-Defendants.* | Judge William M. Conley<br>Magistrate Judge Stephen Crocker |

**ENBRIDGE ENERGY, LP'S MOTION TO COMPEL
TO PERMIT ENTRY ONTO THE RESERVATION TO INSPECT LANDS**

Pursuant to Fed. R. Civ. P. 37 and 34(a)(2), Enbridge Energy, Limited Partnership ("Enbridge") moves to compel the Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation and Naomi Tillison, Director of the Band's Natural Resources Department ("MNRD" and collectively, the "Bad River Band" or the "Band"), to permit Enbridge entry onto the Band's Reservation to survey and inspect two sites alleged by the Band to constitute a nuisance. Enbridge respectfully requests an expedited teleconference with the Court after the Band files its opposition on or before September 11, 2020, because certain of the work

(namely a wetland delineation and a plant survey) must take place by the end of September 2020 to coincide with the growing season. The time-sensitive work will take approximately five days to complete. All of the requested access can be completed in approximately ten days, and Enbridge is prepared to start all of the work as soon as possible.

## BACKGROUND & INTRODUCTION

Enbridge's Line 5 oil pipeline ("Line 5") has, for many decades, safely operated on the Band's Reservation. It is uncontested that it has never released any pipeline product onto the Reservation. Yet, in this lawsuit, the Band alleges that Line 5 constitutes a nuisance in two discrete locations within the Reservation. This contention is based on the Band's allegation that soil erosion, caused by runoff from precipitation or by the flow of the Bad River, will endanger Line 5. Put most simply, the Band alleges that erosion will carry away soil, uncover the normally buried pipeline, and expose it to the overland flow of rain or melting snow or to the elements of the nearby Bad River. These allegations relate to two discrete areas: (i) the "Meander" and (ii) a location called "Slope 18." *See* D.E. 34, Amended Complaint ¶¶ 14-17, 89-122 (allegations describing and depicting the Meander); *id.* ¶¶ 122-138 (allegations regarding Slope 18).[1]

Enbridge denies these allegations. Line 5 is, and will remain, buried and safe. Enbridge desires access to inspect both areas of the alleged nuisance to determine if, as the Band contends, erosion is presently occurring. In the event erosion is occurring, Enbridge also desires to collect information to permit it to promptly and properly address and mitigate any erosion. Erosion does sometimes occur, but can be mitigated to prevent any risk to pipeline operations. If erosion does occur, Enbridge and its contractors—as part of the routine maintenance associated with pipeline

---

[1] Paragraphs 92-95 of the Amended Complaint depict the area referred to as the Meander (so called, as the Bad River has long been "meandering," or altering its course, in this area).

operation—formulate plans to prudently address erosion in or around the Line 5 corridor so that no risk to Line 5 results.

Enbridge has repeatedly requested access to these sites through the regular channel of communication between Enbridge and the Band's MNRD, which is the department that reviews Enbridge's access permit requests to enter the Reservation for inspections and maintenance work.

When these routine access requests were rejected, on July 27, 2020, Enbridge formally requested access pursuant to Federal Rule of Civil Procedure 34(a)(2). *See* **Exhibit A** (the "Rule 34 Requests"). Consistent with that Rule, the requested access is only to "look and see" at these areas and perform non-invasive inspections, namely (a) a wetland delineation and a plant survey, (b) a turtle habitat assessment, (c) a tree survey, and (d) a topographic survey. No construction, earth disturbing, or similar field work is at issue in this Motion. Unfortunately, the Band has wrongly refused such "look and see" access to Enbridge even though it is relevant and within the scope of Rule 34.

In response, the Band did not submit formal objections to the Rule 34 Requests. However, as the result of several meet and confer sessions, the Band's position is set forth in a series of e-mails collected and attached as **Exhibit B** (August 21 and 14, 2020 e-mail chains). Its objections are unfounded. The Band does not dispute that the Requests seek relevant information, nor does it object on the basis of burden or disproportionality.

Instead, the Band primarily argues that the Rule 34 Requests seek information that will be incorporated into Enbridge project applications to maintain Line 5, which will eventually be submitted to the Band for approval. This objection must be overruled. A principal purpose of the access is to permit Enbridge to determine if any erosion is in fact occurring and to gather information for Enbridge's testifying experts—in other words, for the purpose of factual discovery.

3

But another purpose of the Rule 34 Requests is to assess proper ways to abate the nuisance. This too is a perfectly permissible basis for discovery. Even if information obtained from those inspections were used in later project applications to be submitted to the MNRD, Rule 34 does not prohibit access to gather information that may be included in future applications to address abatement of an alleged nuisance.

Conceding that the information sought is important and needed, the Band next argues that Enbridge has no right to collect this information first-hand and instead, proposes that the Band will arrange for the surveys to occur and for the information to be collected by others without Enbridge being present. The Band argues that it will retain third parties, such as the U.S. Geological Survey ("USGS") and unnamed private contractors under the Band's control, to obtain this admittedly relevant information. (Indeed, in one instance described further below, the Band has already done so on Enbridge property, over Enbridge's objections.). On this basis, it argues Enbridge's requests are unnecessary. The Band is wrong. Discovery does not require one party to rely solely on information and analysis provided by the other. Instead, each party is entitled to its *own* direct access to the relevant documents, witnesses, and land. This is why direct entry to land is specifically permitted under Rule 34, especially where the land itself is the central subject-matter of the litigation. Just as Enbridge must permit the Band access to Enbridge land under Rule 34, so too must the Band. Both sides should be able to assess the facts on the ground for themselves.

Finally, the Band argues that concerns over the COVID-19 crisis justify denying the requested access. This argument is not well taken. As part of operating and managing Line 5, Enbridge routinely requires access to it. Its operations are "essential" under various state "stay at home" orders and are performed in compliance with all appropriate COVID-related safety procedures throughout the many states in which Enbridge operates, including all COVID-related

4

requirements imposed by the Band.[2]  Moreover, if the risks associated with COVID-19 transmission were too high to permit Enbridge to collect data—an assertion that Enbridge disputes—those concerns would apply equally to USGS employees and the contractors the Band proposes to utilize, and has already utilized, as well.  If all access to the Reservation were to be shut down due to COVID, a situation which has not occurred (for example, the restaurant at the Band's casino appears to be open for pickup, *see* www.badriver.com), the solution would be extending the relevant discovery deadlines until access can be safely undertaken. But that does not seem to be the case.[3]  Rather, the Band seems to be using the legitimate concerns surrounding COVID-19 as a justification to limit Enbridge's access to inspect but not others' access.

## LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure permits a party to move to compel where a party "fails to permit inspection as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). District courts "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). "In exercising its discretion, the court must be mindful that parties are permitted to obtain discovery 'regarding any matter, not privileged, which is relevant to the claim or defense of any party . . . .' Fed. R. Civ. P. 26(b)(1). Moreover, the test for relevance in the discovery area is 'an extremely broad one.'" *Brooks v. Gen. Cas. Co.,* 2007 WL 218737, *1 (E.D. Wis. Jan. 26, 2007) (internal citation omitted).  "'[A] district court should independently determine the proper course of discovery based upon the arguments of the parties.' The objecting party must show with specificity that the request is improper." *Smith v. Nexus RVs, LLC*, 331 F.R.D. 491, 493-494 (N.D. Ind. May 14, 2019) (internal citation omitted).  Thus, the

---

[2] The Meander and Slope 18 are located in remote wilderness areas where close contact with others not part of the access is highly unlikely.
[3] The Band also recently agreed that certain of Enbridge's litigation experts may access the Reservation, further suggesting that COVID provides no basis to deny all access to the Reservation to Enbridge.

burden rests upon the objecting party—here, the Bad River Band—"to show why a particular discovery request is improper." *See Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 4705550, at *2 (E.D. Wis. Sept. 8, 2016).

## ARGUMENT

### I. Enbridge's Requests to Inspect the Meander and Slope are Proper

#### A. Enbridge's Requests Comply with Rule 34

Federal Rule of Civil Procedure 34(a)(2) states that a "party may serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto . . . property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

On July 27, 2020, Enbridge submitted Rule 34 Requests to the Band seeking access for its engineers and environmental consultants to the Meander and Slope 18 for inspection and survey purposes. The Requests described with "reasonable particularly" the areas to be inspected, why Enbridge sought to inspect them, and proposed a "reasonable time, place and manner for the inspection." **Exhibit A.** Specifically, Enbridge requested access to inspect whether a nuisance was present and, additionally, Enbridge requested the following:

(1) Meander: Enbridge requested access (a) "from August 4, 2020 to August 7, 2020, to perform a wood turtle habitat assessment and tree survey"; (b) "from August 10, 2020 to August 15, 2020, to perform a wetland delineation and plant survey"; and (c) "from August 12, 2020 to August 19, 2020, to perform a Light Detection and Ranging ("LiDAR") and bathymetry survey."[4]

(2) Slope 18: Enbridge requested access "from August 10, 2020 to August 18, 2020, to perform a topographic survey."

---

[4] These surveys collect contour data below the water surface (bathymetry) and above the water surface (LiDAR).

6

*Id.* at 2-3. The Requests fit squarely within Rule 34 and within Rule 26 (b).[5] The Band has placed the condition of Slope 18 and the Meander at the heart of this litigation with its nuisance claims and Enbridge has a right to conduct discovery into the existing conditions of these two areas. *See, e.g., Peterson v. Union Pac. R. Co.*, No. 06-3084, 2007 WL 3232501, at *3 (C.D. Ill. Nov. 1, 2007) ("Surveying is expressly permitted under the scope of Rule 34(a)(2) and will be allowed in this case."); *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 57 (9th Cir. 1961) (finding that Rule 34 authorized defendant to take samples of forage, feed, air, water, soil, vegetation and mineral supplements from plaintiff's property for testing defendant's activities alleged to have had a negative impact on plaintiff's property). As a result, the information is directly relevant and critical to Enbridge's defense to Counts I and II.

In addition, it is undisputed that the requested access is for non-invasive, look-and-see inspections in remote areas of the Reservation. This surveying does not impose any undue burden on the Band. Enbridge made clear in its Rule 34 Requests, and in its underlying access permit request submitted to the MNRD and to the Band's counsel, that it will conduct these inspections at reasonable dates and times, with small crews and light equipment, and in compliance with all other reasonable MNRD permitting requirements. *See Smith v. Nexus RVs, LLC*, 331 F.R.D. 491, 496 (N.D. Ind. 2019) (citing with approval cases which "allowed private inspections of tangible

---

[5] *See, e.g., The Fresh Mkt. v. Marsh Supermarkets, Inc.*, No. 3:04-CV-770 AS, 2005 WL 2154677, at *1 (N.D. Ind. Sept. 7, 2005) ("Under the liberal discovery rules . . . [and] because Rule 34(a) allows for the inspection of land and photographing, this Court concludes that videotaping the premises also falls within the scope of Rule 34. Thus, Defendant's motion to compel the inspection of land is GRANTED."); *Krippelz v. Ford Motor Co.*, No. 98-C-236, 2004 U.S. Dist. LEXIS 328, at *2 (N.D. Ill. Jan. 9, 2004) (compelling defendant to make the car, facilities, and equipment used in the testing at issue available "without limitation for use, measuring, testing, and photographing" to the plaintiff); *Louisiana Crawfish Producers v. Mallard Basin*, 2015 WL 8074260, at *6 (W.D. La. Dec. 4, 2015) (granting plaintiffs' motion to compel a site visit under Rule 34 to bring a surveyor and a hydrologist and their equipment, as well as plaintiff and a camera, for a day-long inspection of Fisher Lake and Bayou Cane); *Bratek v. BNSF Ry Co.,* No. 08-1243, 2010 U.S. Dist. LEXIS 157659 (C.D. Ill. Sept. 10, 2010) (granting motion to compel entry under Rule 34 for an inspection of the accident site at issue that "would primarily consist of photography and measurements"); *Versatile Metals v. Union Corp.*, Civ. A. No. 85-4085, 1986 WL 8720, at *3 (E.D. Pa. Aug. 8, 1986) (granting plaintiffs' motion to enter defendants' land for the purpose of soil drilling and sampling).

items when the inspecting party explicitly stated that it would only conduct nondestructive testing").

Because Enbridge's Rule 34 Requests are reasonable, specific, and directly relevant to the parties' claims and defenses, Enbridge should be permitted to conduct discovery at Slope 18 and the Meander. It has now been almost six weeks since Enbridge served its Rule 34 Requests on the Band. Enbridge must perform some of the requested inspections *this month* (*i.e.,* in September 2020) and during the habitat-specific seasonal period, which is coming to an end. The time-sensitive work is a plant survey and wetland delineation, which must take place during the growing season. As a result, Enbridge respectfully requests an resolution on this issue so that, if the Band is rightfully compelled by this Court to comply with these Rule 34 Requests, Enbridge may feasibly perform the requested surveys before the end of September 2020. The time-sensitive work will take approximately five days. Enbridge is ready to conduct all of the work as soon as possible.

## II. The Band's Objections are Invalid and the Court Should Grant the Motion

The Band has raised three objections to Enbridge's Rule 34 Requests.[6] None of these objections justify refusing Enbridge's discovery requests.

### A. Enbridge's Rule 34 Requests Are Directly Relevant to the Band's Claims in this Litigation

The Band argues that the purpose of the Rule 34 Requests "appears to be gathering information to be used to advance Enbridge's project applications," which "is not a valid basis for a Rule 34 Request." **Exhibit B** at 5 (Aug. 14, 2020 P. Tinker email at 1). This is incorrect. As explained above, one of the primary purposes of this discovery is to see whether any erosion is occurring that is directly relevant to Enbridge's defense of this litigation. But even if the sole

---

[6] Though formal objections were never served by the Band, the parties conferred numerous times by phone and by e-mail. The Band's objections are summarized in an email from Band counsel dated August 14, 2020. *See* **Exhibit B**.

8

purpose were to propose ways to abate any alleged nuisance, the discovery would be proper. These Rule 34 Requests seek information that is directly relevant to the parties' claims and defenses. *See* Fed. R. Civ. P. 26(b)(1).

The Band is pursuing two nuisance claims (Counts I and II) based on allegations that Line 5 poses a threat at both the Meander and Slope 18. The Band does not seek damages; it seeks an injunctive order from the Court requiring Enbridge to abate the alleged nuisance(s) by decommissioning/removing the pipeline. *See* D.E. 34 ¶ 145, page 58. But the Court is not obligated to accept the Band's claim that removal of the pipeline is the only way to abate a nuisance at these sites, even assuming (counterfactually) that one was to exist. *See State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 517, 311 N.W.2d 650, 656 (1981) ("If the trial court finds a nuisance present, it must then determine . . . the claim made and the remedies sought."); *City of Madison v. Family Bus. LLC*, 357 Wis. 2d 720, 855 N.W.2d 903 (Wi. App. 2014) ("§ 823.03, Stats., requires the court to abate the nuisance unless it 'shall otherwise order.'"). If a nuisance is found to exist—and Enbridge does not concede that one exists—then Enbridge is entitled to demonstrate how it can abate a nuisance at the Meander and/or Slope 18, including by implementing erosion control measures that will protect the areas until Enbridge completes its voluntary re-route of Line 5 off of the Reservation.[7] Consequently, Enbridge's proposed (or implemented, if they proceed prior to trial of this matter) plans to abate the alleged nuisances will be highly relevant to its nuisance defense if not moot the nuisance claims entirely.

The underlying information to be collected—survey information, wood turtle habitat information, and wetland information—is directly relevant to Enbridge's nuisance defense. The

---

[7] Without conceding it is legally required to do so, Enbridge is in the process of re-routing a segment of Line 5 around the Bad River Reservation. *See* https://www.enbridge.com/projects-and-infrastructure/public-awareness/line-5-in-northern-wisconsin. When the re-route is complete and operational, Line 5 will be decommissioned on the Reservation.

9

data will be used to inform the designs, timing, and details of Enbridge's proposals to abate any alleged nuisance.  Moreover, even if the data is never submitted as part of a project application or re-application, it is needed and relevant for another reason.  Enbridge's expert witnesses are likely to opine that, if any nuisance is found to exist, such nuisance can be effectively abated at both the Meander and Slope 18. Such an opinion would be informed in part by the information collected during these Rule 34 inspections.  Based on this expert testimony, Enbridge would argue that there is no factual or equitable basis to order removal of Line 5 because abatement would be a more appropriate remedy.  Thus, the reason for access is therefore, proper and "within the scope of Rule 26(b)" for this reason as well.  Fed. R. Civ. P. 34(a)(2).  *See, e.g., Krippelz v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 328, *2 (N.D. Ill. Jan. 9, 2004) ("The scope of permitted inspections is as broad, being governed by Rule 26. In general, if the discovery sought is relevant, or likely to lead to the discovery of admissible evidence, then it should be permitted.").

      Moreover, the Court should not permit the Band's attempts to unfairly use Rule 26(b) as both a sword and a shield.  In November 2019, the Band served numerous document requests on Enbridge seeking "all" documents related to Enbridge's "mitigation" plans at the Meander and Slope 18 that Enbridge either already submitted to the MRND or intended to submit to the MRND in the future, including requests for "all documents relating to any proposals, plans or recommendations by Enbridge (and/or its third-party contractors) to armor the banks of the Bad River (including at and in the vicinity of the Meander)," and "all documents relating to any mitigation plans for Slope 18 and the pipeline exposure there developed by Enbridge and/or its third-party contractors."  **Exhibit C** (Band RFP Nos. 15, 57).  Clearly, the Band believes that Enbridge's efforts to formulate "project applications" aimed at remediating the alleged nuisances

are relevant to this litigation. Otherwise, it would not have made similar Rule 34 requests for documents on the same subject matter.

### B. The Court Should Reject the Band's Contention that it is Unnecessary or Duplicative for Enbridge to Access Slope 18 and the Meander

The Band argues that Enbridge does not need to access Slope 18 to conduct a topographic survey because the MRND has purported to "take over management of [Enbridge's] restoration project" and, in turn, has suggested it will retain contractors to conduct—at Enbridge's expense—the topographical survey that Enbridge requested access to conduct. *See* **Exhibit B** (Aug. 14, 2020 P. Tinker email at 2).

But Enbridge is entitled to observe the evidence firsthand and to collect it itself. Prohibiting Enbridge from conducting its own discovery, and forcing it to rely on the Band's contractors for survey data—especially in the absence of any identified burden raised by the Band—is unfair. Enbridge will have no control over what specific data is collected, the credentials of those collecting the data, and the manner in which the data will be collected and reported. It will also be open to cross-examination that it was not itself present to observe the conditions. Enbridge is not aware of any authority where a court denied a Rule 34(a)(2) request and instead required a litigant to use data collected by the opposing party. *See Bratek v. BNSF Ry. Co.*, 2010 U.S. Dist. LEXIS 157659, *2 (C.D. Ill. Sep. 10, 2010) ("According to BNSF, Bratek's expert does not need to view the topography and geography of the area, because he already has all the information he needs . . . This argument is rejected. Plaintiff is not obliged to rely on information created by the Defendant."). Nor will Enbridge be able to control *when* the data will be collected. The Band has stated that it would provide USGS' data to Enbridge "if necessary and allowable" or when it is published. *See* **Exhibit D** (August 13, 2020 MRND email). Nor is this a merely speculative concern. Last week, Enbridge learned that the Band apparently engaged USGS to visit

Slope 18 site multiple times since the Fall of 2019 (commencing almost a year ago) to collect data. Yet none of this information has yet been provided to Enbridge and apparently will not be provided until some unspecified USGS "publication" date over which Enbridge has no control.

### C. Enbridge's Rule 34 Requests Minimize Risk of COVID-19 Transmission and Comport with Social Distancing Requirements

Finally, the Band has claimed that concerns arising from the COVID-19 pandemic "have led the Band to restrict such access except were [sic] required." **Exhibit B** (Aug. 14, 2020 P. Tinker email at 2). Enbridge's surveying requests, however, can be accommodated in a manner that minimizes COVID-19 transmission and also comports with the CDC's and MNRD's social distancing requirements. Enbridge has agreed to "follow all social distancing guidelines when collecting the required data, including minimizing crew size, maintaining a 6-foot distance between staff, and wearing face coverings." **Exhibit E** (Julie Kloss May 7, 2020 email). The crew will "travel to the site on foot" with small pull wagons to carry equipment where they will be in remote wilderness areas. *Id.* These locations are remote and Enbridge's crew will likely only come into contact with a MRND representative at the outset and completion of each visit.

Furthermore, the fear of COVID-19 transmission cannot possibly serve as an obstacle to permitting Enbridge's Rule 34 Requests when the Band has already permitted another crew—comprised of USGS personnel—to repeatedly access Slope 18 within the Reservation and perform a survey in the same areas to which Enbridge seeks access. *See Bratek,* 2010 U.S. Dist. LEXIS 157659, at *3 ("Presumably, there were safety precautions . . . that were utilized to protect its own personnel and experts during [its own inspection]. Affording the same method to Plaintiff may be burdensome but it is not unduly so.").

The Band should not be permitted to operate under a double standard outside the rules of discovery. Slope 18 exists on Enbridge-leased land yet the Band refuses to permit Enbridge access

12

to it under Rule 34. Simultaneously, the Band instructed (without advance notice to Enbridge or the service of <u>any</u> Rule 34 request) USGS to collect data from the exact same land multiple times since the Fall of 2019 while building its allegations against Enbridge.

## CONCLUSION

WHEREFORE, Enbridge respectfully requests the Court enter an Order:

A. Compelling the Band and Ms. Tillison to permit Enbridge access to the Reservation as soon as possible (and in all events so that the plant survey and wetlands delineation, which will take approximately five days to complete, occurs before the end of September) for the purposes of survey and inspection in accordance with Enbridge's Rule 34 Requests;

B. An award of Defendants' reasonable attorneys' fees and expenses associated with the filing of this Motion and communications leading up to said filing; and

C. And for all other just and proper relief should grant the motion to compel.

### Telephone Conference Requested

Enbridge respectfully requests an expedited telephone conference on this Motion.

Dated: September 4, 2020            Respectfully submitted,

/s/ David L. Feinberg
Michael C. Davis
David L. Feinberg
Justin B. Nemeroff
Zakariya Varshovi
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20004
(202) 344-8278
MCDavis@venable.com
DLFeinberg@venable.com
JBNemeroff@venable.com
ZKVarshovi@venable.com

13

/s/ Eric M. McLeod
Eric M. McLeod
Joseph S. Diedrich
HUSCH BLACKWELL
33 East Main Street, Suite 300
Madison, WI 53701-1379
(608) 234-6056
eric.mcleod@huschblackwell.com

/s/ David H. Coburn
David H. Coburn
Shannen W. Coffin
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-8063
dcoburn@steptoe.com
scoffin@steptoe.com

*Counsel for Enbridge Energy, Limited Partnership*

## CERTIFICATE OF SERVICE

I certify that on September 4, 2020, I served the foregoing document on all counsel of record using the Court's ECF system.

Dated: September 4, 2020  /s/ *David L. Feinberg*
David L. Feinberg

14