## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION, | Case No. 3:19-cv-602 |
| Plaintiff / Counterclaim Defendant, | Judge William M. Conley Magistrate Judge Stephen Crocker |
| v. | |
| ENBRIDGE ENERGY COMPANY, INC.; and ENBRIDGE ENERGY, L.P., | |
| Defendants / Counter-Claimants, | |
| v. | |
| NAOMI TILLISON, Director of Mashkiiziibii Natural Resources Department of the Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation, in her Official Capacity, | |
| Counterclaim Defendant. | |

## BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO JOIN PARTIES NECESSARY FOR THE BAND'S CLAIM FOR MONEY DAMAGES

### INTRODUCTION

Defendants Enbridge Energy Company, Inc. and Enbridge Energy, L.P. ("Defendants" or "Enbridge") ask this Court to compel the joinder of 168 individual co-owners of the eleven parcels on which the Band has alleged that Enbridge is in trespass (collectively, the "co-tenants"). If granted, Enbridge's motion would massively expand the scope of this case,

imposing significant and unnecessary burdens on the co-tenants, the existing parties, and this Court.

There is no warrant for this Court to take such an extraordinary action. Enbridge's arguments that the co-tenants must be joined are contrary to the well-established rule that an individual co-tenant may maintain an action for ejectment and its proportional share of damages against a third-party trespasser without joining additional co-tenants. Enbridge's arguments under Rule 19 are likewise contrary to this Court's well-settled rules governing the involuntary joinder of absent parties. And Enbridge's argument that judicial efficiency counsels in favor of staying the existing case schedule while the parties embark on a six-month odyssey to identify, locate, and serve 168 individuals collapses under its own weight. These individuals are the masters of their own claims, and no warrant exists for subjecting them involuntarily to the burdens of participating in this litigation. This is particularly so here, where the co-tenants have an alternative federal administrative process available to seek relief for Enbridge's trespass—a process under which Enbridge has had more than seven years to seek their consent to a new right of way. Having failed to do so, Enbridge should not now be heard to claim that those co-tenants' rights have been put into jeopardy by this litigation.

## BACKGROUND

Enbridge (or its corporate predecessor) has operated its Line 5 pipeline on the Band's Reservation since 1953 under a series of easements issued by the Bureau of Indian Affairs ("Bureau"). The easements were renewed approximately every twenty years after 1953, with the most recent renewals taking place in 1993. Second Amended Complaint ("SAC"), Doc. 73 ¶¶ 53, 54, 57. In 2013, easements over fifteen parcels in the pipeline corridor expired. The Band

holds ownership interests in eleven of those parcels.  *Id.* ¶ 58.[1]  The Band has declined to consent

to renewed easements over these eleven parcels (the "expired parcels"), but Enbridge has

nevertheless continued to operate its pipeline over them to this day.  *Id.* ¶¶ 58-62.

The Band acquired its interests in the expired parcels primarily through two federal tribal

land reacquisition programs: the Indian Lands Consolidation Act program, codified as amended

at 25 U.S.C. §§ 2212–2221, and the Indian Lands Buy-Back Program for Tribal Nations,

codified in the Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064.  These

programs operate to redress ownership fractionalization problems imposed on Tribal reservation

landholdings by prior, failed federal policies.  They seek to advance the modern-day

> policy of the United States—(1) to prevent the further fractionation of trust
> allotments made to Indians; (2) to consolidate fractional interests and ownership
> of those interests into usable parcels; (3) to consolidate fractional interests in a
> manner that enhances tribal sovereignty; (4) to promote tribal self-sufficiency and
> self-determination; and (5) to reverse the effects of the allotment policy on Indian
> tribes.

Pub. L. No. 106-462, § 102, 114 Stat. 1991 (2000); *see* 25 U.S.C. § 2212(b)(1).  Pursuant to

these programs, the Secretary of the Interior identifies and seeks to acquire, "with the consent of

the owner … and at fair market value, any fractional interest in trust or restricted [Indian] lands,"

which interest is then held "in trust for the recognized tribal government that exercises

jurisdiction over the land[s.]"  25 U.S.C. § 2212(a)(1), (3).  For the properties in which the Band

holds a fractional ownership interest, it does so as a tenant in common.  *See, e.g.*, 25 U.S.C. §

---

[1] The Band's Second Amended Complaint states that the Band holds ownership interests of "between a forty-percent and a ninety-percent" in each of the expired parcels.  SAC ¶ 58.  The Band has since determined that it is the sole owner of two expired parcels along the Line 5 right of way.  One, the parcel that has been designated by the Bureau as Tract 430 3H308, is one of the eleven expired parcels listed in the SAC.  Doc. 78 at 7 & n. 5; SAC ¶ 58 n.11.  The other, Tract 430 R 154, had not been previously identified as a parcel in which the Band had acquired an ownership interest and accordingly was not listed in the SAC.  Declaration of Susan Smith ¶¶ 3, 4.

2213(a) (tribes shall hold their "fractional interest[s] … as a tenant in common with the other owners of the trust or restricted lands").

The United States has been able to reclaim for the Band significant interests in parcels throughout the Reservation, including in the expired parcels—the Band now holds a forty percent or greater interest in each parcel, and a seventy-five percent or greater interest in the majority of the expired parcels.  SAC ¶ 58.  These lands nevertheless remain subject to numerous additional ownership interests, many of which are highly fractionated.  For example, as of March 12, 2019, the Band holds an approximately eighty-four percent ownership interest in Tract 430 3H322.  Declaration of Susan Smith ("Smith Decl.") ¶ 5.  The remaining sixteen percent of the interests are divided among at least ninety additional interest holders, including non-tribal members as well as citizens of Bad River, the Fond Du Lac Band of Lake Superior Chippewa Indians, and the Yankton Sioux Tribe of South Dakota, some of whom possess interests as small as .005%.  *Id.*

As another example, the Band owns approximately fifty-four percent of Tract 430 S 13. *Id.* ¶ 6.  The remaining interests are divided among at least twenty-one Bad River and Keweenaw Bay Indian Community members and non-tribal members.  Twelve of the member and non-member interest holders each hold an interest of less than one percent, and seven of the remaining title holders each hold less than ten percent.  Similar patterns can be observed across each of the parcels with fractional divided interests.  *See also*, *e.g.*, *id.* ¶ 7 (twelve individual interest holders each hold an interest of less than one percent in Tract 430 E 266).

On July 23, 2019, the Band filed suit against Enbridge, requesting that this Court enter an order of ejectment to halt Enbridge's continued unauthorized use and occupation of the expired parcels as well as an injunction to halt Enbridge's maintenance of a public nuisance on the

Reservation through the operation of Line 5.  Doc. 1 at 51, Prayer for Relief.  At that time, the Band did not include a claim for trespass money damages, having determined instead that the more appropriate course was to seek such compensation outside of the judicial process.  *See* Doc. 72 at 6.  When the Band came to doubt that non-judicial discussions would provide a viable path to obtaining monetary redress, it informed Enbridge and the Court of its desire to amend its Complaint to include a request for money damages, a request to which Enbridge consented and that this Court granted.  Docs. 70, 71.  As the Band has informed Enbridge, *see* Doc. 78 at 11, under its Second Amended Complaint the Band is seeking to recover only its proportionate share of the trespass damages, restitution for unjust enrichment, and profits derived from Enbridge's unlawful transmission of petroleum products across the Band's lands based on the percentage of its ownership interest in each expired parcel at any given point in time, SAC at 60, Prayer for Relief ¶ H.

## LEGAL STANDARD

Federal Rule of Civil Procedure 19(a) governing the Required Joinder of Parties provides as follows:

> (a) Persons Required to Be Joined if Feasible.
>     (1) *Required Party.*  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>         (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>         (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>             (i) as a practical matter impair or impede the person's ability to protect the interest; or
>             (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

As the moving party, Enbridge "has the burden of persuasion" on its Rule 19 claim.  *State Auto Ins. Cos. v. Whirlpool Corp.*, 62 F. Supp. 3d 857, 868 (W.D. Wis. 2014) (Conley, J.).

## ARGUMENT

I.    **An Individual Co-Tenant May Enforce Its Own Severable Rights to Joint Property, Including the Rights To Exclude Third Parties and To Seek Trespass Damages and Profits, Without Joinder of Additional Co-Tenants.**

Enbridge's arguments under Rule 19 founder because they fail to account for the operative principles of property and trespass law that underpin and inform the rights that the Band seeks to vindicate in this action.  Joinder of absent co-tenants is not required where, as here, the Band is seeking to enforce *only* its own property rights.  The Band is *not* seeking to enforce the co-tenants' rights or collective rights in the property.

As a tenant in common, the Band may exercise all of the rights and privileges of property ownership, in common with but independently of the co-tenants.  As such, the Band can unilaterally exercise its rights of ownership, and bring suit to enforce those rights, without the participation or consent of the other co-tenants.  The United States Supreme Court has explained that

> [t]enants in common may each unilaterally alienate their shares through sale or gift or place encumbrances upon these shares.  They also have the power to pass these shares to their heirs upon death.  Tenants in common have many other rights in the property, including the right to use the property, *to exclude third parties from it, and to receive a portion of any income produced from it.*

*United States v. Craft*, 535 U.S. 274, 280 (2002) (emphasis added); *see also Nettesheim v. S.G. New Age Prods., Inc.*, 702 N.W.2d 449, 453 (Wis. Ct. App. 2005) ("A tenancy in common is defined as a tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property but no right of survivorship." (quotation marks omitted)).

The Band's individual rights as a tenant in common include the right to exclude Enbridge from the expired parcels, as well as the means to enforce this right by filing trespass and ejectment claims to halt Enbridge's further unauthorized use of the Band's property.  86 C.J.S. *Tenancy in Common* § 167 (updated Sept. 2020) (citing cases) ("It is generally held that all of the cotenants need not join in an action for the recovery of the common property against a stranger. Tenants in common may, in a proper case, maintain separate actions against third persons for ejectment[.]" (footnote omitted)); *Godette v. Godette*, 554 S.E.2d 8, 10 (N.C. Ct. App. 2001) ("[O]ne tenant in common may sue alone and recover possession of the common property[.]" (quotation marks omitted)).  This principle reflects what the Supreme Court recognized in *Craft*: Because tenants in common possess the right, concurrently with and independently of each other, to exclude third parties from their property, they also possess the corollary right to enforce their exclusion authority by bringing suit to eject trespassers.

As *Craft* likewise indicates, the Band's individual property interests additionally encompass the right to seek payment from Enbridge based upon its unauthorized use of the expired parcels.  *See Craft*, 535 U.S. at 280 (co-tenants hold the right to "receive a portion of any income produced from" their property).  Courts including the United States Court of Appeals for the Seventh Circuit accordingly have long recognized that co-tenants may individually bring suit to recover their proportional share of profits derived from, and to seek damages and profits for, the unauthorized use of the property.

In *Guth v. Texas*, 155 F.2d 563 (7th Cir. 1946), the defendant, an oil and gas lessee, allegedly committed negligent waste of mineral resources and improperly failed to pay royalties to the landowners.  The plaintiff, who owned a 1/32 interest in the property, sued without joining the property's remaining owners.  The court held that the plaintiff could not maintain the action

for negligent waste because the injury was to the property itself (the *in situ* minerals allegedly lost or damages as a result of the negligent conduct) and therefore "would affect and impair the interests of all of the lessors" collectively. *Id*. at 566. By contrast, the Court allowed the plaintiff to maintain an individual suit for a 1/32 share of royalties, because the defendant's "obligation to pay the lessors their royalties in proportion to their respective interests in the gas, gasoline, and petroleum … was a several obligation and the plaintiff could sue separately for his proportion of the royalty." *Id*.; *see also Cowling v. Deep Vein Coal Co., Inc.*, 183 F.2d 652, 656 (7th Cir. 1950) ("[A] co-tenant may proceed in an action for an accounting without joining his co-tenants as parties to the suit.").

The Seventh Circuit's rule has been embraced by authoritative treatises including Wright & Miller, which directly refutes Enbridge's argument in stating that "[i]nsofar as a cotenant seeks only to adjudicate his own interest in land, the other cotenants need not be joined. For example, a cotenant may ask for an accounting of the rents and profits that belong to him without joining other cotenants when effective relief can be awarded without impairing the rights of the nonparties." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1621 (3d ed. updated Oct. 2020) ("Wright & Miller") (footnote omitted) (citing *Guth* and *Cowling*); *see also* 86 C.J.S. *Tenancy in Common* § 163 ("In actions for damages with respect to the common property, one tenant in common may recover his or her proportionate share of the damages to the whole property[.]").

Other federal circuit courts are in agreement. *Chidester v. Newark*, 162 F.2d 598, 600 (3d Cir. 1947) ("[I]n an action by one tenant in common for damages for trespass, the other tenants in common were not indispensable."); *Young v. Garrett*, 149 F.2d 223, 229 (8th Cir. 1945) ("[O]ne tenant in common may recover … damages for trespass thereon from a third

person trespasser[.]").  The rule has been widely embraced by the federal district courts and by state courts as well.  *See*, *e.g.*, *Abrams v. Ciba Specialty Chems. Corp.*, 663 F. Supp. 2d 1259, 1270 (S.D. Ala. 2009) ("[P]laintiffs will be permitted to proceed to trial on their claims for property damage even in the absence of their co-tenants as parties plaintiff, provided, however, that the award to any prevailing test plaintiff whose co-tenants are not joined as plaintiffs herein will be limited to a proportionate share of the damage to the property."); *Godette*, 554 S.E.2d at 10 ("[O]ne tenant in common may sue alone and recover possession of the common property …. Without joinder, plaintiff will only be able to recover one-fourth of the damages in a pro rata share." (quotation marks omitted)); *Nemet v. Boston Water and Sewer Comm'n*, 775 N.E.2d 750, 757 (Mass. App. Ct. 2002) (co-tenant may "sue to recover for damage to their separate proportionate interests in the property"); *Meadowbrook Condo. Ass'n v. S. Burlington Realty Corp.*, 565 A.2d 238, 242 (Vt. 1989) ("Where monetary damages are involved, a tenant in common, acting alone, may recover only his or her fractional share."); *In re Estate of Tautges*, 418 N.W.2d 509, 510-511 (Minn. Ct. App. 1988) (same).

None of Enbridge's cited cases contravene this well-established rule.  Indeed, one of them fully embraces it in explicit terms that cannot be reconciled with Enbridge's position. *Compare Onorato v. Wissahickon Park, Inc*., 244 A.2d 22, 25 (Pa. 1968) ("A tenant-in-common need not join his co-tenants where seeking only an aliquot portion of damages.") *with* Doc. 78 at 15 (citing *Onorato* for the proposition that joinder is required where the plaintiff is seeking "not only his damages but also a share of damages owed to the co-tenants").  And one of Enbridge's cited cases recognized that joinder was not necessary, even though the claim implicated the co-tenants' communal property interests, because the absent co-tenant's interests in the shared property would not be affected by the court's decision.  *Hawthorne Land Co. v. Occidental*

*Chem. Corp.*, 431 F.3d 221, 226 (5th Cir. 2005) (joinder not required to recover for damages to the collective property caused by unintentional discharge from a pipeline, where absent co-tenant's claim against Defendant had been settled).

Other cited cases simply apply the unremarkable rule, recognized in *Guth*, that claims affecting the co-tenants' collective interests in the property as a whole require all of the property owners to bring suit collectively. *See Enable Okla. Intrastate Transmission, LLC v. A 25 Foot Wide Easement*, Case No. CIV-15-1250-M, 2016 WL 4402061 (W.D. Okla. Aug. 18, 2016) (joinder of all co-tenants required where pipeline operator sought to condemn a right of way across the joint property, because condemnation would have burdened the collective property interest); *Read v. Phillips Petroleum Co.*, 441 F. Supp. 1184 (E.D. La. 1977) (co-tenants of a mineral estate necessary parties to a suit alleging waste of the property's mineral resources); *ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 112 F.R.D. 201, 203 (D.V.I. 1986) (suit by co-tenants against lessor for breach of a lease agreement and attempted fraudulent conveyance of the property alleged injuries "to the common interest" and therefore required joinder of all co-tenants), *vacated on other grounds*, 829 F.2d 473 (3d Cir. 1987).

Other cases cited by Enbridge are simply irrelevant because they involved attempts by property owners to invalidate a third party's claim to title in the jointly owned property. *See Broussard v. Columbia Gulf Transmission Co*., 398 F.2d 885, 887 (5th Cir. 1968) ("[A]n owner of an undivided one[-]sixth interest in realty is an indispensable party for the adjudication of an action to invalidate an easement across jointly-owned property."); *El Paso E&P Co., LP v. Crabapple Props. Ltd.*, Civil Action No. 07-0428, 2008 WL 2051109, at *8 (W.D. La. Mar. 6, 2008) ("The central question in this lawsuit is whether the Pardee Servitude has prescribed by non-use. That issue … is of significant importance to the other landowners whose property is

ostensibly subject to the servitude, which separates the landowners from any mineral rights associated with their property."); *Shell W. E & P Inc. v. Dupont*, 152 F.R.D. 82 (M.D. La. 1993) (challenging the validity of a lease ).

Enbridge has the burden of persuasion on its motion, and it has in no way justified the forcible joinder of 168 co-tenants—whose fractional interests in the property in many cases amount to well below one percent of just one of the disputed tracts—in contravention of the well-established rule that additional parties are not necessary where an individual co-tenant seeks only to recover its proportionate share of the joint property interest. *See Guth*, 155 F.2d at 566.

## II.   Defendants' Arguments Under Rule 19 Do Not Overcome the General Rule that Joinder of the Absent Co-Tenants Is Not Required.

Enbridge presents no argument that justifies departing from the general rule under Rule 19 that "other cotenants need not be joined" to suits seeking to recover one co-tenant's proportional share of trespass damages.  Wright & Miller § 1621.

### A.   Joinder Is Not Required for the Court To Provide Complete Relief Among the Existing Parties.

Rule 19(a)(1)(A) requires joinder of a non-party if, "in that person's absence, the court cannot accord complete relief among existing parties[.]"  Defendants do not contend that this provision is met here, *see* Doc. 78 at 9, and for good reason.  As the Seventh Circuit and this Court have recognized, "[t]he term complete relief refers only to relief between the persons already parties, and not as between a party and the absent person whose joinder is sought."  *Welton Enters., Inc. v. Cincinnati Ins. Co.*, No. 13-cv-227-wmc, 2014 WL 856142, at *2 (W.D. Wis. Mar. 5, 2014) (Conley, J.) (brackets in original) (quotation marks omitted) (quoting *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir.1992)).  If the Band prevails on its claims, the Court can enter an order requiring Enbridge to stop the unauthorized flow of oil and

gas product, decommission and remove Line 5 infrastructure from the expired parcels, and pay the Band its proportional share of damages relating to Enbridge's past trespass.  None of this relief requires the involvement of the Band's co-tenants.  *See*, *e.g.*, *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001) ("[I]f [Defendant] prevails, [Plaintiff's] claims would be completely resolved.  If, on the other hand, [Plaintiff] prevails in this litigation, the court need only determine … the proper damages due [Plaintiff].").

### B.     Failure To Join the Absent Co-tenants Will Not Impair or Impede Their Ability To Protect Their Interests.

Enbridge contends that joinder is required under Rule 19(a)(1)(B) because the absent co-tenants "claim[] an interest relating to the subject of the action and [are] so situated that disposing of the action in the[ir] absence may … as a practical matter impair or impede the[ir] ability to protect the interest[.]"  Doc. 78 at 9 (quoting Fed. R. Civ. P. 19(a)(1)(B)).  But adjudication of the Band's claims in the co-tenants' absence does nothing to impair their interests.  *See* Wright & Miller § 1621 ("[A] cotenant may ask for an accounting of the rents and profits that belong to him without joining other cotenants when effective relief can be awarded *without impairing the rights of the nonparties*." (citing *Guth* and *Cowling*) (emphasis added)).  Enbridge's arguments to the contrary have been soundly rejected by the Seventh Circuit and this Court.

The Band is seeking only its pro rata share of any trespass damages or restitution.  This in no way impairs each co-tenant's ability to pursue its own parallel or divergent claims in a separate suit if it so chooses.  *See Craft*, 535 U.S. at 280 (co-tenants are entitled "to receive a portion of any income produced from" their property); *Kentucky Nat. Gas Corp. v. Duggins*, 165 F.2d 1011, 1016 (6th Cir. 1948) ("[A] tenant in common in such an action is seeking to recover

his aliquot portion of the land involved, and each tenant in common has a similar separate right.").

Enbridge posits that joinder is required because the Court's resolution of the present controversy "will have a direct impact on the Cotenants' rights through *stare decisis*."  Doc. 78 at 12-16.  But the Seventh Circuit and this Court have repeatedly denied joinder of absent third parties who possessed rights under contracts or leases that were substantially similar or identical to the rights at issue before the Court, notwithstanding the fact that the courts' decisions could have determined the rights of the third parties as well, as a matter of stare decisis or through creation of a non-binding but persuasive precedent.

For example, in *Davis Companies*, a plaintiff sued over a contract to acquire shares in the defendant corporation.  The defendant had a separate share-acquisition contract with a third party that was "interrelated and interdependent in substance and operation" with the contract at issue. 268 F.3d at 480.  The defendant sought joinder of the third party, arguing that under Rule 19(a)(1)(B)(i) any adjudication of the contract would create precedent affecting the third-party contract as well.  Rejecting this reasoning, the Seventh Circuit held that "[w]hen a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract[.]"  *Id*. at 484 (brackets in original) (quoting Wright & Miller § 1613).

Similarly, in *PNCEF, LLC v. Divinity Group*, No. 10-cv-108-wmc, 2010 WL 4702294 (W.D. Wis. Nov. 9, 2010) (Conley, J.), a plaintiff sued a lessee for default under a lease.  The lessee sought to join under Rule 19 a third party to whom the lessee had transferred tangible

property that was subject to the lease.  Although the outcome of the litigation could have determined the lessee's ownership (and therefore the third party's continued possession) of the property in question, this Court found that the third party was not required to be joined under Rule 19 because it was "neither part[y] to the agreement between [plaintiff and defendant], nor d[id he] stand in privity with [defendant].  [Defendant] may have grounds to bring a third-party complaint … but that does not mean that [the third party] is a party who must be joined in *plaintiff's* suit."  *Id.* at *2.

Likewise, *American General Life Insurance Co. v. Estate of Pergolski*, 12-cv-324-wmc, 2012 WL 12995769 (W.D. Wis. Nov. 26, 2012) (Conley, J.), involved a claim by the decedent's son against an insurance provider for payment on the decedent's life insurance policy.  Because the decedent was also covered by a second policy issued by another provider, the son sought to join the absent provider under Rule 19.  This Court denied joinder, even though "the issues raised [in the case] may be similar to any challenge to [the absent insurer's] payment of proceeds under its policy" that the decedent's son might have brought in a separate suit.

Thus, the risk of a "negative precedent," Doc. 78 at 3, simply does not provide sufficient cause to require the joinder of an absent party under Rule 19 in this Court.

**C.    Failure To Join the Absent Co-tenants Will Not Subject Enbridge to a Substantial Risk of Incurring Double, Multiple, or Otherwise Inconsistent Obligations.**

Enbridge's arguments that it will be prejudiced by the possibility of double, multiple, or otherwise inconsistent obligations absent joinder of all co-tenants also fail.

Enbridge contends that in the absence of the co-tenants' joinder, it may be required to pay damages in different proceedings based on different damages calculations or allocations, or found liable for trespass damages in one suit but not liable in another.  Doc. 78 at 17-19.

14

However, Enbridge's suggestion that these possibilities constitute "double, multiple, or otherwise inconsistent *obligations*" within the meaning of Rule 19(a)(1)(B)(ii) (emphasis added), *see* Doc. 78 at 17-19, is simply wrong.  "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.  Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum."  *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (citation omitted).  The possibly divergent results that Enbridge posits are a textbook example of inconsistent *adjudications*, and the law is clear that Rule 19 "prevents inconsistent obligations, not inconsistent adjudications."  *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 646 (W.D. Wis. 2000) (Crabb, J.), *aff'd*, 299 F.3d 618 (7th Cir. 2002).

Indeed, this Court rejected Enbridge's argument in *Welton Enterprises*.  There, separate insured entities sought payment under their identical policies for property damage arising out of a single incident, a hailstorm.  One claimant was non-diverse and therefore could not be joined.  The insurer argued that the non-diverse party was required under Rule 19 because its absence made the insurer vulnerable to competing litigations in federal and state court, which could result in "divergent rulings on the same insurance policy."  2014 WL 856142, at *3.  Rejecting this argument, this Court explained that "*these are inconsistent results, not inconsistent or conflicting obligations*," and noted that "even outside the insurance setting, parallel state and federal suits *by the same parties* are a common by-product of our system of concurrent jurisdiction."  *Id.* (first emphasis added).  By the same token, there would not be any inconsistent obligation if this Court were to enter an order prohibiting Enbridge from continuing to operate the Line 5 pipeline on the expired parcels while a separate court ordered Enbridge to pay damages to co-tenants for so long

as its trespass continued.  The adjudications might not be fully consistent, but Enbridge could comply with both.

Enbridge's arguments miss the mark for yet another reason.  The Band possesses the individual right to unilaterally exclude Enbridge and any other third party from its property.  *See Craft*, 535 U.S. at 280.  The Band is not required to obtain the consent of the co-tenants to enforce these rights against Enbridge, nor could the other landowners prevent the Band from doing so.  *See Kentucky Nat. Gas*, 165 F.2d at 1016 ("[O]ne tenant in common may sue in ejectment in order to recover his interest in land without joining the other tenants in common.").  Nor could another court sanction Enbridge's continual trespass by requiring it to pay ongoing trespass damages until such time as it voluntarily vacates the property.  As a matter of law, Enbridge must obtain the Band's consent to remain on the expired parcels, and the Band has not and will not consent to Enbridge extending its pipeline operations on the Reservation.  *See* 25 C.F.R. § 169.107 ("For a right-of-way across tribal land, the applicant must obtain tribal consent[.]").  Thus, should this Court grant the Band's requested relief and eject Enbridge from the expired parcels, no order issued by a separate court could conflict, because this Court's judgment necessarily would have upheld the Band's right to deny consent to Enbridge's continued use of tribal lands and no other court could overturn this judgment on a collateral attack.

The crux of Enbridge's argument is that it may be faced with multiple lawsuits arising out of a single incident—its trespass across lands owned in common by the Band and 168 individual co-tenants.  However, parties are frequently faced with the possibility of multiple lawsuits where their actions have affected separate parties, and "the fact that [Enbridge] may

have to fight a parallel battle against a now absent party [in an alternate forum] is not dispositive" under Rule 19.  *Welton Enters.*, 2014 WL 856142, at *2.

## III.    Joinder of the Absent Co-Tenants Should Not Be Permitted Under Rule 21.

Enbridge additionally argues that this Court should join the absent parties under Rule 21, even if their joinder is not required under Rule 19.  However, it is not this Court's practice to force joinder on a party who has not affirmatively sought to join suit, and there is no warrant to depart from this sound policy in this case.  To the contrary, forcibly joining 168 additional plaintiffs in this suit would impose significant burdens on them, the Court, and the existing parties.  The absent co-tenants, moreover, have ready access to alternative procedures that may afford them effective relief without incurring those burdens.  While Enbridge invokes judicial efficiency to justify adding scores of individual owners with fractional interests in the expired parcels—owners whose identity Enbridge admits is not yet fully known—its request would, in truth, substantially complicate this case with no commensurate benefit.

This Court's sound policy against the involuntary joinder of parties exists to prevent requests such as Enbridge makes here.  "[T]he Seventh Circuit *prefers* for 'the absent party [to] claim [the] interest' in compulsory joinder cases."  *Chesemore v. Fenkell*, 18-cv-724-wmc, 2020 WL 1984310, at *3 (W.D. Wis. Apr. 27, 2020) (Conley, J.) (brackets in original) (quoting *Davis Cos.*, 268 F.3d at 483).  As this Court has noted, "[t]ypically, a party elects to intervene in cases where its interest may be inadequately represented by the current parties.  *See* Fed. R. Civ. P. 24. For this reason, courts may factor an absentee's choice *not* to seek to intervene in determining the presence of a claimed interest."  *Sullivan v. Flora, Inc.*, 15-cv-298-wmc, 2016 WL 4275864, at *2 (W.D. Wis. Aug. 12, 2016) (Conley, J.).

Here, none of the 168 co-tenants has sought to intervene in this case. While Enbridge asserts that the choice to do so should be taken away from them, there are several reasons that the other co-tenants may have chosen not to join this litigation, and their decision should be honored under the law of this Circuit. Any co-tenants forcibly joined in this suit would be subject to significant obligations and burdens attendant to litigation, including the need to obtain and pay for legal counsel, respond to and propound discovery, and potentially sit for depositions and provide testimony at trial. As this Court is well aware, the discovery burdens in this case have been significant. As of September 14, 2020, the parties had collected for review more than one million documents and produced more than 25,000, and the process of document review is still under way. Doc. 56 at 1. Additionally, each party has been authorized to serve at least fifty written interrogatories, Doc. 36 at 18, and Enbridge had requested "to take somewhere in the range of 45-60 depositions of fact witnesses" before the joinder of any additional parties had even been suggested, Doc. 56 at 2. The parties also collectively anticipate calling thirteen to seventeen expert witnesses. *Id*.

Much of this discovery and expert witness testimony will pertain to issues that are wholly unconnected to the absent co-tenants' property interests. Both parties agree that the Band's nuisance claims "may be factually intensive, implicating technical data and expert analysis." Doc. 56 at 1. Enbridge has not claimed that these nuisance issues—which center on the hazards posed by Enbridge's operation of the pipeline at discrete locations other than the expired parcels—are in any way relevant to the absent co-tenants' potential trespass claims. Even with respect to the Band's trespass claims, Enbridge has raised numerous affirmative defenses and counterclaims based on its 1992 Agreement with the Band. *See* Doc. 77 at 44, 66-70. The

absent landowners were not party to that Agreement and Enbridge has not alleged that any of its affirmative defenses based on this Agreement would apply to them.

Participation in this lawsuit could therefore impose severe burdens on the co-tenants, which for those holding highly fractionated interests (in some cases as small as .005%) might be wholly disproportionate to the recovery that they could hope to achieve. It would therefore be eminently reasonable for these co-tenants to seek relief, if at all, through separate proceedings that would not be subject to the collateral issues and litigation costs implicated in this suit.

This is particularly so here, where a much simpler and less costly federal administrative process is readily available to the co-tenants. The Bureau of Indian Affairs, as the fee title holder to the lands at issue, has in place a robust administrative process to address trespass on tribal and tribal-member trust lands, including in cases such as this one, where a pipeline operator such as Enbridge continues to utilize a right of way over trust lands after its easements have expired. 25 C.F.R. § 169.410 provides:

> If a grantee remains in possession after the expiration, termination, or cancellation of a right-of-way, and is not accessing the land to perform reclamation or other remaining grant obligations, we may treat the unauthorized possession as a trespass under applicable law and will communicate with the Indian landowners in making the determination whether to treat the unauthorized possession as a trespass. Unless the parties have notified us in writing that they are engaged in good faith negotiations to renew or obtain a new right-of-way, we may take action to recover possession on behalf of the Indian landowners, and pursue any additional remedies available under applicable law, such as a forcible entry and detainer action. The holdover time will be charged against the new term.

These regulations further provide that payments for "any proceeds" or "trespass damages" will be allocated among the individual landowners. *Id*. § 169.407 (unless a right-of-way grant provides otherwise, "the Indian landowners will be entitled to receive these payments").

Enbridge is well aware of this process.  On March 8, 2013, a few months before the expiration of the rights of way, Enbridge applied to the Bureau seeking renewal.  Enbridge contacted the Bureau again on September 3, 2019—six years post-expiration—seeking an updated list of the co-tenant landowners.  On February 19, 2020, the Bureau provided the requested information and notified Enbridge that it had ninety days to attempt to obtain landowner consent to renewal of the easement.  On November 5, 2020, the Bureau issued a letter informing Enbridge, the Band, and the Band's co-tenants that

> the requisite landowner consents have not been provided.  The applications have now been pending with the agency for more than seven years and remain incomplete.

> Accordingly, Enbridge's ROW application dated March 8, 2013 … is denied because Enbridge has failed to obtain the required landowner consents.

Smith Decl. ¶ 8.

Now that the application has been denied, the Bureau may move to enforce its trespass regulations against Enbridge, including by seeking to recover trespass damages on behalf of the co-tenants.  Forcibly joining those co-tenants in this suit could interfere with their ability to seek relief through what may well prove to be a faster and less burdensome administrative process.  It could also impose significant delays on the Band's own ability to obtain relief.  Enbridge estimates that to identify and join all of the absent co-tenants would take approximately six months.  Doc. 78 at 25-26.  Should this Court grant Enbridge's requested relief in full, the entire case schedule could be extended to accomplish joinder, which could delay trial in this matter until as late as October 2022.  No principle of judicial efficiency, or of fairness to the co-tenants, counsels in favor of such an outcome.

**CONCLUSION**

For the foregoing reasons the Bad River Band respectfully requests that this Court deny Enbridge's motion to join the absent co-tenants under Federal Rules of Civil Procedure 19 and 21.

Dated this 23rd day of November, 2020          Respectfully Submitted,

                                                 By:  /s/ Riyaz A. Kanji

Erick Arnold                                     Riyaz A. Kanji
BAD RIVER BAND OF THE                            David A. Giampetroni
LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS          KANJI & KATZEN, P.L.L.C.
OF THE BAD RIVER RESERVATION                     303 Detroit Street, Suite 400
72682 Maple Street                               Ann Arbor, Michigan 48104
Odanah, Wisconsin 54861                          Telephone: (734) 769-5400
Telephone: (715) 682-7107                        rkanji@kanjikatzen.com
attorney@badriver-nsn.gov                        dgiampetroni@kanjikatzen.com

Oday Salim                                       Cory J. Albright
NATIONAL WILDLIFE FEDERATION                      Jane G. Steadman
231 West Liberty Street, Suite 200               Philip H. Tinker
Ann Arbor, Michigan 48104                        KANJI & KATZEN, P.L.L.C.
Telephone: (586) 255-8857                        811 1ST Avenue, Suite 630
salimo@nwf.org                                   Seattle, Washington 98104
                                                 Telephone: (206) 344-8100
                                                 calbright@kanjikatzen.com
Bruce Wallace                                    jsteadman@kanjikatzen.com
HOOPER HATHAWAY PRICE BEUCHE &                    ptinker@kanjikatzen.com
WALLACE
126 S. Main Street
Ann Arbor, Michigan 48104
Telephone: (734) 662-4426
bwallace@hooperhathaway.com

*Counsel for the Bad River Band of the*
*Lake Superior Tribe of Chippewa Indians of*
*the Bad River Reservation and Naomi Tillison,*
*Director of Mashkiiziibii Natural Resources Department*
*of the Bad River Band of the Lake Superior Tribe of*
*Chippewa Indians of the Bad River Reservation,*
*in her official capacity.*

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2020, a copy of the foregoing was filed through the

Court's CM/ECF management system and electronically served on counsel of record.

/s/ Riyaz A. Kanji
Riyaz A. Kanji
