UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BAD RIVER BAND OF THE
LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS
OF THE BAD RIVER RESERVATION,                              Case No. 3:19-cv-602

    Plaintiff /                                                     Judge William M. Conley
    Counterclaim                                                Magistrate Judge Stephen Crocker
    Defendant,

v.

ENBRIDGE ENERGY COMPANY, INC.; and
ENBRIDGE ENERGY, L.P.,

    Defendants /
    Counter-Claimants,

v.

NAOMI TILLISON, Director of Mashkiiziibii
Natural Resources Department of the Bad River
Band of the Lake Superior Tribe of Chippewa
Indians of the Bad River Reservation, in her
Official Capacity,

    Counterclaim Defendant.

**BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

**INTRODUCTION**

The Bad River Band of the Lake Superior Tribe of Chippewa Indians ("Bad River" or "Band") has sued Enbridge Energy Company, Inc. and Enbridge Energy, L.P. ("Defendants" or "Enbridge") over the operation of the Line 5 oil and gas transmission pipeline across the Band's Reservation. The Band's claims sound in trespass and nuisance—trespass because Enbridge

1

continues to operate Line 5 across twelve parcels of Band-owned lands over which the Band has declined to renew Enbridge's expired easements, and nuisance because Enbridge is operating the pipeline on the Reservation under conditions that create an unreasonable risk of a pipeline release and degradation of the Band's natural and cultural resources.

Both parties have served and responded to significant amounts of discovery pertaining to the easements pursuant to which Enbridge has operated on the Reservation (and the expiration of some of those easements), the threat of a pipeline rupture on the Reservation, potential damages that could result from such a rupture, and other discovery going to the issues in this case. But Enbridge has also served discovery ranging far afield from these issues. In the instant motion, Enbridge asks this Court to compel the production of documents relating to the Band's wastewater treatment plant, which has nothing whatsoever to do with any claims or defenses in this case. Enbridge's motion is accordingly outside the scope of Federal Rule of Civil Procedure 26(b)(1), and the Band requests that the Court deny it pursuant to Federal Rule 26(b)(2)(C)(iii.).

## BACKGROUND

**I.       The Band's Claims and Enbridge's Counterclaims**

The Band asserts two types of claims in this action. The first sounds in trespass, ejectment, and unjust enrichment. Enbridge (or its corporate predecessor) has operated its Line 5 pipeline on the Band's Reservation since 1953 under a series of easements issued by the Bureau of Indian Affairs ("Bureau"). The easements were renewed approximately every twenty years after 1953, with the most recent renewals taking place in 1993. Second Amended Complaint ("SAC"), Doc. 73 ¶¶ 53, 54, 57. In 2013, easements over fifteen parcels in the pipeline corridor

expired. The Band holds ownership interests in twelve of those parcels. *Id.* ¶ 58.[1] The Band has declined to consent to renewed easements over these parcels (the "expired parcels") and demanded that Enbridge cease its unauthorized use and occupation, but Enbridge has nevertheless continued to operate its pipeline over the subject parcels to this day. *Id.* ¶¶ 58–62. Enbridge's trespass has been willful, enabling it to reap significant profits from unlawfully pumping twenty-three million gallons daily of crude oil and natural gas liquids across the Bad River Reservation. *Id.* ¶ 6.

The Band's additional claims involve public nuisance, and the Band's regulatory authority over Enbridge's on-reservation activities related to the pipeline. Enbridge's ongoing operation of the Line 5 pipeline on the Bad River Reservation represents an acute threat to the Bad River watershed and the natural and cultural resources that the Band's members depend on. The aging pipeline poses a substantial risk of discharge across the Reservation. *Id.* ¶¶ 65–88. This risk is especially pronounced at the "Meander" site, where the migration of the Bad River's banks at the site of Line 5's crossing threatens to expose the pipeline to the river's currents in the near future.[2] *Id.* ¶¶ 89–122. Additionally, on August 21, 2019, the Band discovered a forty-nine-foot stretch of exposed and largely unsupported pipeline at a site east of an unnamed tributary of Denomie Creek that Enbridge has designated "Slope 18." *Id.* ¶¶ 123–138. The Band also seeks judicial recognition of its regulatory authority over Enbridge's activities, including Enbridge's proposals to alter the geology and hydrology of the Reservation in order to prolong

---

[1] The Band's Second Amended Complaint states that the Band holds "between a forty-percent and a ninety-percent" ownership interest in eleven expired parcels. SAC ¶ 58. On January 15, 2021, the Band moved for leave to file a Third Amended Complaint reflecting its recently discovered ownership interest in a twelfth expired parcel. Doc. 83.

[2] As of July 23, 2019, when the Band filed its original Complaint, it estimated that Line 5's inevitable exposure at the Meander site would occur "in the next two to five years." Doc. 1 ¶ 96.

pipeline operations on the Reservation without satisfactorily addressing the threat posed by those operations. *Id.* ¶¶ 164–170.

The Band seeks as remedies an order of ejectment barring Enbridge from continuing to operate Line 5 across the expired parcels; an injunction to halt Enbridge's maintenance of a public nuisance on the Reservation through the operation of Line 5; declaratory relief regarding the scope of the Band's regulatory authority; and damages and restitution addressing Enbridge's past trespass. *Id*. Prayer for Relief.

Enbridge's counterclaims are the mirror image of the Band's trespass and regulatory authority claims. Enbridge contends that it is not in trespass because it holds express or implied contractual rights to compel the Band "to give its consent, on economically reasonable terms, to new easements," Doc. 77 ¶¶ 93, 99; that it is entitled to an equitable easement across the expired parcels, *id*. ¶¶ 100–102; and that it is not subject to the Band's regulatory authority because it has "the unfettered right to operate, inspect and maintain Line 5 on" those parcels for which it continues to hold valid easements, *id*. ¶¶ 100–136. Enbridge has asserted no counterclaims or affirmative defenses, and has made no factual allegations, regarding the Band's wastewater treatment facility.

## II.     Enbridge's Discovery

Enbridge served the Band with its first set of discovery requests on November 15, 2019, consisting of thirty-nine requests for production of documents and twenty-eight enumerated interrogatories. Tinker Decl. ¶¶ 2–4 & Attachs. A, H. Since then, Enbridge has served six additional sets of document requests and interrogatories, totaling sixty-five document requests and more than fifty interrogatories, including all discrete subparts. *Id*. ¶¶ 2–4 & Attachs. B–G, I–N. To date, the Band has responded to these requests with dozens of pages of written

4

interrogatory responses and produced more than 13,900 documents totaling more than 83,700 pages.  *Id.* ¶ 5.  Notwithstanding the voluminous nature of the discovery, the Band of course has no objection to producing to Enbridge documents and information concerning the issues in this case and has made and will continue to make substantial efforts in fulfilling its discovery obligations.

Other Enbridge discovery requests, however, have strayed far afield from the issues in the case, veering into conspiracy theories and other matters of no relevance to the merits, including unrelated litigation brought by the State of Michigan against Enbridge's operation of Line 5 across the Straits of Mackinac, *id*. Attach. H (Request No. 28); the Band's communications with third parties that have no connection to the matters at issue in this case, including the State of Michigan and environmental activist Winona LaDuke, *id*. Attach. J (Request Nos. 48–49); and the Band's history of granting third parties access to properties that are not crossed by the pipeline and are wholly unconnected to its operations, *id*. Attachs. C, D (Interrogs. 36, 37).  With respect to the vast majority of such requests, the Band has sought to be extremely accommodating, and the parties have reached agreements regarding the scope of production for virtually all of Enbridge's requests.  *See* Docs. 89-1–89-8.  It is only with respect to a very limited set of issues that such accommodations have not been reached.

To date, the only discovery request for which the parties have been unable to arrive at an agreement is Enbridge's request for documents pertaining to the Band's wastewater treatment facilities.  On January 31, 2020, the Band explained to Enbridge why this discovery is well outside the bounds of Rule 26:

> Request Nos. 29–31 relate to the permitting, discharges, and operations of the Band's wastewater treatment facilities.  The Band objected that these requests, in addition to being overbroad, unduly burdensome, and not proportional to the needs of the case, are irrelevant to the claims and defenses in the case.  On our

> January 24, 2020 call, you asserted relevance on the basis that the Band's complaint alleges that the Band is a good steward of reservation resources and alleges that Enbridge's operations threaten those resources; that you intend to ask the Band's witnesses both whether they are aware of any crude oil discharges on the reservation and whether they are aware of any NPDES permit violations at the Band's wastewater facilities; and that this will test the [credibility] of the Band's witnesses.  We disagree.  The Band's wastewater facilities, which are not in proximity to Line 5, have nothing to do with whether Enbridge is maintaining a nuisance through the continued operation of Line 5; whether Enbridge is in trespass on the Reservation and is subject to ejectment or has an equitable easement for Line 5; whether the Band is in breach of contract, federal easements, or the duty of good faith and fair dealing; or the Band's regulatory authority over Enbridge vis-à-vis Line 5.  In a case as factually complex as this, where the burdens and cost of timely responding to relevant discovery are immense, there is no warrant to pursue expansive discovery on topics so completely unrelated to the matters at issue.

Doc. 89-4 at 10 (Jan. 31, 2020 Letter from C. Albright to D. Feinberg).  Enbridge filed the instant motion one year later.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that

> the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The Court may limit discovery if the information sought is irrelevant to the claims or defenses at issue in the case, Fed. R. Civ. P. 26(b)(2)(C)(iii), or "if the burden or expense of the proposed discovery outweighs its likely benefit in the context of the particular case," *Gillen v. Kohn Law Firm S.C.*, No. 13-cv-373-wmc, 2014 WL 3784488, at *1 (W.D. Wis. July 31, 2014) (Conley, J.).  "The burden of demonstrating that discovery is overly broad, unduly burdensome or irrelevant rests with the party opposing discovery," *id.*, which in this case is the Band.

Under Federal Rule of Evidence 401:

> Evidence is relevant if:
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action.

*See also Citgo Petroleum Corp. v. Ranger Enters., Inc.*, No. 07-cv-657-bbc, 2009 WL 2058213, at *2 (W.D. Wis. July 13, 2009) (Crocker, M.J.) ("The threshold for relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probabl[e] than it would be without the evidence.'" (quoting Fed. R. Evid. 401)).

## ARGUMENT

**Documents Relating to the Band's Wastewater Treatment Facility Are Irrelevant to Any Claim or Defense at Issue in This Case.**

The discovery at issue in Enbridge's motion seeks information that is utterly irrelevant to any claim or defense at issue in this case. This case concerns Enbridge's maintenance and operation of the Line 5 pipeline across the Bad River Reservation, and specifically whether these activities constitute a trespass on Band-owned lands over which Enbridge currently holds no valid easement or other permission to operate, SAC Counts 3, 4, 6, and whether the pipeline is being operated under conditions that present a high risk of pipeline rupture, *id*. Counts 1, 2. The Band's operation of its own wastewater treatment facility on its own land has nothing to do with these issues, and Enbridge's motion does not argue otherwise.

It bears emphasis that Enbridge does not contend that its request is relevant to defeating any of the Band's claims or supporting any of its counterclaims on the merits. Indeed, nowhere in the approximately 170 pages comprising the parties' operative pleadings, including all claims, counterclaims, and answers, is there any allegation regarding or any reference to the Band's wastewater treatment facility. Rather, Enbridge asserts that the requested evidence will be used

7

to prove that the Band's "allegations that Line 5 is a threat to water quality are mere pretext," and that the Band's actions with respect to Enbridge and Line 5 are not "grounded in a good-faith concern about water quality[.]" Doc. 89 at 6–7.

Enbridge cites no decision from this Court or any other to suggest that the Band's motivation for bringing this lawsuit has any bearing on whether it is entitled to relief on its claims. To the contrary, "[t]he motive of a party in bringing an action generally is immaterial to the question whether the action may be maintained." *Karim v. Gunn*, 999 A.2d 888, 890 (D.C. 2010) (brackets in original) (quoting 1 Am. Jur. 2D *Actions* § 43, at 828 (2005)); *see also Harrison v. City of Fort Wayne*, Case No. 1:17-cv-00419-SLC, 2020 WL 5959713, at *10 (N.D. Ind. Oct. 8, 2020) ("[T]he motivation of the Defendant Officers' counter-claims does not appear to be relevant to any element of the parties' current claims."); *Tallman v. Freedman Anselmo Lindberg, L.L.C.*, No. 11-3201, 2013 WL 2631754, at *3 (C.D. Ill. June 12, 2013) ("Plaintiff's motive in bringing the lawsuit is not relevant" to determining the merits of Plaintiff's claims.); *Lee v. Kucker & Bruh, LLP*, No. 12 Civ. 4662(BSJ)(JCF), 2013 WL 680929, at *2 (S.D.N.Y. Feb. 25, 2013) ("The motivation of the plaintiff in bringing suit is irrelevant[.]").

This case illustrates perfectly why Enbridge's theory is not the law. The Band declined to renew Enbridge's easements over the expired parcels and seeks to bar Enbridge from continuing to operate in trespass across those parcels. The Band also seeks to enjoin Enbridge from operating the pipeline in a manner that would unreasonably interfere with the Band's and its members' use and enjoyment of the Reservation's natural resources and water resources. *See generally Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 771 (7th Cir. 2011) ("[P]ublic nuisance is defined as a substantial and unreasonable interference with a right common to the general public, usually affecting the public health, safety, peace, comfort, or convenience."

8

(citing Restatement (Second) of Torts § 821B)). Nothing about either of these claims turns on the status or operating conditions of the Band's wastewater treatment facilities. Whether Enbridge has a legal right to continue operating the pipeline, and the extent of the threat posed to Reservation waterways and resources by those pipeline operations, are issues that can and should be adjudicated on their own merits.

Enbridge, however, apparently seeks to divert attention away from the actual claims at issue and instead to the Band's record as an environmental steward. That status is not subject to serious question, given the Band's tireless efforts to preserve its Reservation and a way of life grounded in a respect for the unparalleled water and land resources the Band has protected for generations. These efforts include their preservation of the Kakagon and Bad River Sloughs, which comprise one of the largest and best remaining freshwater estuarine ecosystems in the world. SAC ¶¶ 47–48. These pristine waters support a tremendous array of flora and fauna, including fisheries within which tribal subsistence and commercial fishers continue to exercise treaty-based fishing rights as they have done for countless generations, *id.* ¶¶ 39–42; and one of the largest and healthiest wild rice beds in the world, which Band members likewise continue to cultivate using techniques passed down through the centuries, *id.* ¶¶ 37–38. So successful has the Band's stewardship of these waters been that the United States Fish and Wildlife Service has recognized that this "coastal wetland ecosystem is recognized to be among the richest and most extensive of its kind," *id.* ¶ 51, and the World Wetland Network has noted that the Band's protection of them represents "a fantastic example of people living in harmony with their environment," *id.* ¶ 47.

Even more to the point for purposes of the instant motion, Enbridge's effort to transform this case into a referendum on the Band's environmental stewardship simply should not be

9

countenanced. Accepting the argument underpinning Enbridge's far-reaching discovery would mean requiring the Band "to defend two separate [sovereign actions] of questionable relevance to each other[.]" *Citgo Petroleum*, 2009 WL 2058213, at *2. Conflating these two entirely separate matters—the Band's operation of its wastewater treatment facilities and Tribal Council decisions regarding Enbridge's pipeline—"would detract from the real issue[s] at hand," *id*., which are the Band's claims that Enbridge is in trespass and operates Line 5 under conditions that constitute a public nuisance.

      Because the information concerning the wastewater treatment facilities "does not tend to prove the existence of a fact that is of consequence to the determination of this action," *id*., Enbridge's discovery is improper and its motion should be denied.

**CONCLUSION**

For the foregoing reasons, the Bad River Band respectfully requests that this Court deny Enbridge's Motion to Compel Production of Documents.

Dated this 12th day of February, 2021      Respectfully Submitted,

By: /s/ Riyaz A. Kanji

| | |
|---|---|
| Erick Arnold<br>BAD RIVER BAND OF THE<br>LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS<br>OF THE BAD RIVER RESERVATION<br>72682 Maple Street<br>Odanah, Wisconsin 54861<br>Telephone: (715) 682-7107<br>attorney@badriver-nsn.gov | Riyaz A. Kanji<br>David A. Giampetroni<br>KANJI & KATZEN, P.L.L.C.<br>303 Detroit Street, Suite 400<br>Ann Arbor, Michigan 48104<br>Telephone: (734) 769-5400<br>rkanji@kanjikatzen.com<br>dgiampetroni@kanjikatzen.com |
| Oday Salim<br>NATIONAL WILDLIFE FEDERATION<br>231 West Liberty Street, Suite 200<br>Ann Arbor, Michigan 48104<br>Telephone: (586) 255-8857<br>salimo@nwf.org | Cory J. Albright<br>Jane G. Steadman<br>Philip H. Tinker<br>KANJI & KATZEN, P.L.L.C.<br>811 1ST Avenue, Suite 630<br>Seattle, Washington 98104<br>Telephone: (206) 344-8100<br>calbright@kanjikatzen.com<br>jsteadman@kanjikatzen.com<br>ptinker@kanjikatzen.com |
| Bruce Wallace<br>HOOPER HATHAWAY PRICE BEUCHE &<br>WALLACE<br>126 South Main Street<br>Ann Arbor, Michigan 48104<br>Telephone: (734) 662-4426<br>bwallace@hooperhathaway.com | |

*Counsel for the Bad River Band of the*
*Lake Superior Tribe of Chippewa Indians of*
*the Bad River Reservation and Naomi Tillison,*
*Director of Mashkiiziibii Natural Resources Department*
*of the Bad River Band of the Lake Superior Tribe of*
*Chippewa Indians of the Bad River Reservation,*
*in her official capacity.*

## CERTIFICATE OF SERVICE

I certify that on February 12, 2021, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on counsel of record.

/s/ Riyaz A. Kanji
Riyaz A. Kanji
