IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY, L.P.,<br><br>*Defendants*.<br><br>ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY, L.P.,<br><br>*Counter-Plaintiffs*,<br><br>v.<br><br>BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION and NAOMI TILLISON, in her official capacity,<br><br>*Counter-Defendants*. | Case No. 3:19-cv-00602-wmc<br><br>Judge William M. Conley<br>Magistrate Judge Stephen L. Crocker |

**BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS' PROPOSED FINDINGS OF FACT IN OPPOSITION TO ENBRIDGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation (the "Band") submits the following Proposed Findings of Fact in Opposition to Enbridge's Motion for Partial Summary Judgment as Follows:

1. The continued migration of the Bad River towards the Line 5 pipeline will likely expose the pipeline at the Bad River meander within the next three to five years, but pipeline exposure could occur in significantly less time depending on Bad River flow and other conditions.

    **Evidence**:

    (a) Expert Report of Wright Water Engineers, Inc., *Engineering Evaluation of the Bad River Meander Adjacent to Enbridge Line 5 and Related Water Resources Issues* ("WWE Report")[1] (Jan. 31, 2022) at ES-12 ("Based on the analysis described herein, WWE projects that the Enbridge Line 5 pipeline will likely become exposed within the next five years, although pipeline exposure could occur in significantly less time depending on the flow conditions in the Bad River, and other factors described herein.").

    (b) Deposition of Jonathan Jones ("Jones Dep.") (May 12, 2022) at 72:24–73:5 (same).

    (c) Expert Rebuttal Report of Wright Water Engineers, Inc., *Rebuttal to Selected Enbridge Expert Reports Regarding Line 5 and the Bad River Reservation* ("WWE Rebuttal Report")[2] (Apr. 8, 2022) at 2 (same).

    (d) WWE Report at ES-1 ("Over the past 60 years, the Bad River has migrated nearly 300 feet toward Line 5 . . . reducing what once was a 310-foot separation between the pipeline and the river to a 26.5-foot separation distance.").

    (e) WWE Report at ES-12 ("The 26.5-foot remaining separation distance measured in September 2020 and May 2021 between the Bad River channel bank and the Line 5

---

[1] Contemporaneously with the filing of this Proposed Findings of Fact in Opposition to Enbridge's Motion for Partial Summary Judgment, the Band will file declarations from authors of the WWE Report—Jonathan E. Jones, Ian B. Paton, and Edwin E. Herricks—declaring that they stand by the contents of the WWE Report and that it contains opinions they will express in this case, as well as the bases and reasons for those opinions.

[2] Contemporaneously with the filing of this Proposed Findings of Fact in Opposition to Enbridge's Motion for Partial Summary Judgment, the Band will file declarations from the authors of the WWE Rebuttal Report—Jonathan E. Jones and Ian B. Paton—declaring that they stand by the contents of the WWE Rebuttal Report and that it contains opinions they will express in this case, as well as the bases and reasons for those opinions.

pipeline falls within the range of bank erosion that could occur during a single flood event.").

(f) WWE Report at ES-12 ("Figure ES-4 clearly shows that in many locations where Line 5 is close to the riverbank, the bank eroded by 30 feet to 50 feet in just three years (from 2016 to 2019).").

(g) *Expert Report of Hamish Weatherly* ("Weatherly Report") (Jan. 31, 2022) at 30 ("In my opinion, the pipeline will eventually become exposed due to ongoing bank erosion without remediation and bank protection works.  When exposure occurs is a function of the flood magnitudes that occur in the coming years but the estimated average timeline of pipeline exposure from bank erosion is approximately 3–5 years from the date of this report.  While the likelihood of bank erosion impacting the Line 5 pipeline at the Meander before March 2023 is judged to be low (i.e., <1% probability), it is not zero.").

(h) *Expert Opinion Reply of Hamish Weatherly* ("Weatherly Rebuttal Report") (Apr. 8, 2022) at 2 (same).

(i) Deposition of Hamish Weatherly ("Weatherly Dep.")[3] (May 26, 2022) at 55:6–8 ███████████████████████████████████████

(j) Weatherly Dep. at 60:13–22 ███████████████████████████████████████

(k) Tinker Decl. ¶ 22 & Ex. K (Email from Mark Maxwell to Mike Hill, Lara Pal, and Ryan Spoon (all Enbridge employees) excerpting and quoting from a list of "critical projects" compiled by Adam Pecush, Enbridge Manager of Asset Integrity (Mar. 24, 2020), ENB00215704–ENB215706 at ENB00215705) ███████████████████

---

[3] Pursuant to the ¶ 16(d) of the Stipulated Protective Order in place in this case, parties have up to 30 days from receipt of a deposition transcript to designate deposition testimony as confidential.  Dkt. 226 and 229.  The Band therefore treats all deposition testimony as presumptively confidential and subject to redaction during the pendency of this 30-day period.  Hence, the version of this document filed on the public docket contains redactions over cited deposition testimony from within the 30-day period.

2.     Once Line 5 is exposed at the meander neck, the length of exposed pipeline could expand rapidly and unpredictably, resulting in pipeline failure and the release of oil in as little as one storm event.

    **Evidence**:

    (a) WWE Report at ES-13 ("Once a portion of the pipeline becomes exposed, the length of exposure will continue to expand, unpredictably and potentially quite rapidly. A substantial length of pipeline could become exposed in a single high flow event, or over the course of several high flow events within a short period of time.").

    (b) WWE Rebuttal Report at 88 ("If the exposure of Line 5 leads to a section of pipeline suspended in the air with spans exceeding 62 feet (an outcome that could develop rapidly during a large runoff event in the Bad River), failure will be likely, with potential for severe environmental impacts caused by the oil released from the pipeline.").

    (c) Weatherly Dep. at 81:1–4 [redacted]

3.     The release of oil into the Bad River will cause significant—potentially even catastrophic—harm to the resources of exceptionally high quality, value, and sensitivity downstream in the Bad River watershed and Lake Superior, including to the river itself and surrounding wetlands, the downstream sloughs and their stands of wild rice, and the flora and fauna that thrive in the watershed.

    **Evidence**:

    (a) WWE Report at ES-1 ("Downstream from where Line 5 crosses the Bad River, the natural resources along the river are of exceptionally high quality, value, and sensitivity and are central to the health and welfare of the Band. These resources include the Kakagon-Bad River Sloughs and wild rice beds, which are internationally recognized for their ecological significance. Under many circumstances, failure of the Line 5 pipeline and release of oil into the Bad River would cause severe adverse impacts to the environment and to the tribal members who rely on the natural resources of the Bad River. Moreover, failure of Line 5 would threaten Lake Superior, which is the largest freshwater lake in the world by surface area and a critical national water resource[.]").

    (b) WWE Report at ES-14 ("Findings from WWE's evaluation of Question 3 indicate that under a variety of circumstances the release of oil from Line 5 would cause highly adverse environmental impacts to the Reservation's abundant and high-quality water resources.").

    (c) WWE Report at ES-16–ES-19.

    (d) WWE Report at 124–162; *see, e.g., id.* at 141–148 (assessment of habitat exposure and oil spill impacts on fish in the Bad River Watershed); *id.* at 148–149 (freshwater mussels); *id.* at 149 (amphibians and reptiles); *id.* at 149–152 (birds); *id.* at 152–153 (mammals); *id.* at 153–156 (wild rice); *id.* at 156–157 (woody and herbaceous vegetation); *id.* at 157–158 (clean up); *id.* at 158 (humans).

    (e) Deposition of Matthew Horn ("Horn Dep.") (May 24, 2022) at 64:4–17 [REDACTED]

    (f) Horn Dep. at 82:20–23 [REDACTED]

    (g) Matthew Horn's *Rebuttal Report – Enbridge Line 5* ("Horn Rebuttal Report") (Apr. 8, 2022) (excerpted) at 54–56 (summarizing estimated surface, shoreline, and in-water mortality effects from various Line 5 spill scenarios).

    (h) Horn Rebuttal Report, Ex. A (*Appendix A* to Horn Rebuttal Report) (Apr. 8, 2022) (excerpted) at 122–130; *see, e.g., id.* at 124 [REDACTED]

    (i) Horn Rebuttal Report, Ex. B (Horn video titled *Surface Oil Concentration and Total Hydrocarbons on the Shoreline*) (Apr. 8, 2022) depicting prediction of surface oil thickness and shoreline oil mass after release from mouth of Bad River into Lake Superior; *see* Horn Rebuttal Report at 74 [REDACTED]

4. Enbridge's proposed remediation measures would not eliminate the threat posed by Line 5 at the Bad River meander.

    **Evidence**:

    (a) Jones Dep. at 96:4–9, 98:10–12 [REDACTED]

(b) Jones Dep. at 109:12–20 

(c) WWE Report at ES-20–ES-26, 185–216 (cataloging multiple engineering feasibility concerns associated with Enbridge's proposed projects).

(d) WWE Rebuttal Report at 96 ("The proposed stabilization measures have multiple vulnerabilities and shortcomings and do not follow best-practice design guidance in several ways.").

(e) WWE Report at 204 ("In summary, Section 7.4 demonstrates Enbridge's rock revetment proposal has significant shortcomings including (as examples): 1) improperly prepared banks[,] 2) a proposed revetment slope that is overly steep, especially given the ice and debris loads carried in the Bad River, 3) toe and edge details that do not fully follow design guidance, and 4) construction-related challenges.").

(f) Jones Dep. at 190:1–11 

(g) Declaration of Jonathan E. Jones ("Jones Decl.") (Jun. 10, 2022) at ¶ 14 ("Upon review of Enbridge's 'Updated, Revised Bad River Meander Rip Rap Stabilization Project,' WWE concludes that the proposed project has several significant engineering feasibility concerns and also poses a risk of local adverse environmental impacts to the Reservation."); *id.* ¶ 16 (Enbridge's revised proposal "raise[s] significant new engineering feasibility issues which call into question whether the project could successfully be implemented as proposed"); *id.* ¶ 19 ("One feasibility issue [implicated by Enbridge's updated riprap project] relates to the need to move heavy equipment to and from the work site, … a logistical challenge with the potential for significant environmental impacts. It is not clear that Enbridge has adequately prepared for and addressed these challenges."); *id.* ¶ 20 (Enbridge's updated riprap project calls for "[t]he movement of heavy equipment up and down Slope 6, the steep and unstable slope (near the riverbank) leading to the Bad River from the west side of the meander neck." Slope 6 is "a very steep slope and may not

      be suitable for the movement of large equipment."); *id.* ¶ 20 (Enbridge's updated riprap project plans call for "the construction of a temporary bridge traversing the Bad River from Slope 6 to the meander neck.  It is not clear to WWE that the sloping, unstable ground (near the riverbank) at Slope 6 provides suitable conditions for Enbridge's proposed bridge.").

5. Enbridge's proposed remediation measures pose the threat of adverse environmental consequences to Reservation resources.

    **Evidence**:

    (a) WWE Report at 215 ("The proposals made by Enbridge fail to adequately address all the related impacts on Bad River water quality and ecosystem conditions.").

    (b) WWE Rebuttal Report at 96 ("The large-scale river construction activities Enbridge has proposed at the meander, including both constructing and removing revetments, even if carefully managed, would adversely impact water quality[.]").

    (c) Jones Dep. at 160:19–161:11 (discussing significant water quality impacts from the installation and removal of the proposed revetment projects).

    (d) Jones Dep. at 106:5-9 

    (e) WWE Report at ES-25–ES-26, 214 (discussing water quality concerns associated with HDD projects: "WWE's review of literature and Enbridge's past HDD incidents highlight that there is a real potential for water quality impacts related to this method. A review of publicly available reports, journal articles, and news articles indicates that it is not uncommon for drilling fluid losses to occur during HDD.").

    (f) Jones Dep. at 200:20–23

    (g) Weatherly Dep. at 153:7–10

    (h) Jones Decl. at ¶ 14 ("Upon review of Enbridge's 'Updated, Revised Bad River Meander Rip Rap Stabilization Project,' WWE conclude that the proposed project has several significant engineering feasibility concerns and also poses a risk of local

6

adverse environmental impacts to the Reservation."); *id.* ¶ 16 (Enbridge's revised proposal "could not be implemented without creating conditions that would likely result in additional localized environmental impacts"); *id.* ¶ 21(a) (Under Enbridge's updated riprap project plans, "[t]he disturbance on Slope 6 caused by the movement of equipment and construction of the temporary bridge will create conditions prone to erosion and discharge of sediment to the Bad River"); *id.* ¶ 21(c) (Grading and preparing the riverbank for riprap installation, as proposed in Enbridge's updated riprap project plans, "would result in sediment discharges to the river"); 21(e) (Enbridge's updated riprap project plans rely on a aqua dam within the river channel to create a dry workspace. This creates "conditions that are likely to contribute to channel scour outside of the dammed area." Additionally, "[t]he temporary dam could be overtopped during high flows with associated water quality effects."); *id.* ¶ 21(g) (Enbridge's updated riprap project proposal implicates significant challenges relating to "Enbridge's commitment to remove all riprap at the end of the revetment's useful life."); *id.* ¶ 21(h) (Because Enbridge's updated riprap project proposal increases the volume and length of the riprap revetment, "significant changes to channel hydraulics (including bed and bank erosion) would be anticipated.").

6. Enbridge's proposal to install a new section of pipeline under the Bad River using HDD would result in Bad River lands being permanently encumbered with pipeline infrastructure that Enbridge would abandon in place.

   **Evidence:**

   (a) Tinker Decl. ¶¶ 23–24 & Exs. L & M (Email exchange between Ali Hendi (Enbridge), April Severson (Barr Engineering) and J. Puckett (J.D. Hair & Associates) (Jun. 22, 2020), BARR0144406–BARR0144407, ENB00389479–ENB00389480)

   

   (b) Deposition of Ali Hendi ("Hendi Dep.") (Jun. 1, 2022) at 80:16–81:1

7

7. Enbridge's proposal to install a new section of pipeline under the Bad River using HDD would involve installation by Enbridge of infrastructure on parcel 430-S13, which is subject to Band ownership and over which the BIA easement expired on June 2, 2013.

   **Evidence:**

   (a) WWE Report at 17 (map showing property ownership of parcels surrounding meander).

   (b) Tinker Decl. ¶ 27 & Ex. P (screenshot of Ashland County, Wisconsin, Geographic Information Systems website showing parcel boundaries in relation to meander accessible at https://ashlandcowi.wgxtreme.com).

   (c) Tinker Decl. ¶ 25 & Ex. N (cover page of Enbridge's March 18, 2021 HDD Proposal to the Bad River Band and a map showing the location of the proposed HDD relative to the meander).

   (d) Band's Proposed Findings of Fact in Support of its Mot. for Partial Summ. J. (Dkt. 167) ¶ 47 (alleging ownership interests in twelve allotted parcels, including 430-S13 (BRB004295– 4304)); Enbridge's Response to Band's Proposed Findings of Fact in Support of its Mot. for Partial Summ. J. (Dkt. 208) ¶ 47 ("Undisputed as to the Band's ownership interests.").

   (e) Feb. 14, 2022 Declaration of Philip H. Tinker in Support of Band's Mot. for Partial Summ. J. (Dkt. 166) ¶ 16, Attach. O (1993 BIA easement for parcel 430-S13 (ENB00000749-751)).

8. Enbridge's proposal to install bank revetment measures at the meander would involve installation by Enbridge of materials on parcel 430-S13, which is subject to Band ownership and over which the easement expired on June 2, 2013.

   **Evidence:**

   (a) WWE Report at 17 (map showing property ownership of parcels surrounding meander).

   (b) Tinker Decl. ¶ 27 & Ex. P (screenshot of Ashland County, Wisconsin, Geographic Information Systems website showing parcel boundaries in relation to meander accessible at https://ashlandcowi.wgxtreme.com).

   (c) Tinker Decl. ¶ 26 & Ex. O (cover page of Enbridge's March 9, 2021 Tree Revetment Proposal to the Bad River Band and a map showing the location of the proposed revetment relative to the meander (BRB163327–BRB163900; BRB1633395).

   (d) Band's Proposed Findings of Fact in Support of its Mot. for Partial Summ. J. (Dkt. 167) ¶ 47 (alleging ownership interests in twelve allotted parcels, including 430-S13

       (BRB004295– 4304)); Enbridge's Response to Band's Proposed Findings of Fact in Support of its Mot. for Partial Summ. J. (Dkt. 208) ¶ 47 ("Undisputed as to the Band's ownership interests.").

    (e) Feb. 14, 2022 Declaration of Philip H. Tinker in Support of Band's Mot. for Partial Summ. J. (Dkt. 166) ¶ 16, Attach. O (1993 BIA easement for parcel 430-S13 (ENB00000749-751)).

9. Enbridge's proposal to install bank revetment measures at the meander would involve installation by Enbridge of materials on parcel 430-S13 beyond the 60-foot wide corridor covered by the expired 1993 easement.

   **Evidence:**

   (a) WWE Report at 17 (map showing property ownership of parcels surrounding meander).

   (b) Tinker Decl. ¶ 27 & Ex. P (screenshot of Ashland County, Wisconsin, Geographic Information Systems website showing parcel boundaries in relation to meander accessible at https://ashlandcowi.wgxtreme.com).

   (c) Tinker Decl. ¶ 26 & Ex. O (cover page of Enbridge's March 9, 2021 Tree Revetment Proposal to the Bad River Band and a map showing the location of the proposed revetment relative to the meander (BRB163327–BRB163900; BRB1633395).

   (d) Feb. 14, 2022 Declaration of Philip H. Tinker in Support of Band's Mot. for Partial Summ. J. (Dkt. 166) ¶ 16, Attach. O (1993 BIA easement for parcel 430-S13 (ENB00000749-751)).

10. The Band has engaged in a robust process with Enbridge over Enbridge's proposed remediation measures, including providing Enbridge with detailed explanations as to its denial of permits for various projects.

    **Evidence:**

    (a) Deposition of Mashkiiziibii Natural Resources Department Director Naomi Tillison ("Tillison Dep.") (May 9, 2022) at 152:20–153:15 [redacted]

(b) Tillison Dep. at 225:12–14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(c) Tinker Decl. ¶ 12 & Ex. A (Final decision document providing the basis of the Band's decision to deny Enbridge's Overland Channel Turf Reinforcement Matting project proposal (Jun. 15, 2020), BRB018777–BRB018797) (explaining that Enbridge's project was ineligible for permitting under tribal laws, including the tribal Wetlands and Watercourse Protection Ordinance and Water Quality Standards, because the project did not adequately address the risks posed by Enbridge's operation of Line 5 at the Meander site and would unnecessarily degrade tribal waters and natural resources).

(d) Tinker Decl. ¶ 13 & Ex. B (Final decision document providing the basis of the Band's decision to deny Enbridge's Overland Channel Armoring (rip rap) project proposal (Oct. 26, 2021), BRB202493–BRB202515) (same).

(e) Tinker Decl. ¶ 14 & Ex. C (Final decision document providing the basis of the Band's decision to deny Enbridge's Bad River Meander Tree Revetment project proposal (Jun. 15, 2020), BRB200681–BRB200702) (same).

(f) Tinker Decl. ¶ 15 & Ex. D (Final decision document providing the basis of the Band's decision to deny Enbridge's Meander Bank Rip Rap stabilization project proposal (Feb. 16, 2021), BRB133347–BRB133380) (same).

(g) Tinker Decl. ¶ 16 & Ex. E (Final decision document providing the basis of the Band's decision to deny Enbridge's Geotechnical Boring project proposal (Jun. 15, 2020), BRB018736–BRB018754) (same).

(h) Tinker Decl. ¶ 17 & Ex. F (Final decision document providing the basis of the Band's decision to deny Enbridge's Horizontal Directoinal Drilling project proposal (Dec. 22, 2020), BRB056318–BRB056346) (same).

Dated: June 10, 2022                                          Respectfully submitted,

/s/ Riyaz A. Kanji

Erick Arnold                                                  Riyaz A. Kanji
BAD RIVER BAND OF THE LAKE SUPERIOR                           David A. Giampetroni
TRIBE OF CHIPPEWA INDIANS OF THE BAD                          KANJI & KATZEN, P.L.L.C
RIVER RESERVATION                                             303 Detroit Street, Suite 400
72682 Maple Street                                            Ann Arbor, MI 48104
Odanah, Wisconsin 54861                                       rkanji@kanjikatzen.com
attorney@badriver-nsn.gov                                     dgiampetroni@kanjikatzen.com
Ph: (715) 682-7107                                            Ph: (734) 769-5400

Bruce Wallace                                                 Cory J. Albright
HOOPER HATHAWAY PRICE BEUCHE                                  Jane G. Steadman
& WALLACE                                                     Philip H. Tinker
126 S. Main Street                                            KANJI & KATZEN, P.L.L.C
Ann Arbor, MI 48104                                           811 1st Avenue, Suite 630
bwallace@hooperhathaway.com                                   Seattle, WA 98104
Ph: (734) 662-4426                                            calbright@kanjikatzen.com
                                                              jsteadman@kanjikatzen.com
Oday Salim                                                    ptinker@kanjikatzen.com
NATIONAL WILDLIFE FEDERATION                                  Ph: (206) 344-8100
213 West Liberty Street, Suite 200
Ann Arbor, MI 48104
salimo@nwf.org
Ph: (586) 255-8857

*Counsel for the Bad River Band of the Lake Superior
Tribe of Chippewa Indians and Naomi Tillison, Director
of the Mashkiiziibii Natural Resources Department of
the Bad River Band, in her official capacity*

## CERTIFICATE OF SERVICE

I certify that on June 10, 2022, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on all counsel of record.

/s/ Riyaz A. Kanji
Riyaz A. Kanji
