IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION,

    *Plaintiff*,

v.

ENBRIDGE ENERGY COMPANY, INC.,
and ENBRIDGE ENERGY, L.P.,

    *Defendants*.

ENBRIDGE ENERGY COMPANY, INC.,
and ENBRIDGE ENERGY, L.P.,

    *Counter-Plaintiffs*,

v.

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION and NAOMI TILLISON,
in her official capacity,

    *Counter-Defendants*.

Case No. 3:19-cv-00602-wmc

Judge William M. Conley
Magistrate Judge Stephen L. Crocker

**BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS' RESPONSE TO ENBRIDGE'S PROPOSED FINDINGS OF FACT IN OPPOSITION TO ENBRIDGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation (the "Band") submits the following Response to Enbridge's Proposed Findings of Fact in opposition to Enbridge's Motion for Partial Summary Judgment as Follows:

1. Defendant Enbridge Energy, Limited Partnership owns and operates Line 5. *See* Dkt. 123 (Third Amended Complaint) at ¶ 5; Dkt. 146 (Second Amended Answer) at pps. 1 n.1, 4, 5.

    **Response**: **Undisputed.**

2. Built in 1953, Line 5 originates in Superior, Wisconsin, crosses through northern Wisconsin and then Michigan, before ending in Sarnia, Ontario, Canada. *See* Dkt. 123 (Third Amended Complaint) at ¶¶ 5, 55; Dkt. 146 (Second Amended Answer) at pps. 4–5, 14.

    **Response**: **Undisputed.**

3. When crossing the northern part of Wisconsin, Line 5 traverses through part of the Reservation of the Bad River Band of the Lake Superior Tribe of Chippewa Indians ("Band"). *See* Dkt. 123 (Third Amended Complaint) at ¶ 7; Dkt. 146 (Second Amended Answer) at p. 5.

    **Response**: **Undisputed**, with the qualification that the Line traverses the entire width of the Bad River Reservation.

4. For more than 65 years, Line 5 has transported crude oil and natural gas liquids through Wisconsin and Michigan to Ontario, Canada as well as to points in the United States. *See* Dkt. 123 (Third Amended Complaint) at ¶¶ 6, 55, 56; Dkt. 146 (Second Amended Answer) at pps. 5, 14; Declaration of Mark Maxwell at ¶ 4.

    **Response**: **Partially disputed.** Enbridge has not established that Line 5 has transported natural gas liquids as well as crude oil for the entirety of its existence. Nor has Enbridge established that Line 5 has conveyed either crude oil or natural gas liquids to points in the United States for the entirety of its existence.

5. On January 4, 2017, the Bad River Tribal Council enacted a Resolution that expressed concerns regarding an oil release on the Reservation and directed Band staff to take steps to effectuate removal of the pipeline from the Reservation. *See* Dkt. 170-33 (2017 Resolution); Dkt. 171 (Band's Proposed Finding of Fact) at p. 8 ¶ 55; Dkt. 208 (Enbridge's Response to Plaintiffs' Proposed Findings of Fact) at p. 19 ¶ 55.

    **Response**: **Undisputed**, that the Tribal Council issued the Resolution (Dkt. 170-33). The Resolution speaks for itself.

6. On October 4, 2021, the Government of Canada invoked Article IX of the 1977 Agreement between the Government of Canada and the Government of the United States of America Concerning Transit Pipelines. Canada has now initiated the negotiation process pursuant to Article IX(1)—the first stage of the Treaty dispute resolution process. *See* Government of Canada Brief of *Amicus Curiae* Brief at p. 1–2, filed in *Enbridge Energy Ltd. v. Whitmer*, No. 1:20-cv-01131-JTN-RSK, ECF No. 70, PageID.482–83 (W.D. Mich. Apr. 5, 2022).

    **Response**: **Undisputed.**

7. When crossing the Bad River Reservation, Line 5 runs near a meander in the Bad River. *See* Dkt. 123 (Third Amended Complaint) at ¶ 92; Dkt. 146 (Second Amended Answer) at pps. 25–26. Line 5 currently is buried in this area and is not exposed. *See* Declaration of Mark Maxwell at ¶ 7.

    **Response**: **Partially disputed.** The Band does not dispute the first sentence. The second sentence is unsubstantiated and violates Federal Rule of Civil Procedure 56(c). The only support cited is one conclusory sentence in a declaration that does not cite to any documents. The Band cannot fully respond because it is not clear what it is based on. As far as the Band is aware, Line 5 was not exposed at the meander as of a field visit on November 15, 2021.

    The depth of cover of Line 5 in the meander area, however, was measured in 2018 and 2020 as only ranging from two to ten feet. Expert Report of Wright Water Engineers, Inc., *Engineering Evaluation of the Bad River Meander Adjacent to Enbridge Line 5 and Related Water Resources Issues* ("WWE Report")[1] (Jan. 31, 2022) at 15. Depth of cover can also change rapidly. WWE Report at 236 ("Significant erosion and loss of soil cover over Line 5 occurred in a relatively short time period. In mid-June 2018, Enbridge contractors performed a depth of cover survey for Line 5 at Slope 18 and measured 6.3 feet of soil cover over the pipeline. WWE observed Slope 18 in May 2019 and did not observe any pipeline exposure. By August 21, 2019, all of this cover, plus additional soil below the pipeline, eroded away to expose Line 5. The potential for rapid erosion exists at various locations on the Reservation.").

8. On at least nine occasions, Enbridge has submitted applications for a water quality certificate (WQC) to the Band to remediate any potential future risk to Line 5 at the meander by either addressing the erosion or burying this portion of the pipeline deeper, approximately 50 feet below the Bad River to eliminate the alleged threat of exposure.

---

[1] Contemporaneously with the filing of this Proposed Findings of Fact in Opposition to Enbridge's Motion for Partial Summary Judgment, the Band will file declarations from authors of the WWE Report—Jonathan E. Jones, Ian B. Paton, and Edwin E. Herricks—declaring that they stand by the contents of the WWE Report and that it contains opinions that they will express in this case, as well as the bases and reasons for those opinions.

*See* Declaration of Julie Molina at ¶¶ 4–15. Each time, the Band has denied issuance of a WQC and refused to discuss the proposed project or the denial. *Id.* at ¶¶ 7, 9, 11–15.

**Response**: **Disputed.** Each of the Band's decisions relating to Enbridge's meander remediation project proposals have been accompanied by a final decision document providing detailed explanations of the Band's decision, including why the proposed projects would not adequately address the risks posed by Enbridge's operation of Line 5 at the meander site and would unnecessarily degrade tribal waters and natural resources. Deposition of Mashkiiziibii Natural Resources Department Director Naomi Tillison ("Tillison Dep.")[2] (May 9, 2022) at 152:20–153:1–15 [REDACTED] Tillison Dep. at 225:12–15 [REDACTED]; Declaration of Philip Tinker ("Tinker Decl.") ¶ 12 & Ex. A (Final decision document providing the basis of the Band's decision to deny Enbridge's Overland Channel Turf Reinforcement Matting project proposal (Jun. 15, 2020), BRB018777–BRB018797) (explaining that Enbridge's project was ineligible for permitting under tribal laws, including the tribal Wetlands and Watercourse Protection Ordinance and Water Quality Standards, because of the project did not adequately address the risks posed by Enbridge's operation of Line 5 at the Meander site and would unnecessarily degrade tribal waters and natural resources); Tinker Decl. ¶ 13 & Ex. B (Final decision document providing the basis of the Band's decision to deny Enbridge's Overland Channel Armoring (rip rap) project proposal (Oct. 26, 2021), BRB202493–BRB202515) (same); Tinker Decl. ¶ 14 & Ex. C (Final decision document providing the basis of the Band's decision to deny Enbridge's Bad River Meander Tree Revetment project proposal (Jun. 15, 2020), BRB200681–BRB200702) (same); Tinker Decl. ¶ 15 & Ex. D (Final decision document providing the basis of the Band's decision to deny Enbridge's Meander Bank Rip Rap stabilization project proposal (Feb. 16, 2021), BRB133347–BRB133380) (same); Tinker Decl. ¶ 16 & Ex. E (Final decision document providing the basis of the Band's decision to deny Enbridge's Geotechnical Boring project proposal (Jun. 15, 2020), BRB018736–BRB018754) (same); Tinker Decl. ¶ 17 &

---

[2] Pursuant to the ¶ 16(d) of the Stipulated Protective Order in place in this case, parties have up to 30 days from receipt of a deposition transcript to designate deposition testimony as confidential. Dkt. 226 and 229. The Band therefore treats all deposition testimony as presumptively confidential and subject to redaction during the pendency of this 30-day period. Hence, the version of this document filed on the public docket contains redactions over cited deposition testimony from within the 30-day period.

3

      Ex. F (Final decision document providing the basis of the Band's decision to deny Enbridge's Horizontal Directoinal Drilling project proposal (Dec. 22, 2020), BRB056318–BRB056346) (same).

9.     Over the 65 years that Line 5 has been operating, there has never been a release on the Reservation. *See* Declaration of Mark Maxwell at ¶ 4.

    **Response**: **Disputed.** This statement is unsubstantiated and violates Federal Rule of Civil Procedure 56(c). The only support cited for this statement is one conclusory sentance in a declaration that does not cite to any documents. The Band cannot fully respond because it is not clear what it is based on.

    There have been numerous releases on the Bad River Reservation associated with Enbridge's operations, even just in recent years. *See, e.g.*, Tinker Decl. ¶ 18 & Ex. G (Email from April Holdren, Enbridge Manager of Tribal Engagement, to Naomi Tillison (Feb. 22, 2018), ENB00202680) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; Tinker Decl. ¶ 19 & Ex. H (Email from Julie A. Kloss Molina, Enbridge Senior Environmental Permitting Specialist, to Naomi Tillison (Feb. 26, 2020), ENB00396936–ENB00396937) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; Tinker Decl. ¶ 20 & Ex. I (Enbridge Integrity Digs in Progress Inspection Site Evaluation Form (Feb. 10, 2020), BARR0016947–BARR0016955) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; Tinker Decl. ¶ 21 & Ex. J (Enbridge In Progress Inspection Site Evaluation Form (Nov. 5, 2018), BRB005736–BRB005740) (observing pooled water to have a sheen and collecting soil samples to determine extent of impact from helicopter crash releases).

    To the extent that Enbridge claims that prior spill history on the Reservation suggests that there will be no risk of any spills going forward, that suggestion is contradicted by its own expert, who, even using a flawed metholodgy that does not account for site-specific factors such as erosion at the meander that would cause a spill, has stated in her report and testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Deposition of Dagmar Schmidt Etkin ("Etkin Dep.") (May 12, 2022) at 178:25–179:23.

    Further, the continued migration of the Bad River towards the Line 5 pipeline will likely expose the pipeline at the Bad River meander within the next three to five years, but pipeline exposure could occur in significantly less time depending on Bad River flow and other conditions. WWE Report at ES-12 ("Based on the analysis described herein, WWE projects that the Enbridge Line 5 pipeline will likely become exposed within the next five years, although pipeline exposure could occur in significantly less time depending on the flow conditions in the Bad River, and other factors described herein."); Deposition of Jonathan Jones ("Jones Dep.") (May 12, 2022) at 72:24–73:5 (same); Expert Rebuttal Report of Wright Water Engineers, Inc., *Rebuttal to Selected Enbridge Expert Reports*

*Regarding Line 5 and the Bad River Reservation* ("WWE Rebuttal Report")[3] (Apr. 8, 2022) at 2 (same); WWE Report at ES-1 ("Over the past 60 years, the Bad River has migrated nearly 300 feet toward Line 5 . . . reducing what once was a 310-foot separation between the pipeline and the river to a 26.5-foot separation distance."); WWE Report at ES-12 ("The 26.5-foot remaining separation distance measured in September 2020 and May 2021 between the Bad River channel bank and the Line 5 pipeline falls within the range of bank erosion that could occur during a single flood event."); WWE Report at ES-12 ("Figure ES-4 clearly shows that in many locations where Line 5 is close to the riverbank, the bank eroded by 30 feet to 50 feet in just three years (from 2016 to 2019)."); *Expert Report of Hamish Weatherly* ("Weatherly Report") (Jan. 31, 2022) at 30 ("In my opinion, the pipeline will eventually become exposed due to ongoing bank erosion without remediation and bank protection works. When exposure occurs is a function of the flood magnitudes that occur in the coming years but the estimated average timeline of pipeline exposure from bank erosion is approximately 3–5 years from the date of this report. While the likelihood of bank erosion impacting the Line 5 pipeline at the Meander before March 2023 is judged to be low (i.e., <1% probability), it is not zero."); *Expert Opinion Reply of Hamish Weatherly* ("Weatherly Rebuttal Report") (Apr. 8, 2022) at 2 (same); Deposition of Hamish Weatherly ("Weatherly Dep.") (May 26, 2022) at 55:6–8 [REDACTED] Weatherly Dep. at 60:13–22 [REDACTED] Tinker Decl. ¶ 22 & Ex. K (Email from Mark Maxwell to Mike Hill, Lara Pal, and Ryan Spoon (all Enbridge employees) excerpting and quoting from a list of "critical projects" compiled by Adam Pecush, Enbridge Manager of Asset Integrity (Mar. 24, 2020), ENB00215704–ENB215706 at ENB00215705) [REDACTED]

Once Line 5 is exposed at the meander neck, the length of exposed pipeline could expand rapidly and unpredictably, resulting in pipeline failure and the release of oil in as little as one storm event. WWE Report at ES-13 ("Once a portion of the pipeline becomes exposed, the length of exposure will continue to expand, unpredictably and potentially quite rapidly. A substantial length of pipeline could become exposed in a single high flow event, or over the course of several high flow events within a short period of time."); WWE Rebuttal Report at 88 ("If the exposure of Line 5 leads to a section of pipeline suspended in the air with spans exceeding 62 feet (an outcome that could develop rapidly during a large runoff event in the Bad River), failure will be likely, with potential for

---

[3] Contemporaneously with the filing of this Proposed Findings of Fact in Opposition to Enbridge's Motion for Partial Summary Judgment, the Band will file declarations from the authors of the WWE Rebuttal Report—Jonathan E. Jones and Ian B. Paton—declaring that they stand by the contents of the WWE Rebuttal Report and that it contains opinions they will express in this case, as well as the bases and reasons for those opinions.

5

severe environmental impacts caused by the oil released from the pipeline"); Weatherly Dep. at 81:1–4 [REDACTED]

10. There is no impending or imminent risk that Line 5 will rupture or release in the Bad River or on the Reservation. *See* Declaraton of Mark Maxwell at ¶ 6. At present, Line 5 remains buried near the Bad River and is not exposed. *Id.* at ¶ 7.

**Response**: **Disputed.**

This statement is unsubstantiated and violates Federal Rule of Civil Procedure 56(c). The only support cited for each sentence in this statement is one conclusory sentence in a declaration that does not cite to any documents. The Band cannot fully respond because it is not clear what it is based on.

Enbridge's own expert, even using a flawed metholodgy that does not account for site-specific factors such as erosion at the meander that would cause a spill, has stated in her report and testified that [REDACTED]

[REDACTED] *See* Etkin Dep. at 178:25–179:23.

Further, the continued migration of the Bad River towards the Line 5 pipeline will likely expose the pipeline at the Bad River meander within the next three to five years, but pipeline exposure could occur in significantly less time depending on Bad River flow and other conditions. WWE Report at ES-12 ("Based on the analysis described herein, WWE projects that the Enbridge Line 5 pipeline will likely become exposed within the next five years, although pipeline exposure could occur in significantly less time depending on the flow conditions in the Bad River, and other factors described herein."); Jones Dep. at 72:24–73:5 (same); WWE Rebuttal Report at 2 (same); WWE Report at ES-1 ("Over the past 60 years, the Bad River has migrated nearly 300 feet toward Line 5 . . . reducing what once was a 310-foot separation between the pipeline and the river to a 26.5-foot separation distance."); WWE Report at ES-12 ("The 26.5-foot remaining separation distance measured in September 2020 and May 2021 between the Bad River channel bank and the Line 5 pipeline falls within the range of bank erosion that could occur during a single flood event."); WWE Report at ES-12 ("Figure ES-4 clearly shows that in many locations where Line 5 is close to the riverbank, the bank eroded by 30 feet to 50 feet in just three years (from 2016 to 2019)."); Weatherly Report at 30 ("In my opinion, the pipeline will eventually become exposed due to ongoing bank erosion without remediation and bank protection works. When exposure occurs is a function of the flood magnitudes that occur in the coming years but the estimated average timeline of pipeline exposure from bank erosion is approximately 3–5 years from the date of this report. While the likelihood of bank erosion impacting the Line 5 pipeline at the Meander before March 2023 is judged to be low (i.e., <1% probability), it is not zero."); Weatherly Rebuttal Report at 2 (same); Weatherly Dep. at 55:6–8 [REDACTED]

[REDACTED]; Weatherly Dep. at 60:13–22 [REDACTED]; Tinker Decl. ¶ 20 & Ex. K at ENB00215705 [REDACTED]

Once Line 5 is exposed at the meander neck, the length of exposed pipeline could expand rapidly and unpredictably, resulting in pipeline failure and the release of oil in as little as one storm event. WWE Report at ES-13 ("Once a portion of the pipeline becomes exposed, the length of exposure will continue to expand, unpredictably and potentially quite rapidly. A substantial length of pipeline could become exposed in a single high flow event, or over the course of several high flow events within a short period of time."); WWE Rebuttal Report at 88 ("If the exposure of Line 5 leads to a section of pipeline suspended in the air with spans exceeding 62 feet (an outcome that could develop rapidly during a large runoff event in the Bad River), failure will be likely, with potential for severe environmental impacts caused by the oil released from the pipeline"); Weatherly Dep. at 81:1–4 [REDACTED]

7

| | |
|---|---|
| Dated: June 10, 2022 | Respectfully submitted, |
| | /s/ Riyaz A. Kanji |
| Erick Arnold | Riyaz A. Kanji |
| BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION | David A. Giampetroni |
| | KANJI & KATZEN, P.L.L.C |
| | 303 Detroit Street, Suite 400 |
| 72682 Maple Street | Ann Arbor, MI 48104 |
| Odanah, Wisconsin 54861 | rkanji@kanjikatzen.com |
| attorney@badriver-nsn.gov | dgiampetroni@kanjikatzen.com |
| Ph: (715) 682-7107 | Ph: (734) 769-5400 |
| | |
| Bruce Wallace | Cory J. Albright |
| HOOPER HATHAWAY PRICE BEUCHE & WALLACE | Jane G. Steadman |
| | Philip H. Tinker |
| 126 S. Main Street | KANJI & KATZEN, P.L.L.C |
| Ann Arbor, MI 48104 | 811 1st Avenue, Suite 630 |
| bwallace@hooperhathaway.com | Seattle, WA 98104 |
| Ph: (734) 662-4426 | calbright@kanjikatzen.com |
| | jsteadman@kanjikatzen.com |
| Oday Salim | ptinker@kanjikatzen.com |
| NATIONAL WILDLIFE FEDERATION | Ph: (206) 344-8100 |
| 213 West Liberty Street, Suite 200 | |
| Ann Arbor, MI 48104 | |
| salimo@nwf.org | |
| Ph: (586) 255-8857 | |

*Counsel for the Bad River Band of the Lake Superior Tribe of Chippewa Indians and Naomi Tillison, Director of the Mashkiiziibii Natural Resources Department of the Bad River Band, in her official capacity*

8

## CERTIFICATE OF SERVICE

I certify that on June 10, 2022, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on all counsel of record.

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji

9