IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY, L.P.,<br><br>*Defendants*.<br><br>ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY, L.P.,<br><br>*Counter-Plaintiffs*,<br><br>v.<br><br>BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION and NAOMI TILLISON, in her official capacity,<br><br>*Counter-Defendants*. | Case No. 3:19-cv-00602-wmc<br><br>Judge William M. Conley<br>Magistrate Judge Stephen L. Crocker |

**PLAINTIFF BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS' PROPOSED FORM OF SPECIAL VERDICT**

Pursuant to the Court's Opinion and Order of September 16, 2022, at 4 (Dkt. 369), Plaintiff Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation ("Band") respectfully requests that the Court use the following proposed special verdict form.

# SPECIAL VERDICT

### SPECIAL VERDICT PART I: MEASURE OF PROFITS-BASED RELIEF FOR PAST UNJUST ENRICHMENT AND CONSCIOUS TRESPASS

1. What is the proper amount of profits-based relief for Enbridge's unjust enrichment and conscious trespass to date?

    $_____

### SPECIAL VERDICT PART II: MEASURE OF PROFITS-BASED RELIEF FOR ANY FUTURE PIPELINE OPERATION

1. What is the proper amount of profits-based relief for any future period of time during which Enbridge continues to operate Line 5 on the Reservation?

    $_____

### SPECIAL VERDICT PART III: PUBLIC NUISANCE LIABILITY

1. Would a rupture of Line 5 in the vicinity of the Bad River Meander constitute an unreasonable interference with the public rights, health, safety or welfare of the Band?

    _____ Yes          _____ No

2. Given the probability and magnitude of the potential harm, is the risk of a rupture of Line 5 at the Bad River Meander more than a reasonable person would incur, such that equitable relief is necessary?

    _____ Yes          _____ No

3. Is Enbridge's continued operation of the pipeline at the Bad River Meander the cause of any "unreasonable interference with the public rights, health, safety or welfare of the Band" arising out of the operation of the pipeline at that location?

    _____ Yes          _____ No

4. Would Enbridge's proposed remediation projects at the Meander require entry upon and alteration to Reservation lands and waters with respect to which it has no valid easement or other property rights?

   _____ Yes         _____ No

5. Can Enbridge defeat nuisance liability by proposing to engage in remediation projects at the Meander that would require entry upon and alteration to Reservation lands and waters with respect to which it has no valid easement or other property rights?

   _____ Yes         _____ No

6. Has Enbridge obtained for its proposed remediation projects at the Meander all water quality certifications, permits, and other environmental approvals from the Band, the U.S. Army Corps of Engineers, and other entities as required under federal and Band law?

   _____ Yes         _____ No

7. Can Enbridge defeat nuisance liability by proposing to engage in remediation projects for which it has not obtained water quality certifications, permits, and other environmental approvals from the Band, the U.S. Army Corps of Engineers, and other entities as required under federal and Band law?

   _____ Yes         _____ No

8. Do Enbridge's proposed remediation projects at the Meander pose a threat of adverse environmental consequences to Reservation resources?

   _____ Yes         _____ No

9. Do Enbridge's proposed remediation projects at the Meander have a non-trivial risk of project failure?

   _____ Yes         _____ No

10. Can Enbridge defeat nuisance liability by proposing to engage in remediation projects that pose a threat of adverse environmental consequences to Reservation resources and/or that have a non-trivial risk of project failure?

    _____ Yes         _____ No

**SPECIAL VERDICT PART IV: ENTITLEMENT TO INJUNCTIVE RELIEF FOR PUBLIC NUISANCE**

1. Is an injunction necessary to prevent irreparable harm to the Band?

   _____ Yes          _____ No

2. Are the remedies available at law adequate to compensate for such harm?

   _____ Yes          _____ No

3. Does the balance of hardships from granting or denying injunctive relief weigh in favor of the Band?

   _____ Yes          _____ No

4. Would an injunction serve the public interest?

   _____ Yes          _____ No

5. Do the above four factors weigh in favor of an injunction?

   _____ Yes          _____ No


**SPECIAL VERDICT PART V: FORM OF INJUNCTIVE RELIEF**

1. Is Enbridge entitled to an injunction allowing continued operation of Line 5 on the Reservation for an indefinite period of time absent compliance with the tribal and federal consent requirements set forth in the Non-Intercourse Act, 25 U.S.C. § 177, the 1948 Right of Way Act, 25 U.S.C. §§ 323–28, and the 1854 Treaty with the Chippewa, 10 Stat. 1109?

   _____ Yes          _____ No

2. Given the probability and magnitude of the potential harm from a rupture of Line 5 on the Reservation, would the public interest be served by an injunction that allows for the continued operation of Line 5 on the Reservation indefinitely?

   _____ Yes          _____ No

3. Should the Court issue an injunction allowing for continued operation of Line 5 on the Reservation for a longer time period than what is necessary to allow Enbridge and other market actors to develop alternatives to Line 5 sufficient to protect the public interest?

   _____ Yes          _____ No

4. Does the public interest require permitting Enbridge to remain on the Reservation for an indefinite period of five years or more?

   _____ Yes          _____ No

5. For what time period does the public interest require permitting Enbridge to continue to operate Line 5 on the Reservation?

   _____

Dated: September 21, 2022

Respectfully submitted,

/s/ Riyaz A. Kanji

| | |
|---|---|
| Erick Arnold<br>BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION<br>72682 Maple Street<br>Odanah, Wisconsin 54861<br>attorney@badriver-nsn.gov<br>(715) 682-7107 | Riyaz A. Kanji<br>David A. Giampetroni<br>Lucy W. Braun<br>KANJI & KATZEN, P.L.L.C.<br>303 Detroit Street, Suite 400<br>Ann Arbor, MI 48104<br>rkanji@kanjikatzen.com<br>dgiampetroni@kanjikatzen.com<br>lbraun@kanjikatzen.com<br>Ph: (734) 769-5400 |
| Bruce Wallace<br>HOOPER HATHAWAY PRICE BEUCHE & WALLACE<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>bwallace@hooperhathaway.com<br>(734) 662-4426 | Jane G. Steadman<br>Philip H. Tinker<br>Claire R. Newman<br>KANJI & KATZEN, P.L.L.C.<br>811 1st Avenue, Suite 630<br>Seattle, WA 98104<br>jsteadman@kanjikatzen.com<br>ptinker@kanjikatzen.com<br>cnewman@kanjikatzen.com<br>Ph: (206) 344-8100 |
| Oday Salim<br>NATIONAL WILDLIFE FEDERATION<br>213 West Liberty Street, Suite 200<br>Ann Arbor, MI 48104<br>salimo@nwf.org<br>Ph: (586) 255-8857 | |

*Counsel for the Bad River Band of the Lake Superior Tribe of Chippewa Indians and Naomi Tillison, Director of the Mashkiiziibii Natural Resources Department of the Bad River Band, in her official capacity*