IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION<br><br>     *Plaintiff*,<br>v.<br><br>ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY, L.P.<br><br>     *Defendants*.<br><hr>ENBRIDGE ENERGY, L.P.<br><br>     *Counter-Plaintiff,*<br>v.<br><br>BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION and NAOMI TILLISON, in her official capacity<br><br>     *Counter-Defendants*. | Case No. 3:19-cv-00602<br><br><br><br><br><br><br><br>Judge William M. Conley<br>Magistrate Judge Stephen Crocker |

## DEFENDANTS' REVISED WITNESS LIST

  Pursuant to the Court's Order of September 23, 2022 (Dkt. No. 430), Defendants Enbridge Energy, Limited Partnership and Enbridge Energy Company, Inc. (collectively "Enbridge") hereby submit this updated, revised witness list with accompanying explanation.

I.      **Enbridge's Proposals for the Scope and Timing of Trial**

Enbridge believes the Court has made clear that it wishes to receive evidence at trial about three general topics: (1) *Nuisance*: does Line 5 constitute a nuisance at the Meander or Slope 18 and, regardless of whether a nuisance exists or not, what work should occur to ensure the continued safe operation of Line 5 on the Reservation until the reroute is operational; (2) *Re-Route*: whether 5 years is sufficient time for the re-route to become operational or whether there are other steps the Court could order the parties before it to undertake to replace Line 5 prior to the completion of the re-route; and (3) *Profits*: what profit related damages should be awarded to the Band. *See* Dkt. No. 360 at 43.[1]

The Court has ordered the parties to attempt to narrow the issues to be tried. In order to do so, as it explained in its trial brief, Enbridge has made several proposals—all of which the Band recently rejected—that would result in significantly reducing the number of witnesses, other evidence and overall trial time. Enbridge's proposals include the following:

- The liability portions of the case (public nuisance and Enbridge's Counterclaims 4 and 5) could be significantly streamlined if the Band voluntarily dismisses its nuisance claim. This would eliminate the need for testimony on oil spills, oil spill modeling, and the effects of an oil spill. It would also eliminate, more generally, evidence concerning whether a nuisance exists. While the Band cannot prove that there is a public nuisance or an imminent threat at the Meander or elsewhere on the Reservation, regardless, this claim is moot, as the relief the Court indicated that it is inclined to grant if a nuisance were to be found—namely implementing "an effective mitigation plan"—is the type of equitable relief Enbridge itself desires under Counts 4 and 5 of its Counterclaim. Since Enbridge desires to take corrective action at the Meander and needs regular access to Line 5 to conduct maintenance while it continues to operate on the Reservation, Enbridge suggests that the nuisance claim need not be heard at trial. Instead, the Court and the parties should focus the trial on hearing evidence concerning access to the pipeline and the prudent protective actions and maintenance to be taken at the Meander and any other areas that require attention. The Court should decide what work may proceed now (e.g., at the Meander where all of Enbridge's work proposals have been rejected and the Band has proposed none of its own) and how future disputes about

---

[1] Enbridge would appreciate clarification from the Court on the scope of the trial as the Band takes a different position and would like to try other issues as well. The narrowed witnesses list provided herein is based on the assumption that the scope of the trial is limited to the issues referenced in this paragraph.

inspections and work, if any, are resolved so it can proceed without years of undue delay, such as has occurred at the Meander to date.

- Second, the trial can be materially shortened by foregoing the Band's proffered testimony that third-party alternatives to transport Line 5 products are available before the Line 5 reroute is complete. Unless the Court desires to revisit that issue, such testimony, which Enbridge estimates would take the vast majority of the 1.5 to 2.5 weeks for the injunctive remedy phase, is not needed. Moreover, there are no alternatives to the re-route of Line 5 operated by Enbridge (as opposed to third parties not before the Court) which could replace it in full. The only such alternatives the Band has mentioned involve Enbridge pipeline Lines 78A and 9 which would need substantial upgrades and approvals which have not been comprehensively studied, defined or permitted and which, in any case, do not now, and cannot in the future, transport natural gas liquids, or NGLs, which Line 5 currently carries. Thus, it must be conceded that no alternatives could even potentially replace all of the energy products currently delivered by Line 5 and would leave the Line 5 service area without viable future supplies of propane and other products made from NGLs.

- Third, if the Court decides how profits are to be determined under the law (for example, whether the Band is entitled to the pro-rata share of those profits that are attributable to the portion of the pipeline determined to be in trespass or whether the Band is entitled to all of Line 5's profits for all 645 miles), trial testimony on these issues can be materially reduced, if not completely eliminated, as the parties' main disputes are not factual but legal in nature.

Assuming Enbridge's proposals above are adopted by the Court, Enbridge can shorten its witness list as follows:

## II. **Enbridge Will Call Witness List If These Proposals Are Accepted**[2]

### A. **Hearing Regarding Protecting the Meander from Future Potential Erosion:**

Will Call

1. Julie Kloss Molina
2. Tom McDonald (expert)
3. Hamish Weatherly (expert)
4. Trent Wetmore

---

[2] The witnesses removed from Enbridge's will call list would be moved to Enbridge's may call list in the unlikely event they are necessary.

      5. Deborah Tetteh-Wayoe

      6. Steven Johnson

**B.   Hearing Regarding Equitable Claims and Remedies:**

<u>Will Call</u>

      1. Dr. Laura Olive (expert)

      2. Ed Steigerwaldt (expert)

      3. Marlon Samuel

      4. Julie Kloss Molina

      5. Steven Johnson

**III.   Enbridge Will Call Witness List If These Proposals Are Not Accepted:**

**A.   Explanation:**

Even if none of the above proposals are accepted, based on future rulings from the Court, Enbridge will endeavor to streamline its presentation and witnesses to reduce the number of will-call witnesses from 28 to 14 for the nuisance phase and Counts 4 and 5 of Enbridge's counterclaim phase of trial and from more than 19 to 14 for the remedies phase of trial.[3]  If certain, but not all, of the proposals are accepted, the below witness lists can be further reduced.  Additionally, if certain of Enbridge's motions *in limine* or Daubert motions are granted, the below witness list will be further reduced to eliminate certain rebuttal witnesses.  Please see the below witness descriptions for brief explanations as to how the following witnesses are critical to defending against the Band's claims, to proving Enbridge's Counts 4 and 5 of Enbridge's counterclaim, or to testify concerning equitable remedies.

---

[3]    Enbridge will try to accomplish this by eliminating certain witnesses altogether and will designate deposition testimony from an additional four Band witnesses (Arik, Schachameyer, Leoso, and Salawater) in lieu of calling them as witnesses.

B. **Public nuisance liability component of trial:**

1. Mark Maxwell (expert) – Line 5 is safe inside the Reservation from a pipeline integrity standpoint, including at the Meander.

2. Leonard LeBlanc (expert) – Line 5 is safe inside the Reservation from a pipeline reliability standpoint, including at the Meander.

3. DeWitt Burdeaux (expert) – Enbridge's Line 5 meets or exceeds all applicable PHMSA standards, including at the Meander.

4. Julie Kloss Molina – Enbridge's proposed remediation projects at Slope 18 and the Meander, all of which the Band has unreasonably rejected; Band unreasonably interfering with Enbridge access to Line 5 (such as installing additional cameras at the Meander); Band rejection of safety-related work on Line 5 inside the Reservation; permitting requirements for and basic structure of the re-route; and Band opposition to, and delay of, the re-route.

5. Steven Johnson – Enbridge's ownership of parcels owned at the Meander and access to Line 5 at the Meander.

6. Peter Barlow (expert) – Slope 18 does not constitute a nuisance and horizontal directional drilling at the Meander would be safe and successful if implemented.

7. Tom McDonald (expert) – Enbridge's pending riprap proposals are well-designed, industry standard, and reflect Band input and Band litigation expert input and would be safe and successful if implemented.

8. Hamish Weatherly (expert) – Line 5 is not a nuisance at the Meander, there is currently less than a 1% chance of pipeline exposure (which exposure is not itself a danger), Enbridge's projects are likely to succeed and have less than a 1% chance of failure.

9. Deborah Tetteh-Wayoe – Enbridge's monitoring and shutdown plan help keep the Line safe before any remedial work is done.

10. Trent Wetmore – Enbridge's actual work to implement shutdown and purge of the Line.

11. Stephen Lloyd (expert) – Enbridge's work, planning, and training to react swiftly to any release of product from Line 5.

12. Dr. Matt Horn (expert) – Rebuttal of Bad River's inaccurate oil spill modeling.

13. Scott Storlid (expert) – Band has unreasonably interfered with Enbridge's attempts to abate the alleged nuisance by acting unreasonably during the permitting process, including by refusing to permit the very types of projects routinely used elsewhere, including on the Reservation by the Band (e.g., rip-rap).

14. Benjamin Lee – Third-party consultant to the Band who informed the Band that Enbridge's projects would work, were safe, and could be permitted.

C. **Equitable claims and remedies phase of trial:**

1. Dr. Laura Olive (expert) – The proper measure of any profits-related damages.

2. Marlon Samuel – That Enbridge does not and cannot instruct refineries to find other sources of feedstock (discussed as a possibility in the September 9, 2022 status hearing by the Court); Line 78 cannot be utilized as an alternative solution to a shutdown of Line 5 (also discussed as a possibility in the September 9, 2022 status hearing by the Court); the economic harm that a shutdown of Line 5 would have on Enbridge and its customers.

3. Steven Johnson – (same witness as III.B.5, above, see above description; also that a re-route outside of the Band's watershed, as it has demanded, is not feasible or prudent)

4. Julie Kloss Molina – (same witness as III.B.4, above, see above description; also that a re-route outside of the Band's watershed, as it has demanded, is not feasible or prudent)

5. Ed Steigerwaldt (expert) – Per Enbridge's trial brief, the fair market value of trespass damages.

6. Corbett Grainger (expert) – The extensive economic harm that a shutdown of Line 5 would have on local economies, local communities, and, especially, the most economically disadvantaged for the loss of crude oil and/or NGLs and products made therefrom.

7. Neil Earnest (expert) – A shutdown of Line 5 will cause shortfalls of crude oil, propane, and other products; other pipelines cannot be tapped to help prevent these economic effects; the Band's claimed alternatives are not feasible.

8. Bill Rennicke (expert) – Rail, truck, and ship cannot be tapped to help prevent these economic effects; the Band's claimed alternatives are not feasible.

9. Derek Dalling, Michigan Gas & Propane Association – A shutdown of Line 5 will cause significant shortfalls of propane in Michigan, which will negatively impact households and numerous industries, including agriculture; the negative impacts may include job and economic losses.

10. Scott Suder, Wisconsin Paper Council - A shutdown of Line 5 that causes shortfalls of energy products will have significant negative impacts on the paper and timber industry.

11. Bill Johnson, Johnson Timber - A shutdown of Line 5 that causes shortfalls of energy products will negatively impact the timber industry.

12. Todd Stuart, Wisconsin Industrial Energy Group - A shutdown of Line that causes shortfalls of energy products will negatively impact numerous industries in Wisconsin; the negative impacts may include job and economic losses.

13. Scott Manley, Wisconsin Manufacturers & Commerce – A shutdown of Line that causes shortfalls of energy products will negatively impact numerous industries across Wisconsin; the negative impacts may include job and economic losses.

14. Paul Fetzer, Wisconsin Dairy Business Association - A shutdown of Line that causes shortfalls of energy products will negatively impact agricultural production.

Dated this 28th day of September, 2022        Respectfully submitted,

David H. Coburn  
Alice E. Loughran  
Mark C. Savignac  
STEPTOE & JOHNSON LLP  
1330 Connecticut Avenue, NW  
Washington, DC 20036-1795  
(202) 429-3000  
dcoburn@steptoe.com  
aloughran@steptoe.com  
msavignac@steptoe.com  

Eric M. McLeod  
Joseph S. Diedrich  
HUSCH BLACKWELL LLP  
33 East Main Street, Suite 300  
Madison, WI 53701-1379  
(608) 234-6056  
joseph.diedrich@huschblackwell.com  

*/s/ Justin B. Nemeroff*  
Michael C. Davis  
David L. Feinberg  
Xochitl S. Strohbehn  
Justin B. Nemeroff  
VENABLE LLP  
600 Massachusetts Ave., NW  
Washington, DC 20001  
(202) 344-8278  
MCDavis@venable.com  
DLFeinberg@venable.com  
XSStrohbehn@venable.com  
JBNemeroff@venable.com

## **CERTIFICATE OF SERVICE**

I certify that on September 28, 2022, I served the foregoing document on all counsel of record using the Court's ECF system.

/s/ *Justin B. Nemeroff*

Justin B. Nemeroff