IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION,

        Plaintiff and Counter Defendant,

   v.

ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY, L.P.,

        Defendants and Counter Claimants.

   v.

NAOMI TILLISON,

        Counter Defendant.

OPINION AND ORDER

19-cv-602-wmc

---

This case is scheduled for a court trial to begin October 24, 2022, with a pretrial conference on October 11, at 2:30 p.m. This order is intended to clarify the issues remaining to be resolved at trial and address certain of the parties' pretrial filings, including their motions in limine. The court will address any remaining motions, as well as issues relating to exhibits, experts and deposition designations at the final pretrial conferences.

OPINION

**A. Scope of the Trial**

There are four primary issues remaining to be resolved in this case:

(1) What profits-based remedies are available to the Band based on the court's finding of liability on the Band's trespass and unjust enrichment claims?

(2) What injunctive or other relief should be imposed based on the court's

>>finding of liability on the Band's trespass claim?

>(3) Does Enbridge's operation of Line 5 on the Bad River Reservation constitute a public nuisance at the Bad River meander and slope 18, and if so, what form of injunctive or other relief should be imposed to abate that nuisance?

>(4) Relatedly, should the court require Enbridge to post a bond to cover a potential environmental catastrophe or condition any relief on the Band's cooperation in permitting Enbridge to inspect, monitor and maintain Line 5?

Below, the court will discuss its preliminary rulings relating to these four main issues, then to the extent possible, address the parties' pending motions in limine in light of these four issues.

**1. Profits-based remedy for trespass claim**

Having reviewed the parties' trial briefs, the record, and related case law, the court concludes that the remedy owed to the Band for Enbridge's trespass on the 12 former allotment parcels should be calculated using a pro-rata share of Enbridge's profits from the operation of the pipeline during the relevant time period, attributable to the 12 parcels compared to the pipeline as a whole. That amount will reasonably compensate the Band for Enbridge's past, unauthorized use of its property and deprive Enbridge of the profits it obtained through its trespass. *See* Restatement on Restitution § 49 (appropriate remedy for unjust enrichment is "amount of profit wrongfully obtained"); *Davilla v. Enable Midstream Partners, L.P.*, No. CIV-15-1262-M, 2016 WL 6952356, at *3 (W.D. Okla. Nov. 28, 2016) (where pipeline found in trespass after expiration of BIA easements, Indian landowners entitled under federal common law "to an accounting of defendants' profits from the operation of their pipeline and recovery of the pro-rata share of those profits that

is attributable to the portion of the pipeline that has been located on their property"). However, the Band has no reasonable claim to the profits that Enbridge earned during the period of trespass by operation of the pipeline *as a whole*. The court is not persuaded by the Band's arguments to the contrary, and finds that an award of all Enbridge's profits would be disproportional to the trespass that occurred *and* the Band's harm. Moreover, any award beyond a proportional share would produce an absurd recovery for any trespass up and down the 640 miles of pipeline.

Nor will the court require a special master to conduct an accounting. Instead, the court will calculate the appropriate measure of damages based on underlying evidence and opinions of the parties' experts regarding the pro-rata share of Enbridge's annual profits attributable to that portion of the pipeline running through the 12 parcels.

In light of this ruling, the parties will limit testimony, evidence and cross-examination at trial on this issue to evidence of Enbridge's annual profits and the specific portion of the 12 parcels owned by the Band during the relevant period. Once calculated, the court will also hear arguments as to whether escalating damages for trespass during this litigation and post-judgment would be appropriate. Finally, the court will resolve in a separate order Enbridge's arguments regarding whether the statute of limitations or equitable considerations should reduce the profits-based damages awarded to the Band.

### 2. Injunctive relief for trespass

Contrary to Enbridge's arguments, the court has not yet determined the form of injunctive relief that will be imposed to remedy Enbridge's ongoing trespass on the 12 former allotment parcels. In particular, the court has not determined that the only

appropriate injunction would be to direct Enbridge to work toward a specific reroute plan. Rather, as explained to the parties both in its summary judgment decision and at the September 9 telephonic hearing, the court has determined that it will: (1) not order an immediate shut down of Line 5; and (2) will not allow this trespass to continue indefinitely.

Based on the court's preliminary review of the parties' submissions, including the information regarding the limited progress toward a possible reroute and the Band's expert reports regarding potential market alternatives to transport crude oil and natural gas, the court remains inclined to issue an injunction that establishes benchmarks and a specific deadline for Enbridge to either accomplish the reroute or close the pipeline.  In deciding the appropriate form of an injunction, the court will again rely largely on the underlying evidence and opinions of the parties' respective experts regarding the likelihood of a reroute and Enbridge's progress (or lack thereof) to such a reroute, potential use of alternative pipelines or other transportation systems, and other, relevant market considerations.

3. **Public nuisance**

To determine whether Line 5 on the Reservation constitutes a public nuisance, the court will consider the parties' evidence and testimony regarding the imminence of catastrophic harm to the Bad River watershed should the pipeline fail at the meander or slope 18.  Because the parties generally agree that a pipeline failure could be catastrophic to the environment, however, the court will focus on evidence addressing the imminence factor.  The only relevant evidence the court is aware of is contained in the expert reports, as no lay witness can provide the technical or scientific information needed to determine

4

whether a significant risk of harm is imminent.

Also relevant to whether a public nuisance exists is whether the risk of rupture at the meander or slope 18 could be mitigated, and whether the Band has interfered with Enbridge's mitigation efforts. Thus, while the court does *not* intend to evaluate possible mitigation plans for their respective viability, and also will not order any specific mitigation plan as injunctive relief, the court will consider limited, additional evidence regarding the parties' lack of cooperation in finding a mitigating solution to the risk of such a rupture, and whether the Band be enjoined from blocking Enbridge's efforts to inspect and conduct maintenance on Line 5 where it crosses the Reservation, and in particular, on those parcels over which Enbridge possess a valid easement or where access to the meander and slope 18 may be blocked.

However, the court will *not* consider either side's proposed testimony and evidence relating to justifications for refusing to work with the other party unrelated to the alleged imminent breach of the pipeline, including a party's alleged interference with the other side's political positions and other, alleged public or private manipulations of process, Enbridge's helicopter accidents, contaminated soil outside the Reservation, the Band's odor complaints, or enforcement activity by the Pipeline and Hazardous Safety Administration against Enbridge on unrelated issues outside the Reservation. Those miscellaneous complaints are not sufficiently germane to the public nuisance or trespass claims and related remedies to take up trial time, and regardless, are not before this court.

### 4. Bond or other injunctive relief to abate the nuisance

If the court determines that Line 5 is a public nuisance, at least at the meander or

slope 18, the court will consider the parties' evidence and arguments regarding injunctive relief and a possible bond. The court's analysis of the imminence of an environmental threat would certainly be relevant to this analysis as well. In particular, if the Band shows a risk of imminent rupture, the court will consider requiring Enbridge to post a bond that could be accessed in case of an environmental catastrophe at Line 5 on the Reservation. Similarly, the Band's cooperation with Enbridge's mitigation efforts will be relevant to both the plausibility of its claim of imminences and the court's decision whether to require any bond to be posted.

### B. The Band's Motions in Limine

Having outlined the major issues remaining for trial, the court will now address the parties' motions in limine, beginning with the Band's motions in limine.

**1. Motion to exclude the testimony of Enbridge's witnesses: Stephen Kaminski, Derek Dalling, Scott Suder, Jim Durkee, Bill Johnson, Scott Manley, Todd Stuart and Paul Fetzer (dkt. #401)**

The Band moves to exclude the testimony of the above witnesses as not timely disclosed by Enbridge. On the last day of discovery, Enbridge added to its witness list 18 unnamed "representatives" of various trade associations, who would testify regarding the economic impacts of a Line 5 shutdown. After the close of discovery, Enbridge also supplemented its Rule 26 disclosures and identified the 8 individuals that are the subject of the Band's motion.

This motion is GRANTED. Enbridge concedes that its disclosure was late and provides no excuse for its untimeliness, but argues that the Band is not prejudiced because

6

it could have asked to depose the witnesses outside of the discovery period. This argument is a nonstarter. Disclosure and discovery deadlines exist so that parties do not have to scramble to depose surprise witnesses shortly before trial.

Curiously, Enbridge also argues that its late-disclosed witnesses don't have relevant testimony to offer, apparently due to the mistaken belief that the "economic impact" of a Line 5 shutdown is no longer relevant to the case. Just to be clear, potential market adjustments to a shutdown are relevant to the court's consideration of equitable remedies. Regardless, the economic impact of a Line 5 shutdown is the subject of Enbridge's expert witness Neil Earnest's report (dkt. #262), which as with most of the other issues still in dispute, would likely make any additional law testimony largely cumulative, even if not untimely.

### 2. Motion to preclude Enbridge from contesting its "weighted average cost of capital" at trial (dkt. #403)

The Band complains that Enbridge refused to prepare a witness to discuss the company's weighted average cost of capital (WACC), a metric that the Band deems as important in calculating Enbridge's past profits. In response, Enbridge concedes that its 30(b)(6) witness did not discuss WACC, and maintains that WACC is irrelevant to this case, both of which would appear to make this motion a moot one. Nevertheless, this motion is GRANTED IN PART and DENIED IN PART. In light of its position that it is irrelevant and not even subject to discovery, Enbridge obviously cannot rely on any WACC calculation not provided in response to a valid discovery request from the Band as a basis for its profits calculations. However, Enbridge is not prohibited from contesting the

relevance and accuracy of the Band's WACC calculations.

### 3. Motion to exclude the expert testimony and reports of Scott A Storlid (dkt. #406)

The court RESERVES ruling on this motion.

### 4. Motion to exclude undisclosed expert testimony and improperly obtained evidence regarding other revetments on the reservation (dkt. #417)

The Band asks the court to exclude: (1) evidence regarding "rip rap" projects on the Reservation that Enbridge allegedly improperly visited; and (2) expert opinions regarding successful rip rap projects on the Reservation if not included in expert reports. This motion is GRANTED IN PART and DENIED IN PART. The Band cites no evidence that Enbridge improperly visited rip rap sites on the Reservation, while Enbridge submitted evidence showing that Band representatives gave Enbridge permission to access these sites. So, that portion of the Band's motion is DENIED.

As for undisclosed expert opinions, the court will not permit any expert to provide opinions that are not contained in their formal reports, so that portion of the motion will be GRANTED. That being said, as discussed above, the court does not intend to spend time at trial listening to expert testimony about the success or failure of rip rap projects or other mitigation measures unless bearing on the risks of Line 5 rupturing at the meander or slope 18. Whether a particular mitigation plan would be successful is also not before the court. The court *will* consider whether the Band has acted reasonably in working with Enbridge to address any alleged risk of imminent rupture at those sites.

5. **Motion to deny Enbridge's claims of privilege as to nine clawed-back documents (dkt. #431)**

The court will address this motion in a separate order.

6. **Motion to compel production of document to update interrogatory responses Nos. 14 and 18 (dkt. #414)**

The court will address this motion in a separate order.

7. **Motion for leave to add Colin McGuire to the list of testimony expected to be presented by deposition (dkt. #432)**

This motion is GRANTED as unopposed.

C. **Enbridge's Motions in Limine**

1. **Enbridge's omnibus motion in limine (dkt. #400)**

    a. **Motion to prohibit the Band from calling tribal engagement witnesses and exclude evidence related to alleged, attempted manipulation of the Band by Enbridge**

This motion is GRANTED. This evidence is irrelevant to the issues remaining to be resolved by this court for the reasons discussed above and in its summary judgment decision.

    b. **Motion to exclude improper opinions that Line 5 is a nuisance because of its age and reference to an outdated, aging, obsolete, or failing pipe**

This motion is GRANTED IN PART and DENIED IN PART. No lay witness may opine about the dangerousness of the pipeline, whether because of its age or otherwise. However, expert witnesses are not prohibited from discussing the age of the pipeline to the extent that age is relevant to their expert analysis.

    **c. Motion to exclude mediation materials and data**

The court will address this motion in a separate order.

    **d. Motion to exclude past, unrelated oil spills**

This motion is GRANTED IN PART and DENIED IN PART. The court will consider evidence of past oil spills *only* if relied upon by an expert in her formal report and the court is persuaded that the circumstances of the oil spill and its environment consequences are sufficiently similar to the circumstance present at the Bad River meander or slope 18. Consistent with the Federal Rules of Evidence, the court will *not* consider evidence of previous oil spills as propensity evidence (i.e. to suggest that because oil spills have happened on other Enbridge lines they are likely to happen on Line 5).

    **e. Motion to exclude unrelated Pipeline and Hazardous Safety Administration enforcement outside the Reservation**

    **f. Motion to exclude August 2022 discovery of contaminated soil outside the Bad River Reservation**

    **g. Motion to exclude Enbridge helicopter incidents on the Bad River Reservation**

    **h. Motion to exclude the Band's odor complaint on the Bad River Reservation**

These motions (e) – (h) are GRANTED. For the reasons discussed above, any marginal relevance of this evidence is greatly outweighed by the potential for distraction, confusion, undue delay and wasting time.

**2. Motion to exclude the Band's liability experts (dkt. #397)**

The court RESERVES ruling on this motion.

3. **Motion to exclude opinions and testimony of Dan Leistra-Jones (dkt. #398)**

The court RESERVES ruling on this motion.

4. **Motion to exclude the Band's injunction-related expert witnesses from trial (dkt. #399)**

The court RESERVES ruling on this motion.

ORDER

IT IS ORDERED that:

1) Plaintiff Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation's motions in limine (dkt. ##401, 403, 417, 432) are GRANTED IN PART and DENIED IN PART as set forth above.

2) The court RESERVES ruling on the Band's motion in limine to exclude an expert witness (dkt. #406).

3) Defendant Enbridge Energy's omnibus motion in limine (dkt. #400) is GRANTED IN PART and DENIED IN PART as set forth above.

4) The court RESERVES ruling on Enbridge's motions in limine to exclude expert witnesses (dkt. ##397, 398, 399).

Entered this 7th day of October, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge