IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION,

                    Plaintiff and Counter Defendant,

    v.

ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY, L.P.,

                    Defendants and Counter Claimants.

    v.

NAOMI TILLISON,

                    Counter Defendant.

OPINION AND ORDER

19-cv-602-wmc

---

       This order addresses the parties' remaining motions in limine, with the exception of motions challenging expert witness testimony.

OPINION

**A. The Band's Motion to Deny Enbridge's Claims of Privilege as to Clawed-back Documents (dkt. #431)**

       Enbridge has sought to claw back nine documents it disclosed during discovery that it says are protected by attorney-client privilege, work product privilege or an agreement governing the parties' failed mediation from June 2017 to July 2019. The Band seeks a ruling that Enbridge has no valid basis for clawing back those nine documents. The court addresses each document below.

### 1. Decision process for Line 5 relocation (dkt. #425-5)

This document, dated May 11, 2017, is titled "Decision Process & Record: Recommended by Project Development, Line 5 Relocation Decision Route Selection Strategy," and was created by Enbridge's Project Development Department. Mainly, it presents potential routes and maps for relocating Line 5 around the Bad River Reservation, as well as discusses various considerations, including permitting timelines, cost and length, and other characteristics. (*Id.* at 3–13.) Enbridge claims attorney-client privilege as to only one sentence in the document, which identifies one risk of reroute as the Band "refus[ing] to negotiate an agreeable removal timeline thus extending trespass and increasing trespass damages." (*Id.* at 11.) Specifically, Enbridge represents that information regarding trespass damages was supplied by its attorneys, while the Band says that such information is not privileged and necessary to prove the need for substantial trespass damages.

The court need not decide whether this single sentence is protected by attorney-client privilege, because the entire document is irrelevant to any of the issues remaining to be decided in the case. The court has ruled in favor of the Band on its trespass claim already, and nothing in this document would inform the court's decision regarding the appropriate amount of profits-based damages to which the Band is or would be entitled. Therefore, the question of a claw back is moot, and court will not consider this document at trial.

### 2. Enbridge meeting notes and agenda (dkt. ##425-7; 425-8; 425-9)

These two documents include a meeting agenda and notes from a meeting that Enbridge held on August 21, 2019, with its employees, in-house counsel and external

litigation counsel.  The Band argues that the meeting was held in the ordinary course of business and included topics relevant to this case, including risks posed by erosion at the Bad River meander and potential ways to address those risks.

The court agrees with Enbridge that these documents are protected by attorney-client privilege.  The documents show clearly that the meeting was organized in response to the Band's filing this lawsuit.  (Dkt. #425-8 at 2) ("Why are we here . . . [We] had a solution for Bad River which was put in front of the Band and a week later there was a lawsuit.  So now the task is to think about how to deal with the lawsuit and the meander at Bad River while stress levels rise.").  The meeting notes include several questions and statements from legal counsel, with responses by employees providing answers, ideas and potential legal and negotiation strategies.  Enbridge's claw-back request of this document was appropriate absent some showing by the Band that the disclosure was intentional or at least not inadvertent.

### 3.  Email regarding "Bad River Strategy" (dkt. #425-10)

This document is a draft email dated September 10, 2019, prepared by Enbridge's Risk Senior Specialist to Enbridge executives shortly after the Band filed this lawsuit.  The email is titled "Bad River Strategy – attorney client privileged and confidential," and discusses a "snapshot of the BRB strategy," including "an outline of our near-term plans relating to the BRB file."  Among other things, the draft discusses background facts, the state of planning for the reroute, Enbridge's relations with the Band, and the status of Enbridge's remediation proposals.

The court again agrees with Enbridge that this document is privileged, as it was obviously created in response to the Band's lawsuit and for the purpose of discussing strategies for handling the litigation with Enbridge's counsel.  Moreover, the email includes no information relevant to the issues remaining in the case, as it includes no specific discussion of the meander by experts in the field, or of any information relevant to the Band's trespass damages.  Therefore, the document appears subject to claw back and the court will not consider this document at trial.

### 4.  Business update to Enbridge Board of Directors (dkt. #425-11)

This document is a PowerPoint presentation titled "Liquids Pipeline Business Unit Update" for Enbridge's Board of Directors Meeting dated February 2020.  Two of the presentation's 20-pages address Enbridge's strategies regarding Line 5 and the Bad River Band, which the Band argues are relevant to show that Enbridge views litigation as a way to delay the reroute process.

Regardless whether this document is protected by attorney-client or work product privilege, it is essentially not relevant to the issues remaining in the case, including any specific facts regarding the reroute process, the Band's nuisance claim, or trespass damages. The court will not consider it, and considers any request for claw back to be moot.

### 5.  2019 shutdown and purge plan (dkt. #425-16)

This document is Enbridge's "Line 5 – Bad River Crossing Shutdown Plan," dated October 22, 2019, which contains proposals for monitoring, shutting down and potentially purging Line 5 at the Band River meander.  Enbridge claims that this document was created

during the parties' failed mediation in 2019, solely for the purposes of that mediation and attempted settlement.  Thus, it argues the document is protected by the parties' mediation agreement, which states that "all information, reports, data and/or documents, statements, offers, promises and other communications" made by the parties during mediation are "confidential" and "inadmissible for any purpose" in any other proceedings.  (Dkt. #400-2, ¶¶2–3.) The Band contends that the shutdown and purge plan falls under the exception in the mediation agreement's confidentiality provision for information and documents "that would otherwise be independently discoverable or admissible in any litigation between the parties."  (*Id.* at 3–4.)

The court concludes that the 2019 shutdown and purge plan is admissible.  The plan is a technical operations plan that would govern the shutdown of the pipeline, and although Enbridge asserts that the plan was created solely for mediation and would not be independently discoverable, it cites no evidence to support this assertion.  In contrast, the Band cites evidence that Enbridge's Pipeline Integrity and Operations department develops shutdown and purge plans in response to guidance and direction from Pipeline and Hazardous Waste Administration (PHMSA) directing pipeline operators to have contingency plans to shut down and isolate pipelines during flood conditions.  (Wetmore dep. (dkt. #491) 81, 83, 151; Tetteh-Wayoe dep. (dkt. #413) 27–28.)  To the extent that certain provisions in the plan were included as part of a mediation and settlement strategy, Enbridge fails to identify what those provisions were or point to any evidence to support its assertion that the document should be protected.

### 6.  Email regarding 2021 shutdown and purge plan (dkt. #425-17)

This document is an email dated March 15, 2021, containing notes and comments on a draft version of Enbridge's June 2021 "Shutdown and Monitoring Plan" for the meander.  The Band maintains that this plan was made in the ordinary course of business by Enbridge as a pipeline operator, based on guidance from the PHMSA.  Enbridge responds that:  the plan was drafted with the advice of counsel in response to the Band's assertions in this lawsuit; Enbridge needed to develop a monitoring and shutdown and purge plan for the meander; and the email includes notes and comments that were made during a teleconference meeting between Enbridge engineers, in-house counsel and litigation counsel.

The court concludes that this document is not protected by attorney client or work product privilege.  First, the email contains no information that could be described as legal strategy or advice.   Second, it includes no references to this litigation.   Instead, the document describes recent shutdown guidance released by the PHMSA, discusses technical and engineering proposals, and states that the draft plan includes monitoring methods to determine whether the pipeline is at risk and should be shut down.   This technical information would appear to be neither created by nor drafted by legal counsel, nor otherwise protected by privilege.  Thus, the basis to order a claw back is again lacking.

### 7.  Responses to questions regarding the reroute of Line 5 (dkt. #425-19)

This email was apparently drafted around July 2019 by an Enbridge executive while mediation was ongoing and shortly before the Band filed this lawsuit.  It discusses information related to a potential reroute of Line 5, including an estimate that the reroute

would take 4 to 7 years to permit and execute.  The Band argues that the document is not privileged because it was created in the normal course of business and includes no legal advice; plus, it is relevant because it addresses probable timing of a reroute.

The court will not consider this document because it includes statements regarding mediation strategies and ongoing negotiations with the Band, and therefore, is protected by the parties' mediation agreement.  Moreover, the document contains information of limited to no use to the court in determining the remaining issues to be decided in the case. Enbridge's predictions regarding the timing of a reroute are not helpful, as they were made more than three years ago, before any permit applications were submitted and before this lawsuit was filed.  The parties have both submitted expert testimony and other evidence that provides more updated and detailed information about the likely timing of a reroute.

### 8.  Table detailing information about Enbridge's remediation proposals (dkt. #425-21)

Finally, this table details information about Enbridge's proposed mitigation projects at the meander previously submitted to the Band.  The table also includes:  information describing the status of Enbridge's remediation proposals with the Band; the pros and cons of each proposal with comments from various departments; and opinions from the legal team that were already redacted.  Excluding the redacted legal team's feedback, the Band argues reasonably enough that the information is limited to discoverable technical and risk management information relating to engineering and remediation projects.   Enbridge responds that this document was created for a strategy session between litigation counsel,

a consulting engineering firm hired by litigation counsel, and Enbridge executives to discuss the status of various proposals and the Band's responses.

Although a closer question, the court agrees that the document is protected by work product and attorney client privilege, since it does appear to have been created in response to the Band's lawsuit and its opposition to Enbridge's mitigation proposals. Moreover, the table contains little, if any, significant technical information, but instead focuses on opinions and impressions by various individuals regarding the Band's conduct. Accordingly, the document is subject to claw back and will be excluded.

## B. The Band's Motion to Compel Production of Documents to Update Interrogatory Responses Nos. 14 and 18 (dkt. #414)

The Band moves to compel Enbridge to supplement its response to two interrogatories regarding the operating costs of Line 5, the tariff rate charged for its use, and the volumes of crude oil and natural gas moved through Line 5 since 2013. Enbridge has provided the Band with a "pro forma income statement" calculating annual income earned from Line 5 from 2013 to September 2020. However, Enbridge has refused to provide an updated version of the Line 5 pro forma income statement that reflects profits earned from Line 5 after September 2020. Enbridge concedes that its attorneys have created an updated pro forma income statement, but argues that the updated income statement is attorney work product and, in any event, is not relevant to calculating profits-based damages. Enbridge also asserts that the Band already has access to information responsive to the interrogatories and relevant to the appropriate damages award.

Because the income statement was created by Enbridge's attorneys for the purpose of litigation, rather than in the ordinary course of business, it is protected by the work product privilege. Moreover, the court agrees with Enbridge that the Band has not explained why the information in this unofficial income statement is relevant to the issues remaining in this case, as neither the Band's nor Enbridge's experts used that income information in forming their opinions about the appropriate measure of profits-based remedies. Moreover, at this point, it is too late for either party to introduce updated income statements as evidence or provide it to any expert. Had the Band wished to do so, it would have needed to act more promptly.

### C. Enbridge's Motion to Exclude Mediation Materials and Data (dkt. #400, MIL 3)

This motion is the flip side of the Band's motion concerning the 2019 shutdown and purge plan. In particular, Enbridge contends that the 2019 plan is inadmissible under the parties' mediation agreement, while the Band argues that the plan was developed in the ordinary course of business in Enbridge's role as a pipeline operator. For the reasons discussed above, the court holds the 2019 plan to be admissible.

Enbridge also argues that it developed oil spill modeling during the mediation process that the Band and the Band's experts used improperly in their expert reports. However, Enbridge again fails to show that the oil spill modeling, and specifically, the data underlying the modeling that was used by the Band's experts, would not have been independently discoverable. Moreover, having had these reports for some time, Enbridge

is simply too late in seeking their exclusion on the even of trial.  Accordingly, this motion will be denied.

ORDER

IT IS ORDERED that:

1) Plaintiff Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation's motions in limine challenging Enbridge's claims of privilege on nine documents (dkt. ##424, 431) is GRANTED IN PART and DENIED IN PART as set forth above.

2) The Band's motion to compel (dkt. #414) is DENIED.

3) Enbridge's motion to exclude the shutdown and purge plan and oil spill modeling (MIL 3 in dkt. #400) is DENIED.

Entered this 14th day of October, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge