IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION,

    *Plaintiff*,

v.

ENBRIDGE ENERGY COMPANY, INC.,
and ENBRIDGE ENERGY, L.P.,

    *Defendants*.

ENBRIDGE ENERGY COMPANY, INC.,
and ENBRIDGE ENERGY, L.P.,

    *Counter-Plaintiffs*,

v.

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION and NAOMI TILLISON,
in her official capacity,

    *Counter-Defendants*.

Case No. 3:19-cv-00602-wmc

Judge William M. Conley
Magistrate Judge Stephen L. Crocker

**BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS'
MOTION TO EXCLUDE DECLARATIONS REGARDING
THE ECONOMIC IMPACT OF A LINE 5 SHUTDOWN**

As part of its Opposition to the Band's Emergency Motion for Injunctive Relief (Dkt. 655), Enbridge has filed nine declarations from representatives of oil and gas companies and industry groups regarding the potential economic impact of a Line 5 shutdown: the Canadian Chamber of Commerce, Imperial Oil Ltd., PBF Energy Inc., Plains Midsteam Canada ULC, Shell Canada Ltd., Suncor Energy Inc., Superior Gas Liquids, United, and Cenovus Energy Inc. *See* Dkts. 645–653. The Court should exclude these declarations as cumulative and as improper expert testimony.

## ARGUMENT

### I.   Enbridge's Witness Declarations Are Cumulative of Existing Expert Testimony.

In its pretrial discovery rulings, this Court held that "the economic impact of a Line 5 shutdown is the subject of Enbridge's expert witness Neil Earnest's report …, which … would likely make any additional la[y] testimony largely cumulative, even if not untimely." Dkt. 521 at 7. Accordingly, this Court excluded from Enbridge's witness list numerous witnesses— including a representative of the Canadian Chamber of Commerce, one of the nine declarants at issue here—who would have "testif[ied] regarding the economic impacts of a Line 5 shutdown." *Id.* at 6–7; *see* Fed. R. Evid. 403; *United States v. Coleman*, 930 F.2d 560, 563 (7th Cir. 1991) ("Additional testimony … would be cumulative, and therefore its exclusion was proper."). Yet Enbridge has again attempted to inject the Chamber's testimony on that very issue. Because the Chamber's declaration as well as the declarations of the other gas and oil industry representatives cover the same subject matter as Enbridge's expert witnesses and thus violate the Court's prior ruling on cumulative testimony, they should be excluded.

In both his report and trial testimony, Mr. Earnest offered opinions on how an immediate shutdown would impact refineries' access to crude oil supplies, *see, e.g.*, Dkt. 495 (Expert

1

Report of Neil K. Earnest) at PDF pp. 55–68; how an immediate shutdown would affect prices of refined products, *see id.* at PDF pp. 69–79; and how an immediate shutdown would affect fractionators and butane and propane prices, *see id.* at PDF pp. 15–47; *see also* Dkt. 610 (Trial Test. of Neil Earnest) at 88:19–89:1 (testifying that his analysis was "primarily focused on … what would be the impacts on … the energy markets … of immediate closure of Line 5"). Enbridge expert Corbett Grainger also offered opinions on how an immediate shutdown would affect regional economic activity and employment and how price increases would impact households. *See, e.g.*, Dkt. 493 (Expert Report of Dr. Corbett Grainger) at PDF pp. 10–40; *see also id.* at PDF p. 26 (describing the event being analyzed as "a sudden loss of Line 5").

Every one of Enbridge's new declarations provides conclusory assertions going to the same issues as those experts' opinions. They are replete with statements regarding the economic impacts of an immediate Line 5 shutdown. *See* Dkt. 645 (Decl. of Canadian Chamber of Commerce) ¶ 6; Dkt. 646 (Decl. of Imperial Oil Ltd.) ¶ 5; Dkt. 647 (Decl. of PBF Energy Inc.) ¶ 7; Dkt. 648 (Decl. of Plains Midstream Canada ULC) ¶ 8; Dkt. 649 (Decl. of Shell Canada Ltd.) ¶ 7; Dkt. 650 (Decl. of Suncor Energy Inc.) ¶ 5; Dkt. 651 (Decl. of Superior Gas Liquids) ¶ 6; Dkt. 652 (Decl. of United) ¶ 7; Dkt. 653 (Decl. of Cenovus Energy Inc.) ¶ 4. Accordingly, as it has done with Enbridge's past attempts to introduce cumulative testimony, this Court should exclude these declarations.

## II. Enbridge's Witness Declarations Offer Improper Expert Testimony.

In addition to being cumulative, opinions on anticipated impacts of a Line 5 shutdown on regional energy supplies and related regional economic consequences are not lay testimony. They are the stuff of expert testimony. *See United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) ("[L]ay testimony results from a process of reasoning familiar in everyday life, while

expert testimony results from a process of reasoning which can be mastered only by specialists in the field." (brackets in original) (citation omitted)).  Not one of Enbridge's new witness declarations attempts to establish that the declarant possesses the requisite "knowledge, skill, experience, training, or education" to opine as an expert on the complex regional energy supply and related economic impacts on which they opine, much less that they relied on "sufficient facts or data" or applied "reliable principles and methods" in arriving at those opinions, Fed. R. Evid. 702.  Yet they venture opinions on the subject, failing in the process to establish any foundation for what they are testifying to.  For example, Mark Townley of Suncor Energy avers that

> [t]he impacts on refined product supply will also back into Western Canada as the immediate shutdown of Line 5 will result in the shutdown of Enbridge's Line 1 due to limits on Natural Gas Liquids (NGL) storage at Enbridge's Superior Terminal.  Line 1 moves refined products produced in Alberta to Saskatchewan and Manitoba.  Trucking of refined product may partially mitigate the impact but at a higher cost.

Dkt. 650 (Decl. of Suncor Energy Inc.) ¶ 5.c.; *see also id.* ¶ 5.a., b., and d.  But Mr. Townley's qualifications and basis for testifying as to Enbridge's Line 1 or the Western Canadian market are never established, and the improper opinion should be stricken.

Similarly, Shawn Vammen of Superior Gas Liquids testifies that "there is currently not enough infrastructure capacity to provide an effective and reliable alternative supply method (i.e. railroads or trucks) to meet the needs of customers," Dkt. 651 (Decl. of Superior Gas Liquids) ¶ 7, and John R. Wagner of United testifies that "[t]he loss of supply through Line 5 represents an immediate threat to … the economic health of the northwestern Pennsylvania and western New York region," Dkt. 652 (Decl. of United) ¶ 7, again without their qualifications to offer such opinions being established or any foundation being laid.

3

Numerous other opinions extend far beyond the declarants' knowledge of their own businesses to topics that are appropriate only for an expert, not a lay witness. *See* Dkt. 645 (Decl. of Canadian Chamber of Commerce) ¶¶ 6–9; Dkt. 646 (Decl. of Imperial Oil Ltd.) ¶ 5; Dkt. 647 (Decl. of PBF Energy Inc.) ¶ 7; Dkt. 648 (Decl. of Plains Midstream Canada ULC) ¶ 8; Dkt. 649 (Decl. of Shell Canada Ltd.) ¶ 7; Dkt. 651 (Decl. of Superior Gas Liquids) ¶¶ 6–7; Dkt. 653 (Decl. of Cenovus Energy Inc.) ¶ 4.

"A nonexpert is not permitted to give expert testimony." *Wand v. Johnson*, 18-cv-500-wmc, 2022 WL 1497943, at *6 (W.D. Wis. May 11, 2022) (Conley, J.) (quoting *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001)), and Enbridge's declarations should be stricken for doing just that.

## CONCLUSION

The Band respectfully requests that the Court exclude as cumulative and improper expert opinion the nine declarations from oil and gas companies and industry groups regarding the potential economic impact of a Line 5 shutdown, Dkts. 645–653, or at a minimum exclude the above-identified portions of those declarations.

Dated: May 17, 2023

Erick Arnold
BAD RIVER BAND OF THE LAKE SUPERIOR
TRIBE OF CHIPPEWA INDIANS OF THE BAD
RIVER RESERVATION
72682 Maple Street
Odanah, Wisconsin 54861
attorney@badriver-nsn.gov
(715) 682-7107

Bruce Wallace
HOOPER HATHAWAY PRICE BEUCHE
& WALLACE
126 S. Main Street
Ann Arbor, MI 48104
bwallace@hooperhathaway.com
(734) 662-4426

Oday Salim
NATIONAL WILDLIFE FEDERATION
213 West Liberty Street, Suite 200
Ann Arbor, MI 48104
salimo@nwf.org
(586) 255-8857

Douglas M. Poland
David P. Hollander
STAFFORD ROSENBAUM, LLP
222 West Washington Avenue, Suite 900
Madison, WI 53701
dpoland@staffordlaw.com
dhollander@staffordlaw.com
(608) 256-0226

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
Lucy W. Braun
Christopher Miller
Joshua C. Handelsman
Joohwan Kim
KANJI & KATZEN, P.L.L.C.
303 Detroit Street, Suite 400
Ann Arbor, MI 48104
rkanji@kanjikatzen.com
(734) 769-5400

Jane G. Steadman
Philip H. Tinker
Claire R. Newman
KANJI & KATZEN, P.L.L.C.
811 1st Avenue, Suite 630
Seattle, WA 98104
jsteadman@kanjikatzen.com
(206) 344-8100

*Counsel for the Bad River Band of the Lake Superior
Tribe of Chippewa Indians and Naomi Tillison, Director
of the Mashkiiziibii Natural Resources Department of
the Bad River Band, in her official capacity*

5

## CERTIFICATE OF SERVICE

    I certify that on May 17, 2023, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                                                         /s/ Riyaz A. Kanji
                                                         Riyaz A. Kanji