**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION<br><br>        *Plaintiff*,<br>    v.<br><br>ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY, LP<br><br>        *Defendants*.<br><hr>ENBRIDGE ENERGY, LP<br><br>        *Counter-Plaintiff,*<br>    v.<br><br>BAD RIVER BAND OF THE LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS OF THE BAD RIVER RESERVATION and NAOMI TILLISON, in her official capacity<br><br>        *Counter-Defendants*. | Case No. 3:19-cv-00602<br><br><br>Judge William M. Conley<br>Magistrate Judge Stephen Crocker |

**DEFENDANTS' REQUESTS FOR CLARIFICATION OF  JUNE 16, 2023 ORDER**

Pursuant to the Court's invitation to seek clarification of its June 16, 2023 order (Dkt. 684, the "Order" at 52), Defendants Enbridge Energy, Limited Partnership and Enbridge Energy Company, Inc. (collectively "Enbridge") respectfully submit the following points on which Enbridge seeks clarification.

**POINTS ON WHICH CLARIFICATION IS REQUESTED**

1.    **Date of Enforcement.**

Several times in its Order, the Court orders actions to be completed a certain number of days or years from "this order."  Order at 38, 52.  Enbridge requests clarification as to whether the

deadlines for completion of those actions run from the date of the Court's order (June 16, 2023) or the date after the Court clarifies its order and enters final judgment.  Enbridge respectfully requests that any deadlines run from the final (and potentially modified) order.

2.      **Operation of Line 5.**

Enbridge understands the Order and injunction terms to mean that it can continue to operate Line 5—to transport crude oil and natural gas liquids in the normal course of business—for three full years on all the parcels the Court has determined lack a valid right of way.  *Compare* p. 52, para. 4, *with* pp. 51 *and* 4.  Enbridge requests that the Court confirm this understanding.

3.      **Enbridge's "recourse to challenge the Band's permit denials."**

In footnote 7 (page 35) of the Order, the Court stated that because "Indian Tribes are exempt from providing judicial review of approval or denial of Clean Water Act permits, 40 C.F.R. § 123.30, Enbridge appears to have no judicial or administrative recourse to challenge the Band's permit denials."  Enbridge respectfully believes this statement is not entirely correct.  The regulation to which the Court cited is inapplicable: that regulation only applies to *permitting* under *Section 402* of the CWA (concerning National Pollutant Discharge Elimination System permits), which is not at issue for any of the Band's denials of Enbridge projects at the Meander.  *See* 40 C.F.R. § 123.1(a) (defining scope of 40 C.F.R. Part 123).  The denial of project certifications by the Band instead occurred under *Section 401* of the CWA.  However, it is correct that there is no recourse *under Band law* to challenge the Band's Section 401 denials, as reapplication is the only redress permitted by Band law.

4.      **Enbridge's Motion for Protective Order.**

Still pending before this Court is Enbridge's Motion for Protective Order, which requests that the June 2021 monitoring and shutdown plan and the parties' December 2022 court-ordered

proposals remain sealed.[1]  As that motion explains, the Band agreed to keep redacted location-based details contained within the actual plans, as it acknowledged the locations reflect sensitive details about the pipeline's infrastructure.  *See* Dkt. 619 at 5.  Does the Court intend to issue a separate ruling on the motion for protective order?  Enbridge respectfully requests that the Court grant the motion in part by keeping sealed Enbridge's specific *plan documents* from June 2021 and December 2022 (Dkts. 616-1 and 616-2).

5.      **The Court's Shutdown Order.**

The Court's apparent desire, as expressed in its Summary Judgment decision, at trial, and reiterated in its Order, was to order payments to the Band for each year of continued Line 5 operations on parcels within the Reservation on which Enbridge was held to be in trespass.  This would prevent the trespass on a little more than two miles of the Band's fractional ownership in property from closing a critical, 600-plus mile international pipeline before the re-location project routing the pipeline around the Reservation is complete.  Enbridge supports this type of remedy to protect third parties who depend on Line 5's energy products.  In its Order, the Court said, "Enbridge has presented no legal authority supporting its position that the court could permit it to trespass indefinitely on the Band's land."  Order at 50.

Enbridge respectfully maintains it has presented legal authority to delay any injunction until the reroute is operational, thereby avoiding any loss of service and resulting substantial harm to the public.  For example, Enbridge previously cited a line of decisions, *United States v. Pend Oreille Cnty. Pub. Util. Dist. No. 1* ("*Kalispel*") for this proposition.[2]  *See* Dkt. 207 at 94, 100;

---

[1]      Enbridge and the Band filed a joint motion to redact the transcript of the Permanent Injunction Hearing on May 18, 2023 for the same reasons, pending the Court's decision.  Dkt. 674.  The Court granted this motion on June 6, 2023.  Dkt. 678.

[2]      Enbridge also previously cited *United States v. Imperial Irrigation Dist.,* 799 F. Supp. 1052, 1068–69 (S.D. Cal. 1992) (district court "decline[d] to grant injunctive relief and [ ] instead award[ed] monetary

Dkt. 449 at 14 n.15, 25.  In *Kalispel*, the utility's dam caused flooding year-round on the tribe's reservation, which constituted a trespass.  The Ninth Circuit affirmed the trespass determination but directed the district court to consider whether any active injunction halting the trespass should be issued in light of the utility's assertion that "a large part of the Pacific Northwest would suffer a power shortage if the Utility were enjoined from flooding the land in question."  *Kalispel II*, 28 F.3d 1544, 1551–52 (9th Cir. 1994).  Recognizing that the district court can "fashion a remedy to minimize the harm such an injunction could cause," the Ninth Circuit suggested that the district court "enjoin the Utility from occupying Reservation land but stay the order to permit the Utility to seek an amendment to its license …."  *Id.*  On remand, the district court granted an injunction but immediately stayed it "for the amount of time which is necessary for FERC to act upon [the utility's] application" for an amendment to its license, provided that the utility pay a fee to the plaintiff to compensate for the continued trespass.  *Kalispel III*, 135 F.3d 602, 614 (9th Cir. 1998).  The *Kalispel III* court, quoting *Kalispel II*, observed that "the Utility knew it had no right to flood the reservation land, but flooded it anyway, a finding supported by substantial evidence."  *Id*. at 607.  The Ninth Circuit affirmed.  *Id.* at 614.

---

damages equal to the fee value of the property to compensate the band for all future damages based upon trespass" where an irrigation district flooded tribal land for nearly 70 years and the court found trespass).  *See* Dkt. 207 (Opp. to Band Partial Mot. for Summ. J.) at 96, 107, 109, 115.  Similarly, *Bannse v. Northern Pac. RY. Co.* supports the proposition that plaintiffs' statements or conduct (such as inaction or engaging in negotiations for an easement regarding the known trespass) led a defendant to believe the landowner would not enforce those rights, but will agree to access for just compensation, "especially if it is in respect to a matter which will largely affect the public convenience and welfare—a court of equity may properly refuse to enforce those rights" through injunctive relief and instead, award monetary compensation.  205 F. 328, 330 (W.D. Wash. 1913).  As another example, in *Sussex Land & Live Stock Co. v. Midwest Refining Co.*, 276 F. 932 (D. Wyo. 1922), the court ordered the defendant to pay an annual rent for future trespass on the land, and only if defendant did not pay, would the court issue injunctive relief.  The court decided on this remedy after considering whether plaintiff was actually injured by defendant's trespass.  *See id.* at 945–48.  Such a remedy was not a "penalty," but an equitable approach to ensure the compensation fit the trespassing conduct.

Thus, the Court has the authority not to issue, or to stay, any injunction order to coincide with the reroute becoming operational to ensure that the public interest remains protected from substantial adverse consequences—here, the closure of a vital link in the energy infrastructure. As the Court previously recognized, "there is little question that an immediate shutdown of the pipeline would have significant public policy implications on the trade relationship between the United States and Canada." Dkt. 360 at 41. Enbridge has been diligent in pursuing the necessary permits from the Wisconsin Department of Natural Resources and the US Army Corps of Engineers. According to Enbridge's current estimates, the permitting process is moving toward potential conclusion at some point in 2025.

Dated: June 23, 2023

Respectfully submitted,

/s/ *Justin B. Nemeroff*
Michael C. Davis
David L. Feinberg
Justin B. Nemeroff
**VENABLE LLP**
600 Mass. Ave., NW
Washington, DC 20004
(202) 344-8278
MCDavis@venable.com
DLFeinberg@venable.com
JBNemeroff@venable.com

Eric M. McLeod
Joseph S. Diedrich
**HUSCH BLACKWELL**
33 East Main Street, Suite 300
Madison, WI 53701-1379
(608) 234-6056
eric.mcleod@huschblackwell.com

David H. Coburn
Alice E. Loughran
Joshua Runyan
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW

Washington, DC 20036-1795
(202) 429-8063
dcoburn@steptoe.com
aloughran@steptoe.com
jrunyan@steptoe.com

*Counsel for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 23, 2023, I served the foregoing document on all counsel of record using the Court's ECF system.


*/s/ Justin B. Nemeroff*