IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION,

            Plaintiff and
            Counter Defendant,

v.

ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY, L.P.,

            Defendants and
            Counter Claimants,

v.

NAOMI TILLISON,

            Counter Defendant.

OPINION AND ORDER

19-cv-602-wmc

---

Nearly three years ago, this court entered a permanent injunction in this case against Enbridge Energy regarding its operation of Line 5, a crude oil and natural gas liquids pipeline that runs through the Bad River Reservation in Northern Wisconsin. (Dkt. #689.) In brief, the injunction required Enbridge to: (1) implement a monitoring and shutdown plan for Line 5; (2) disgorge profits for past trespass on the Bad River Band's property; (3) continue disgorging profits to the Band on a quarterly basis, so long as Line 5 operated on the Band's land; (4) cease operation of Line 5 on any parcel within the Band's tribal territory on which Enbridge lacks a valid right of way on or before June 16, 2026; and (5) arrange prompt, reasonable remediation at those same parcels. Enbridge appealed and the Seventh Circuit heard oral argument in February 2024, but the court of appeals has not yet issued a merits opinion on the case. *Bad River Band of the Lake Superior*

*Tribe of Chippewa Indians of the Bad River Reservation v. Enbridge Energy Company, Inc., et al.*, No. 23-2309 (7th Cir.).

Given the many delays occurring in Enbridge's original, promised completion dates for Line 5's bypass of the Band's tribal territory ("the Line 5 Relocation Project"), and extension of that date again by three more years at the time of final judgment, the court can hardly feign surprise that a bypass was not (and will not be) close to completion before its June 16, 2026, deadline for a shutdown of operation of Line 5 on tribal lands. Still, with that deadline now looming, Enbridge has returned to this court to request a stay of the portion of that permanent injunction requiring shutting down Line 5 on those lands by June 16. (Dkt. #707.) Although representing that significant progress has been made to obtain the permits needed for the Line 5 Relocation Project, Enbridge explains that construction has been delayed due to litigation in administrative proceedings, much of it caused by ongoing opposition to the Line 5 Relocation Project by plaintiff and others. At the same time, plaintiff again casts aspersions on defendant's delays in implementing the relocation solution. Since plenty of blame for delay can be shared by all parties and others, the court sees little point in casting aspersions. Indeed, the court would note with approval the parties' laudable cooperation in adopting ameliorative steps at the meander, which is still the most likely source of a failure of Line 5 on tribal lands, including installing much more effective shut off valves closer to the meander and some 24 log jack supports to forestall the risk of a catastrophic structural failure there.

In the meantime, it is also unsurprising that no alternative modes of transportation have been developed to replace Line 5's products into its downstream markets, meaning

that a shutdown would inevitably cause significant shortages of propane, increased energy prices in the Midwest and Canada, and significant economic consequences, especially for the poor and other economically challenged households. Moreover, for the first time, the Governments of Canada and the United States have now filed statements of interest supporting Enbridge's stay request, heightening concerns about the role of the 1977 Transit Treaty between the two countries in binding this court and foreign relations more generally.

Unsurprisingly, the Band objects to a stay of the court's shutdown injunction order, arguing that Enbridge's ongoing trespass on tribal lands is intolerable and, although the parties have worked together to mitigate the risk of a pipeline breach at the Bad River meander, the mitigation efforts damaged tribal land, required the Band to expend significant time and resources, and should hardly be used against it in finally seeing its rights vindicated.

After considering the parties' arguments and weighing Enbridge's likelihood of success on appeal with potential irreparable harm, the court concludes that a balance of the equities warrants a stay of the shutdown order at least until the Seventh Circuit weighs in on the area of unsettled law. Most concerning to the court is the potential devastating impact a sudden shutdown of Line 5 would have on energy prices and local economies, as well as foreign relations with Canada. While acknowledging that there is little legal precedent on how a court should weigh such significant considerations against a tribe's sovereign authority to control its own territory, the court will stay the shutdown order until the Seventh Circuit has resolved the pending appeal and provided guidance on these

complex, unsettled legal questions. However, the court declines Enbridge's request that the stay be continued through the Supreme Court certiorari process, believing the Seventh Circuit is in the best position to address that question if, and when, it chooses to give the Band affirmative relief.

## OPINION

In deciding whether to stay an injunction pending appeal, the court considers four factors: "(1) the likelihood the applicant will succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties; and (4) the public interest." *Common Cause Indiana v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020). "The standard calls for equitable balancing, much like that required in deciding whether to grant a preliminary injunction" in the first place, but the "first two factors are most critical." (*Id.* (quoting *Venckiene v. United States*, 929 F.3d 843, 853 (7th Cir. 2019)).

Each side argues it is more likely to succeed on the merits, making several of the same arguments that the court considered three years ago when deciding summary judgment in this case. However, Enbridge still raises no valid defense to its ongoing trespass on the Band's land and presents no legal authority supporting its position that the court could permit it to trespass indefinitely on the Band's land. Nor has Enbridge cited any legal authority suggesting that the court could effectively force a renewal of expired easements despite the Band's sovereignty, by permitting Enbridge to pay a fee or profits while continuing to operate its pipeline. Enbridge *has* presented evidence that the public nuisance threat to a breach of Line 5 at the Bad River meander has been somewhat

4

mitigated by the new shutdown valve and log jack revetment project, although the court is troubled by inadvertently deterring the Band's cooperation with Enbridge in adopting remediation effort by then using those improvements to justify further trespass on its lands.

In the end, Enbridge's motion does not depend on a showing that it has a likelihood of success as to *liability* on the Band's trespass or public nuisance claims. Rather, Enbridge argues that it has a likelihood of success in showing that this court exceeded its authority in issuing as part of the remedy in this case, a permanent injunction that would require it to shut down Line 5 on June 26, 2026. On this point, the court agrees Enbridge has shown that it has, at the very least, some likelihood of success.

Although this court concluded that the Band was ultimately entitled to permanent injunctive relief on its trespass claim, the court had little legal guidance in determining the appropriate equitable remedies and crafting the permanent injunction. Moreover, as this court has repeatedly acknowledged, shutting down an international pipeline based on a potential breach at the meander and Enbridge's trespass on 2.33 miles of a 642-mile pipeline "has always been about a tail wagging a much larger dog." (Dkt. #684, at 39.) Further, the court has expressed concerns about "significant public policy implications on the trade relationship between the United States and Canada," particularly in light of the Transit Treaty (dkt. #360, at 40–41), but found no legal guidance on how the court should weigh the requirements of the 1977 Transit Treaty between Canada and the United States against the requirements of the 1854 Treaty between the Chippewa and the United States. Finally, the court was "wary of permanently shutting down the pipeline without providing adequate time for market adjustments, and hopefully, even for Enbridge to complete a

proposed reroute of Line 5." (Dkt. #684, at 51.) In crafting the permanent injunction, therefore, the court attempted to balance these concerns, with the best outcome being that Enbridge could complete its relocation project or the affected parties (the Band, Enbridge, Canada, the United States) could reach a solution before any shutdown would occur. However, given the complexities of the case and unsettled nature of the law, Enbridge certainly has a likelihood of success in persuading the Seventh Circuit that this court's permanent injunction was the wrong outcome, particularly with the United States and Canada now wading in before the Seventh Circuit.

After concluding that Enbridge has a likelihood of success on its appeal, the remaining equities easily favor granting a stay of the shutdown order. Indeed, in light of the mitigation efforts at the meander, despite the Band's valid concerns, the threat of an imminent, catastrophic rupture of Line 5 has thankfully been reduced. Thus, although the court is sympathetic to the Band's objection to continued trespass on its lands, the Band's concerns do not outweigh the near certain harm to local, state, national and international economies that would occur with an abrupt shutdown on June 16th, nor the harm to the United States' already frayed trade relationship with Canada. Accordingly, the court will stay the shutdown order until Enbridge's appeal is resolved by the Seventh Circuit.[1]

---

[1] Under Rule 62(d) of the Federal Rules of Civil Procedure, this court can stay an injunction pending appeal "on terms for bond or other terms that secure the opposing party's rights." The Band did not ask for a bond, and the court does not think a bond is necessary here, particularly since Enbridge will already have to continue paying the Band under the terms of the permanent injunction so long as it operates Line 5 on the Reservation. Further, given how long the appeal has been pending, a further stay should not be in place for a significant amount of time.

ORDER

IT IS ORDERED that:

1. Defendants Enbridge Energy Company, Inc. and Enbridge Energy, L.P.'s motion to stay injunction pending appeal (dkt. #707) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Enbridge's request that Paragraph 4 of the court's Amended Final Judgment (dkt. #689, ¶ 4) requiring defendants to cease operation of Line 5 by June 16, 2026, be STAYED until the appeal is resolved by the Court of Appeals for the Seventh Circuit. Enbridge's request that the stay continue through the Supreme Court certiorari process is DENIED.

2. The motions for leave to file amicus briefs by the Government of Canada (dkt. #735), the United States (dkt. #738), and 350 Wisconsin, League of Women Voters of Wisconsin, Sierra Club and Clean Wisconsin (dkt. #749) are all GRANTED.

Entered this 27th day of February, 2026.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge